**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

### 2484CV01953 Caine, Deborah vs. Sturdy Memorial Hospital, Inc.

| | |
|---|---|
| **CASE TYPE:** Business Litigation | **FILE DATE:** 07/24/2024 |
| **ACTION CODE:** BH2 | **CASE TRACK:** B - Special Track (BLS) |
| **DESCRIPTION:** Complex Unfair Trade Practices | |
| **CASE DISPOSITION DATE:** 02/04/2025 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 02/04/2025 |
| **CASE JUDGE:** | **CASE SESSION:** Business Litigation 1 |

| PARTIES | | |
|---|---|---|
| **Plaintiff**<br>Caine, Deborah | **Attorney**<br>Elizabeth A Ryan<br>Bailey and Glasser LLP<br>Bailey and Glasser LLP<br>176 Federal St<br>5th Floor<br>Boston, MA 02110<br>Work Phone (617) 439-6730<br>Added Date: 07/24/2024 | 549632 |
| | **Attorney**<br>John J Roddy<br>Bailey and Glasser LLP<br>Bailey and Glasser LLP<br>176 Federal St<br>5th Floor<br>Boston, MA 02110<br>Work Phone (617) 439-6730<br>Added Date: 07/24/2024 | 424240 |
| **Defendant**<br>Sturdy Memorial Hospital, Inc. | **Attorney**<br>James Hefferan Rollinson<br>Baker and Hostetler LLP<br>Baker and Hostetler LLP<br>Key Tower<br>127 Public Square Suite 2000<br>Cleveland, OH 44114-1214<br>Work Phone (216) 621-0200<br>Added Date: 11/05/2024 | 649407 |



## FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 07/25/2024 | Civil Filing Fee (per Plaintiff) Receipt: 44724 Date: 07/25/2024 | 240.00 | 240.00 | 0.00 | 0.00 |
| 07/25/2024 | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 44724 Date: 07/25/2024 | 20.00 | 20.00 | 0.00 | 0.00 |
| 07/25/2024 | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 44724 Date: 07/25/2024 | 15.00 | 15.00 | 0.00 | 0.00 |
| 10/15/2024 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b Receipt: 45672 Date: 10/16/2024 | 5.00 | 5.00 | 0.00 | 0.00 |
| | **Total** | **280.00** | **280.00** | **0.00** | **0.00** |

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 07/24/2024 | 1 | Complaint electronically filed. | |
| 07/24/2024 | 2 | Civil action cover sheet filed. | |
| 07/25/2024 | 3 | General correspondence regarding Notice of Acceptance into Business Litigation Session Accepted into BLS1 (Dated 7/25/2024) | Salinger |
| 10/15/2024 | | Plaintiff Deborah Caine's Notice of Request For Summons | |
| 10/16/2024 | | Docket Note: summons sent by mail | |
| 10/16/2024 | | EDocument sent: A Tracking Order was generated and sent to: Plaintiff, Attorney: Elizabeth A Ryan, Esq. eryan@baileyglasser.com | |
| 10/21/2024 | 4 | Service Returned for  Sturdy Memorial Hospital, Inc. Defendant Service through person in charge / agent 10/21/2024  Applies To: Sturdy Memorial Hospital, Inc. (Defendant) | |
| 11/04/2024 | 5 | Defendant Sturdy Memorial Hospital, Inc.'s Motion for Extension of Time to Respond to the Complaint | |
| 11/04/2024 | | Attorney appearance On this date James Hefferan Rollinson, Esq. added for Defendant Sturdy Memorial Hospital, Inc. | |
| 11/04/2024 | | Proposed Filings/Orders | |
| 11/12/2024 | | Endorsement on Motion for Extension of Time to Respond to the Complaint (#5.0): ALLOWED (dated 11/08/2024)  Notice sent 11/13/2024. | Kazanjian |
| 12/10/2024 | 6 | Defendant Sturdy Memorial Hospital, Inc.'s Motion for Extension of Time to Brief Defendant's Motion to Dismiss or Otherwise Respond to the Complaint | |
| 12/10/2024 | | Proposed Filings/Orders | |
| 12/18/2024 | | Endorsement on Motion to Dismiss or Otherwise Respond to the Complaint (#6.0): ALLOWED (Dated 12/16/2024) Notice sent 12/19/24 | Kazanjian |
| 12/18/2024 | 7 | ORDER: Order See paper #7 (Dated 12/16/2024) Notice sent 12/19/24 | Kazanjian |
| 12/20/2024 | | Defendant Sturdy Memorial Hospital, Inc.'s Notice of Filing Motion to Dismiss | |

| 01/13/2025 | | The following form was generated: |  |
|---|---|---|---|
| | | Notice to Appear - BLS was generated and sent to:<br>Plaintiff:  Elizabeth A Ryan, Esq. eryan@baileyglasser.com<br>Plaintiff:  John J Roddy, Esq. jroddy@baileyglasser.com<br>Defendant:  James Hefferan Rollinson, Esq. jrollinson@bakerlaw.com<br>Sent On: 01/13/2025 15:06:29 | |
| 01/24/2025 | 8 | Amended: and Jury Trial Demanded amended complaint filed by Deborah Caine | |
| 02/03/2025 | 9 | Defendant Sturdy Memorial Hospital, Inc.'s Notice of Filing of Removal | |
| 02/03/2025 | | Exhibits/Appendix<br><br>Notice of Removal | |
| 02/03/2025 | | REMOVED to the U.S. District Court of Massachusetts ( US Dist #25-cv-10261) | |
| 02/03/2025 | | Case transferred to another court. | |
| 02/05/2025 | | Event Result::  BLS Rule 16 Litigation Control Conference scheduled on: 02/19/2025 02:00 PM<br>Has been: Canceled     For the following reason: Request of Defendant<br>Hon. Peter B Krupp, Presiding | Krupp |

I HEREBY ATTEST AND CERTIFY ON
___Feb. 5, 2025___ , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____
Asst.Clerk

perior Court - Suffolk
cket Number

| | CIVIL DOCKET NUMBER<br>(Court Use Only) | Massachusetts Trial Court |
|---|---|---|
| **BUSINESS LITIGATION SESSION (BLS) CIVIL ACTION COVER SHEET** | 24-1953 | Suffolk Superior Court<br>Business Litigation Session |



| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| # Deborah Caine | # Sturdy Memorial Hospital, Inc. |
| ATTORNEY NAME, FIRM NAME, ADDRESS, PHONE NUMBER, EMAIL ADDRESS, BOARD OF BAR OVERSEERS (BBO) NUMBER | (IF KNOWN) ATTORNEY NAME, FIRM NAME, ADDRESS, PHONE NUMBER, EMAIL ADDRESS, BBO NUMBER |
| John Roddy (BBO No. 424240)<br>Elizabeth Ryan (BBO No. 549632)<br>Bailey Glasser LLP<br>176 Federal Street, 5th Floor<br>Boston, MA 02110<br>(617) 439-6730 (phone)<br>(617) 951-3954 (fax)<br>jroddy@baileyglasser.com<br>eryan@baileyglasser.com | |

CASE CATEGORY CODE AND CASE TYPE (SEE INSTRUCTIONS)

BLS Case Category Code: K.1 _____            Is this a jury case?: YES ☑   NO ☐

Case Type: Consumer Class Action _____

*At the initial Rule 16 Conference, a Special Tracking Order will be created for this case.*

Please provide a detailed statement of the facts and reasons why this case should be accepted into the Business Litigation Session, including the amount in controversy:

Sturdy Memorial Hospital, Inc. operates websites through which patients at its various medical facilities book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health services professionals. Plaintiff alleges that unbeknownst to the patients who use the portal, Sturdy shares their medical information with Google. Surreptitious sharing of this information with Google violates the Massachusetts Wiretap Act ("Wiretap Act" or "the Act"), G.L. c. 272, § 99, as well as c. 214, § 1B (right of privacy) and c. 111, § 70E (patients' and residents' rights). Plaintiff seeks compensatory and statutory damages in an amount to be determined through discovery and injunctive relief on her own behalf and that of a class of similarly situated Massachusetts residents to remedy Sturdy's violations of law.

*If applicable, please identify the case docket number, case name, and county in which there is any related case or cases pending in the Superior Court or any other court.*

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my client(s) with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various dispute resolution methods."

Signature of Attorney of Record: _____                    Date: 7/24/24

I HEREBY ATTEST AND CERTIFY ON
____Feb.5,2025____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____
        Asst.Clerk

perior Court - Suffolk
cket Number

ER

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SESSION**

C.A. NO.: 24-1953

---

Deborah Caine, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Sturdy Memorial Hospital, Inc.,

Defendant.

**Class Action Complaint**

**Jury Trial Demanded**

---

### Introduction

1. Sturdy Memorial Hospital, Inc. ("Sturdy") operates websites for its various medical facilities through which Sturdy patients book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health services professionals.

2. Unbeknownst to the patients who use its medical websites, Sturdy shares patients' private protected health information ("PHI") and individually identifiable health information ("IIHI") with Google.

3. Both Massachusetts and federal law protect the confidentiality of a patient's private health records and communications, and strictly limit the disclosure of such information without consent. G.L. c. 111, § 70E; Health Information Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191 (1996). Regulations promulgated

under HIPAA define IIHI as health information that can be linked to a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well as any other form or medium. *See* 45 CFR 46.160.103.

4.      Sturdy has deployed throughout its medical website system Google Analytics, invisible programming code that tracks users' actions as they navigate through the medical website.

5.      Google Analytics is a web analytics service offered by Google. Google Analytics tracks both the patients' general search activity and their <u>searches for providers</u> in particular. Sturdy shares this activity along with the patients' IP addresses and other identifying information directly with Google, disclosing the patients' PHI and IIHI.

6.      Sturdy does not obtain patients' consent to share their PHI and IIHI and in fact does not disclose to its patients that it so shares this information with Google.

7.      Google receives and stores the contents of patient communications with Sturdy as they occur in real time, possibly before the full response from Sturdy has even appeared on the patient's computing device.

8.      This contemporaneous sharing of patients' PHI and IIHI violates Plaintiff's and Class Members' rights as patients and their reasonable expectations of privacy. It also breaches the express and implied promises Sturdy makes to patients.

9.      Sturdy's surreptitious sharing of this information with Google violates the Massachusetts Wiretap Act ("Wiretap Act" or "the Act"), G.L. c. 272, § 99, as well as c. 214, § 1B (right of privacy) and c. 111, § 70E (patients' and residents' rights).

10.    Plaintiff Deborah Caine seeks compensatory and statutory damages and injunctive relief on her own behalf and that of a class of similarly situated Massachusetts residents to remedy Sturdy's violations of law.

**Parties**

11.    Sturdy Memorial Hospital, Inc. ("Sturdy") is an integrated health system that offers hospital-based care, emergency and urgent care, primary care, and a wide range of specialty care services at 32 locations in Southeastern Massachusetts.

12.    Sturdy is a corporation registered under the laws of Massachusetts and headquartered in Attleboro, Massachusetts.

13.    Deborah Caine is a resident of Attleboro, Massachusetts and patient of Sturdy.

**Jurisdiction**

14.    This Court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 3 because this action seeks money damages greater than $25,000.

15.    This Court has personal jurisdiction over Sturdy pursuant to G.L. c. 223A, § 3 because Sturdy is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business here and this action arises from Sturdy's contracting to supply services and things including, but not limited to, health care services, within the Commonwealth and causing tortious injury within the Commonwealth.

3

16.     Venue is proper in this county pursuant to Superior Court Administrative Directive No. 24-1, which allows Plaintiff to file this action in the Business Litigation Session sitting in Suffolk County.

## Facts

### Sturdy's System

17.     Sturdy operates 32 health care facilities in Massachusetts. *See* Locations & Clinics. It "opened its doors in 1913 as a 15-bed hospital in the former mansion of James and Ada Sturdy." *See* About Us.

18.     Sturdy now serves over 300,000 patients annually, including over 7,500 inpatients at Sturdy Memorial Hospital. *Id.*

19.     Sturdy employs over 2,000 health care professionals, and invests over $220 million in their salary and benefits annually, as well as $16 million annually in "uncompensated care." *Id.*

20.     Sturdy is engaged in trade or commerce in the Commonwealth of Massachusetts.

### Sturdy Shared Ms. Caine's Private Health Information with Google without Her Knowledge or Consent

21.     Ms. Caine was a Sturdy patient from the 1990s through July 2023. She has used its website more recently.

22.     Ms. Caine had no idea that Sturdy was sharing her PHI and IIHI with Google until learning as much shortly before filing this lawsuit.

4

23.     Ms. Caine's PHI and IIHI and her medical website history are private and contain confidential information which no third-party has a right to access without her consent.

24.     Upon information and belief Google compensated Sturdy for the disclosures of Ms. Caine's PHI and IIHI (and that of putative Class Members) in the form of enhanced marketing services.

25.     Sturdy profited from its sharing of Ms. Caine's information.

26.     Sturdy violated Ms. Caine's rights to privacy in her personally identifiable, sensitive, confidential medical communications.

### Common Allegations

**Sturdy Shared Plaintiff's and Class Members' Private, Confidential Health Information with Google without Disclosure or Consent**

#### Sturdy's Medical Website System

27.     Sturdy's website enables patients to search for medical information, physicians, specialists, and medical services, pay for medical services, and more. Patients transmit their medical information through the site, including private and confidential information regarding their medical conditions and treatment.

28.     When Sturdy patients use these online services, Sturdy surreptitiously shares their private health information with Google without their knowledge or consent, including but not limited to:

- The types of medical treatment patients are seeking;

- The name, gender, specialty, and address of the physician(s) from whom patients are seeking treatment;

5

- The clinic locations and events patients are seeking;

- The dates and times when patients log in to the patient portal;

- The dates and times when patients click to call doctors; and

- Patients' search terms.

29.     Sturdy shares its patients' IP addresses with Google, along with the above-referenced information. An IP address is a number that identifies a specific device connected to the Internet and its geolocation. The Health Insurance Portability and Accountability Act ("HIPAA") defines IP addresses as personally identifiable data. *See* 45 C.F.R. § 164.514(b)(2)(i)(0).

30.     Sturdy's website sends this patient information to Google using "Google Analytics," a web analytics service, which Sturdy has installed on its website. The software loads the moment a user visits a webpage and is invisible to regular website users. It can only be detected by accessing the webpage's source code. Google Analytics software enables website owners to track visitor actions on their website in order to gain valuable data about website usage, and also so the visitors can be targeted with personalized advertisements either by the website owners or by Google more generally. Among other information about a website user's browsing activity, device and browser, Google Analytics collects IP addresses of individual website users. . The IP addresses help Google to identify the person whose sensitive health data and information Sturdy is transmitting to Google via Google Analytics while that individual browses and interacts with the website. The Google Analytics software also identifies the person using Sturdy's website through other means, including through their browser

6

uperior Court - Suffolk
cket Number

identifiers, device identifiers, and cookies. Google uses the information that Sturdy

discloses to identify specific patients' actions on Sturdy's website.

31.     Google Analytics offers website owners an opt-in IP anonymization

feature. According to Google, this feature is designed to help website owners comply

with their own privacy policies and the recommendations of data protection authorities.

If a website owner enables the "Anonymize IP" feature, an additional parameter is

added to the communications between website visitors' computers and the Google

Analytics server, defined as aip=1 (see below).



32.     When the "aip" parameter does not appear, the IP address is not anonymized, therefore allowing Google to identify the patients' IP address and their online actions.

33.     Sturdy does *not* enable the "Anonymize IP" feature on its website, as evidenced by the absence of the "aip" parameter (see below).

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
        v: 1
       _v: j101
        a: 329231644
        t: pageview
       _s: 1
       dl: https://www.sturdyhealth.org/home-page/
       ul: en-us
       de: UTF-8
       dt: Sturdy Memorial
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
       je: 0
       _u: QACAAEABAAAAACAAI~
      jid:
     gjid:
      cid: 364006939.1697726092
      tid: UA-52979485-1
     _gid: 1739748149.1697959582
     _slc: 1
      gtm: 45He3ai0n81WWKK6KV
        z: 173894607
```

34.     By using the Google Analytics tool without the "Anonymize IP" feature, Sturdy is sharing with Google patients' online activities relating to their private medical

8

perior Court - Suffolk
cket Number

treatment, along with their IP addresses, even with respect to patients who have not

agreed to share such information.

### Example of Patient Medical Website Visit

35.    Sturdy patients can search for a provider by clicking "Find a Provider" in

the upper left corner of the website's homepage (see below).



36.    When patients search for a doctor's name or specialty through the free text

search bar, this information is automatically sent directly to Google (see below).



perior Court - Suffolk
cket Number



37.    As shown in the images below, Sturdy's website transmitted to Google the

patient's search for "plastic surgery" as a free text keyword, and the patient's search for

a doctor named David Barrall.

```
Protocol: https
    Host www.google-analytics.com
    Path: /collect
PARAMETERS
    v: 1
    _v: j101
    a: 860257746
    t: pageview
    _s: 1
    dl: https://www.sturdyhealth.org/find-a-provider/search-results/?sort=7
        &keyword=plastic+surgery
    ul: en-us
    de: UTF-8
    dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
        ro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1728x995
    je: 0
    _u: QACAAEABAAAAACAAI~
    jid:
    gjid:
    cid: 364006939.1697726092
    tid: UA-52979485-1
    _gid: 1739748149.1697959582
    gtm: 45He3ai0n81WWKK6KV
    z: 839950341
```

10

```
Protocol: https
    Host www.google-analytics.com
    Path: /collect
PARAMETERS
      v: 1
     _v: j101
      a: 1660168751
      t: event
     ni: 0
     _s: 1
     dl: https://www.sturdyhealth.org/find-a-provider/search-results/?sort=7
         keyword=+David+Barrall
     ul: en-us
     de: UTF-8
     dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
         ro, MA
     sd: 30-bit
     sr: 1728x1117
     vp: 1728x995
     je: 0
     ec: Outbound Link
     ea Find a Provider
     el: Click URL - https://www.sturdyhealth.org/find-a-provider/
     _u: SACAAEABAAAAACAAI~
    jid:
   gjid:
    cid: 364006939.1697726892
    tid: UA-52979485-1
   _gid: 1739748149.1697959582
    gtm: 45He3ai0n81WWKKGKV
      z: 1236365182
```

38.    Patients can also use the Advanced Search option, which can search for doctors using additional filtering options such as name, gender, specialty, and location (see below).

11



39.    When patients submit their search criteria, Sturdy's website automatically sends that information directly to Google. As shown below, the website transmitted to Google the patient's search for a female doctor named Barbara, near the address 1116 County St Attleboro 02703, and that the patient viewed the profile page for physician assistant Barbara Baxter (see below).

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect

PARAMETERS
        v: 1
       _v: j101
        a: 1076898063
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/find-a-provider/search-results/?first=
           Barbara&gender=Female&userEnteredPosition=1116+County+St+Attleboro+
           02703&sort=7&page=1
       ul: en-us
       de: UTF-8
       dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
           ro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x909
       je: 0
       ec: Advanced Provider Search
       ea: First Name
       el: barbara
       _u: QACAAEABAAAAACAAI~
      jid:


Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect

PARAMETERS
        v: 1
       _v: j101
        a: 1156560821
        t: pageview
       _s: 1
       dl https://www.sturdyhealth.org/find-a-provider/profile/barbara-baxter/
       ul: en-us
       de: UTF-8
       dt: Barbara Baxter, PA-C | OB/GYN Associates of Attleboro | Attleboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x909
```

13

 Sturdy Health

Careers   About   Patient Portal   Ways to Give   Pay


Find a Provider ▾          Locations & Clinics ▾          Medical Services ▾          Patients & Visitor

Home / Find a Provider / Find a Provider Profile

→ Return to Results



# Barbara Baxter, PA-C

Specialties: Obstetrics/Gynecology

Call **508-222-3200**

✓ Accepting new patients.

## Locations

**OB/GYN Associates of Attleboro**
687 North Main Street
Attleboro, MA 02703

Main: 508-222-3200
Fax: 508-222-7034
Locate on Map



40.    Sturdy patients can also search for medical services by clicking on the
medical services search bar on the website's homepage.

14



41.    As shown in the images below, Sturdy's website transmitted to Google

that the patient searched for "hiv" as a free text keyword, and also viewed the

Infectious Disease page.

15

```
Protocol: https
     Host: www.google-analytics.com
     Path: /j/collect
PARAMETERS
        v: 1
       _v: j101
        a: 1126632638
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/medical-services/search-results/?keyword=hiv&sort=9&page=1
       ul: en-us
       de: UTF-8
       dt: Medical Services Search Results | Sturdy Memorial Hospital | Attleboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x909
       je: 0
       ec: Advanced Services Search
       ea: hiv
       _u: QACAAEABAAAAACAAI~
      jid: 1064197225
```

```
Protocol: https
     Host: www.google-analytics.com
     Path: /collect
PARAMETERS
        v: 1
       _v: j101
        a: 1937126755
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/medical-services/search-results/?keyword=hiv&sort=9&page=1
       ul: en-us
       de: UTF-8
       dt: Medical Services Search Results | Sturdy Memorial Hospital | Attleboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x909
       je: 0
       ec: Outbound Link
       ea: Infectious Disease
       el: Click URL - https://www.sturdyhealth.org/medical-services/infectious-disease/
       _u: SACAAEABAAAAACAAI~
      jid:
     gjid:
```

16

42.    As shown in the images below, patients can search for locations and clinics, and for classes and events on the website's homepage.





Home / Classes & Events / Classes & Event Search Results

## Classes & Event Search Results

[ Search ]

**Cancer Support Group**
Our Oncology Department holds a Cancer Support Group on a regular basis for those undergoing cancer treatment, as well as survivors.

**Exercise Wellness Program**
Join our exercise wellness program to improve your physical conditioning.

**Healthy Steps**
Healthy Steps combines gentle movements, dance, and music to improve overall wellness, as well as emotional well-being and self-image.

**Prostate Cancer Support Group**
Our Oncology Department holds a Prostate Cancer Support Group on a regular basis for those undergoing treatment for prostate cancer, as well as survivors.

**Strength Training After Breast Cancer (Strength ABC)**
Strength ABC is a gradual weight training program designed for all breast cancer survivors.

43.     As shown in the images below, Sturdy's website transmitted to Google that the patient searched for clinics near the address 1116 County St Attleboro 02703, and that the patient searched for Support Groups in the Classes & Event page.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect

PARAMETERS
        v: 1
       _v: j101
        a: 1275396608
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/locations-clinics/search-results/?user
           EnteredPosition=1116+County+St+Attleboro+02703&sort=13&page=1
       ul: en-us
       de: UTF-8
       dt: Locations & Clinics Search Results | Sturdy Memorial Hospital | Att
           leboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
       je: 0
       ec: Advanced Location Search
```

18

perior Court - Suffolk
cket Number

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
     v: 1
    _v: j101
     a: 2035503703
     t: pageview
     s: 1
    dl: https://www.sturdyhealth.org/classes-events/search-results/?keyword
        s=Support+Group
    ul: en-us
    de: UTF-8
    dt: Classes & Event Search Results | Sturdy Memorial Hospital | Attlebo
        ro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1728x995
```

44.     Moreover, any information patients submit through the search bar (*e.g.*,

doctor, specialty, type of treatment) on the website's homepage is shared with Google,

along with patients' IP addresses.



19



45.     As shown in the image below, Sturdy Health's website transmitted to Google that the patient searched for "addiction", and that the patient clicked on the substance abuse page.



```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
        v: 1
       _v: j101
        a: 1607586321
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/site-search/?term=addiction
       ul: en-us
       de: UTF-8
       dt: Site Search | Sturdy Memorial Hospital | Attleboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
       je: 0
       ec: Outbound Link
       ea: Substance Abuse and Opioid Addiction Treatment
       el: Click URL - https://www.sturdyhealth.org/medical-services/substance-abuse/
       _u: SACAAEABAAAAACAAI~
```

46.    Sturdy patients can also log in to the Patient Portal through the website

(see below).





47.     As shown in the image below, Sturdy's website transmitted to Google that the patient clicked on the log-in button to the patient portal.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
    v: 1
    _v: j101
    a: 920900302
    t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org|patient-portal/|
    ul: en-us
    de: UTF-8
    dt: Patient Portal
    sd: 30-bit
    sr: 1728x1117
    vp: 1713x909
    je: 0
    ec: Outbound Link
    ea: Log In Here
    el: Click URL - https://cernerhealth.com/oauth/authenticate?redirect_u
        ri=https%3A%2F%2Fcernerhealth.com%2Fsaml%2Fsso%2Fresponse%3Fmessag
        e_id%3D_db449b47-18d8-469c-8c80-19def72db78b%26issuer%3Dhttps%253
        A%252F%252Fsturdymemorial.iqhealth.com%252Fsession-api%252Fprotoco
        l%252Fsaml2%252Fmetadata&sign_in_only=on&client_id=e16d380b950c4dd
        7a34077fac3c4eb4e
```

22

48.    Sturdy patients can also use its website to contact doctors they find during their searches (see below).



49.    As shown in the image below, when patients click the telephone number button to call a doctor's office, Sturdy's website immediately shares that information with Google.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
    v: 1
    _v: j101
    a: 2032595894
    t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org/find-a-provider/search-results/?gende
        r=Female&sort=7&page=1
    ul: en-us
    de: UTF-8
    dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attleb
        oro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1713x909
    je: 0
    ec: Phone Number
    ea: 508-316-1001
    el: Page Path - /find-a-provider/search-results/
```

23

50.     Every communication exchanged between patients and Sturdy's website contemporaneously and automatically shares patients' personally identifiable data including their IP addresses and the content of their communications with Google.

**Google Analytics**

51.     Google Analytics is a web analytics service that allows website owners to track visitor actions on their website to target them with personalized advertisements.

52.     Google Analytics is "far and away the web's most dominant analytics platform" and "tracks you whether or not you are logged in." *Who Has More of Your Personal Data than Facebook? Try Google,* The Wall Street Journal, https://www.wsj.com/articles/who-has-more-of-your-personal-data-than-facebook-try-google-1524398401

**Sturdy Ignored Google's Prohibition on Using Its Marketing Tools on Healthcare Related Websites**

53.     Google warns developers in its Personalized Advertising policies page that "Health" in personalized advertising is a "Prohibited category" for Google's personalized advertising tools. Specifically, Google's advertising policies page states:

> We take user privacy very seriously, and we also expect advertisers to respect user privacy. These policies define how advertisers are allowed to collect user data and use it for personalized advertising. They apply to advertisers using targeting features, including remarketing, affinity audiences, custom affinity audiences, in-market audiences, similar audiences, demographic and location targeting, and keyword contextual targeting....

54.     "Advertisers can't use sensitive interest categories to target ads or to promote advertisers' products or services." Customer Match policy. "Health" is one

24

such "[p]rohibited categor[y]" that Google states "can't be used by advertisers to targets ads to users or promote advertisers' products or services." Personalized advertising.

55.    Google provides instructions for web developers to anonymize IP addresses when they use Google Analytics. The IP anonymization feature "is designed to help site owners comply with their own privacy policies, or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information." IP masking in Universal Analytics. Web developers may also affirmatively choose to *not* use the IP anonymization feature — which is what Sturdy did here.

**The Nature and Means of Sturdy's Unauthorized Disclosure of Patients' Health Care Information**

56.    Upon information and belief, Sturdy intercepted and disclosed the following non-public private information to Google:

> Plaintiff's and putative Class Members' status as patients;
>
> Plaintiff's and putative Class Members' communications with Sturdy via its website;
>
> Plaintiff's and putative Class Members' log-ins and log-outs of Sturdy's patient portal;
>
> Plaintiff's and putative Class Members' searches for information regarding specific medical conditions and treatments, their medical providers, booking of appointments and their physical location.

57.    Sturdy's disclosures of patients' personal healthcare information occur because Sturdy intentionally deploys source code on its website that causes patients' personally identifiable information (as well as the exact contents of their communications) to be transmitted to third party Google.

58.     By design, Google receives and records the exact contents of patient communications before the full response from Sturdy to patients has been rendered on the screens of patients' computer devices and while the communications between Sturdy and its patients remain ongoing.

59.     Third-party advertising companies like Google use such private information to determine that specific patients were seeking specific types of confidential medical treatment. This kind of disclosure also allows Google to reasonably infer that specific patients were being treated for specific types of diseases or medical conditions, such as cancer or pregnancy.

60.     Websites like those maintained by Sturdy are hosted by computer servers through which the businesses in charge of the websites communicate with Internet users via the users' web browsers, which are hosted on users' client devices, such as desktop or laptop computers, tablets, or smart phones.

61.     Each exchange of an electronic communication over the Internet typically consists of a Hypertext Transfer Protocol ("HTTP") request from the client device and an HTTP response from a server. When a user types a Uniform Resource Locator ("URL") into a web browser, for example, the URL is sent as an HTTP request to the server corresponding to the web address, and the server returns an HTTP response that consists of a web page that appears in the client device's web browser.

62.     In addition to specifying the URL, HTTP requests can also send data to the host server, including users' cookies. Cookies are text files stored on client devices to record data, and often contain sensitive, personally identifiable information.

63.    In turn, HTTP responses may consist, among other things, of web pages, other types of files, text information, or error codes.

64.    Web pages consist primarily of "markup" and "source code." The markup of a web page comprises the visible portion of the web page. Markup is displayed by a web browser in the form of words, paragraphs, images, and videos. The source code of a web page is a set of instructions that commands the browser to take certain actions, either when the web page loads or when a specified event triggers the code.

65.    Source code is not visible on the client device's screen, but it may change the markup of a webpage, thereby changing what is displayed on the client device's screen. Source code may also execute a host of other programmed instructions, including commanding a web browser to send data transmissions in the form of HTTP requests to the website's server or, as is the case with Sturdy's website, to third parties.

66.    For example, Sturdy's website includes software code that transmits HTTP requests *directly* to Google, including patients' private health information, every time patients interacted with pages on the website.

67.    The basic command that web browsers use to exchange data and user communications is called a GET request. HTTP Request Methods. For example, when a patient types "heart failure treatment" into the search box on Sturdy's website and hits "Enter," the patient's web browser makes a connection with the server for Sturdy's website and sends the following request: "GET search/q=heart+failure+treatment."

68.    When a server receives a GET request, the information becomes appended to the next URL accessed by the user. For example, if a user enters "respiratory

27

problems" into the query box of a website search engine, and the search engine transmits this information using a GET request method, then the words "respiratory" and "problems" will be appended to the query string at the end of the URL of the webpage showing the search results.

69.     The other basic transmission command utilized by web browsers is POST, which typically occurs when a user enters data into a form on a website and clicks "Enter" or some other form of submission button. POST sends the data entered in the form to the server hosting the website that the user is visiting.

70.     In response to receiving a GET or POST command, the server for the website with which the user is exchanging information will send a set of instructions to the web browser and command the browser with source code that directs the browser to render the website's responsive communication.

71.     Once the initial connection is made between a user and a website, the communications commence and continue between the parties in a bilateral fashion until the user leaves the website.

72.     Unbeknownst to users, however, the website's server may also transmit the user's communications to third parties via third-party tracking tools. As noted, Google warns website developers and publishers that installing its ad tracking software on webpages employing GET requests will result in users' personally identifiable information being disclosed to Google. Best practices to avoid sending Personally Identifiable Information (PII).

73.     Third parties such as Google use the information they receive to track user data and communications for marketing purposes.

**Sturdy Breaches Its Privacy Policy and Other Representations by Its Undisclosed Sharing of Patient Health Information with Google**

74.     Patients' activity on Sturdy's medical website system, including pages accessed and links clicked, are private communications patients direct to Sturdy. By embedding the Google Analytics source code into its medical website system, Sturdy is disclosing to Google the contents of those communications.

75.     The Terms of Use & Disclaimer page of Sturdy's website refers users "to [its] privacy statement for a complete discussion of how [Sturdy] utilizes information [users] communicate via [the] web site."

76.     Sturdy's Notice of Privacy Practices in turn provides that Sturdy "may only use or disclose your Protected Health Information when you grant us permission through your written authorization." *See also id.* ("We will not use or share your information other than as described herein unless you inform us in writing that we can do so.").

77.     A short list of "cases [in which Sturdy] never share[s] your information unless you provide us with written permission" includes: "Marketing and sale of your information. *Id.* Likewise, a longer list of permissible "Uses and Disclosures" does *not* include any of the website's disclosures to Google. *Id. See also id.* ("We are required by law to maintain the privacy and security of your protected health information.").

29

78.    Sturdy's Patient Bill of Rights includes the right to "confidentiality of all records and communications concerning your medical history and treatment to the extent provided by law."

79.    A page linked to Sturdy's patient portal claims that the "portal's safe and secure data access and transmission adhere to Health Insurance Portability and Accountability Act (HIPAA) privacy rules and regulations." Accessing the Patient Portal.

80.    But in direct contravention of these representations, Sturdy uses Google Analytics to gather medical information about Plaintiff Deborah Caine and putative Class Members and disclose it to Google without their consent.

81.    The web pages that are being presented to patients and the patients' interactions with the website are communications between Sturdy and its patients.

82.    Sturdy allows Google to intercept those communications by embedding Google Analytics on its website.

## Applicable Massachusetts Law

**The Wiretap Act**

83.    Massachusetts General Law c. 272, § 99 (the "Wiretap Act") prohibits any person from willfully and secretly intercepting the contents of any wire communication by using any intercepting device unless given prior authority by all parties to a communication to do so.

30

84.    The Wiretap Act provides a civil remedy "against any person who so intercepts, discloses, or uses such communications or who so violates his personal, property, or privacy interest." c. 272, § 99Q.

85.    An "interception" under the statute "means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire ... communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication[.]" c. 272, § 99(4).

86.    An "intercepting device" is "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire ... communication[.]" c. 272, § 99(3).

87.    "[C]ontents" includes "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." c. 272, § 99B(5).

88.    Prevailing plaintiffs are "entitled to recover ... "(1) actual damages' but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation disbursements reasonably incurred." c. 272, § 99Q.

**Invasion of Privacy**

89.    G.L. c. 214, § 1B, provides that "a person shall have a right against unreasonable, substantial, or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such a right and in connection therewith to award damages."

31

90.     G.L. c. 111, § 70E provides that every patient or resident of a

Massachusetts health care facility shall have the right "to confidentiality of all records

and communications to the extent provided by law."

**HIPAA Requirements that Bind Sturdy**

91.     Sturdy is subject to HIPAA.

92.     HIPAA prohibits disclosure of individually identifiable health

information. HIPAA's privacy rule defines IIHI as information that relates to:

> an individual's past, present, or future physical or mental health or
> condition;

> an individual's provision of health care; or

> past, present, or future payment for the provision of health care to an
> individual.

> Identifies the individual or that there is a reasonable basis to believe that it
> can be used to identify the individual.

> Is created or received by a health care provider, health plan, employer, or
> health care clearinghouse.

93.     HIPAA's security rule defines protected health information as information

that is transmitted or maintained in electronic, written, or oral form. 45 C.F.R. § 160.103.

94.     Sturdy did not have a legal right to share with third parties Ms. Caine's

and other patients' PHI and IIHI without their written consent, because this information

is protected from such disclosure by law. 45 C.F.R. § 164.508(a)(1).

95.     On December 1, 2022, the Office for Civil Rights of the U.S. Department of

Health and Human Services issued a bulletin to highlight the obligations of HIPAA-

covered entities using "online tracking technologies," as Sturdy does.

32

96.     These technologies include code that tracks and profiles users' online activities and discloses the collected user data to technology vendors for marketing purposes without HIPAA-compliant authorization.

97.     The HHS Bulletin states: "Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of protected health information (PHI) to tracking technology vendors or any other violations of the HIPAA Rules." Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates.

**Fiduciary Duty to Maintain Patient Confidentiality**

98.     As a medical provider for Plaintiff and Class Members, Sturdy owes its patients a fiduciary duty of confidentiality in providing health care and in maintaining patients' health information.

99.     All health care providers owe their patients a duty not to disclose medical information about the patient without the patient's informed consent.

**Class Allegations**

100.    The class is composed of all Massachusetts residents who:

(i)     are or were patients of Sturdy at any time after the date Sturdy initially installed Google Analytics on its website; and

(ii)    exchanged communications at Sturdy's website, including but not limited to searching for or communicating information concerning the symptoms, diagnosis or treatment of a medical condition, or to schedule an appointment; and

(i)     for which Sturdy did not obtain the patient's consent under HIPAA or via any other valid form of consent.

33

101. Based on the volume of patient use of Sturdy's websites, the prospective class numbers more than 100,000, making joinder of all members impracticable. The exact size of the proposed class and the identity of the Class Members are readily ascertainable from Sturdy's business records.

102. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. The principal common issues regarding the Class include whether:

    a.    Sturdy's use of Google Analytics was without patient consent or authorization;

    b.    Sturdy obtained and shared or caused to be obtained and shared Plaintiff's and Class Members' PHI and/or IIHI through tracking using Google Analytics;

    c.    Sturdy's practices relating to disclosures of Plaintiff's and Class Members' communications with Sturdy to Google attached to PHI and/or IIHI were intentional;

    d.    Sturdy profited from the disclosures to Google;

    e.    Sturdy's practices relating to disclosures of Plaintiff's and Class Members' communications with Sturdy to Google attached to PHI and/or IIHI violate G.L. c. 272, § 99, c. 214, § 1B, and/or c. 111, § 70E;

    f.    Sturdy's practices constitute a breach of fiduciary duty;

    g.    Sturdy's conduct harmed and continues to harm Plaintiff and Class Members, and, if so, the extent of injury.

103. There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Sturdy's records, and the issues of liability are determinable entirely from the face of the operative documents.

34

104.    Plaintiff's claims are typical of those of the Class she seeks to represent, and she will fairly and adequately protect and represent the interests of the Class. There is no conflict between Plaintiff and the proposed Class.

105.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual Class Members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for Class Members to seek redress individually. In addition, it is likely that most Class Members are unaware that they have claims. Finally, the prosecution of separate actions by the individual Class Members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual Class Members against Sturdy.

106.    Plaintiff's counsel is competent and experienced in both consumer protection and class action litigation.

107.    Sturdy has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### Tolling of Statutes of Limitation

108.    All applicable statutes of limitation have been tolled by Sturdy's knowing and active concealment of the facts alleged in this Complaint.

109.    Plaintiff and Class Members could not have reasonably discovered Sturdy's practice of sharing their PHI and/or IIHI with Google until shortly before this class action was filed.

110.    Sturdy was and remains under a continuing duty to disclose to Plaintiff and Class Members its practice of sharing PHI and/or IIHI with Google.

111.    As a result of Sturdy's active concealment, all applicable statutes of limitation have been tolled.

## Claims for Relief

## Count I: Violation of the Wiretap Act

112.    Sturdy is a person as defined by the Wiretap Act.

113.    All communications between Plaintiff or Class Members and Sturdy qualify as wire communications under Massachusetts law because each communication is made using personal computing devices (e.g., computers, smartphones, tablets) that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

114.    Sturdy engaged and continues to engage in an "interception" by aiding Google to secretly record the contents of Plaintiff's and Class Members' wire communications.

115.    The "intercepting devices" used in this case include, but are not limited to:

- Plaintiff's and Class Members' personal computing devices;
- Plaintiff's and Class Members' web-browsers;
- Plaintiff's and Class Members' browser-managed files;
- Internet cookies;
- Sturdy's own computer servers;
- the third-party source code embedded on Sturdy's websites; and

36

- Google's computer servers, to which Plaintiff's and Class Members' communications were redirected.

116. Sturdy aided in and continues to aid in the interception of contents in that the data from the communications exchanged between Plaintiff or Class Members and Sturdy that were redirected to and recorded by Google include information which identifies the parties to each communication, their existence, and the exact contents of such communications.

117. Sturdy aided in the interception of "contents" in at least the following forms:

- The parties to the communications;

- The precise text of patient search queries;

- The precise text of patient communications about specific doctors;

- The precise text of patient communications about specific medical conditions;

- The precise text of patient communications about specific treatments;

- The precise text of patient communications about billing and payment;

- The precise text of specific buttons that patients click to exchange communications with Sturdy on its patient medical websites;

- The precise dates and times when patients click to enter the patient portal from the Sturdy patient medical websites;

- Information that is a general summary or informs the third parties of the general subject of communications that Sturdy sends back to patients in response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information; and

- Any other content Sturdy aids Google in scraping from the Internet.

37

## Count II: Violation of the Privacy Statutes

118.    Sturdy owes Plaintiff and Class Members a duty of confidentiality.

119.    Despite its statutory duty not to disclose IIHI or PHI without informed consent, Sturdy disclosed such information relating to Plaintiff's and Class Members' medical treatment to Google without the patient's knowledge or informed consent.

120.    The information disclosed included Plaintiff's and Class Members' status as Sturdy patients and the exact contents of communications exchanged between Plaintiff or Class Members and Sturdy, including but not limited to information about log-ins to Sturdy's patient medical website, treating doctors, potential doctors, conditions, treatments, appointments, search terms, and bill payment.

121.    The disclosure of personally identifiable medical information constitutes an unreasonable, substantial, and serious interference with Plaintiff's and Class Members' rights to privacy and confidentiality, in violation of G.L. c. 214, § 1B and c. 111, § 70E.

122.    Sturdy's violations of the privacy statutes injured Plaintiff and Class Members.

## Count III: Negligence

123.    Sturdy owed Plaintiff and Class Members a duty to exercise reasonable care in handling and using Plaintiff's and Class Members' PHI and IIHI in its care and custody, including the implementation of industry-standard privacy procedures sufficient to reasonably protect that information from the disclosure and unauthorized transmittal and use of the information that occurred.

38

124. Sturdy acted with wanton and reckless disregard for the privacy and confidentiality of Plaintiff's and Class Members' PII and IIHI by disclosing and providing access to that information to third parties for its own financial benefit.

125. Sturdy owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Sturdy knew or should have known would suffer injury-in-fact from Sturdy's disclosure of their PII and IIHI to benefit third parties and itself. Sturdy actively sought and obtained Plaintiff's and Class Members' PII and IIHI.

126. PII and IIHI are valuable, and Sturdy knew, or should have known, the harm that would be inflicted on Plaintiff and Class Members by disclosing their PII and IIHI to third parties. This disclosure benefitted Sturdy and third parties by virtue of their using the information for data harvesting, advertising, and to increase sales.

127. Sturdy breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in handling and securing Plaintiff's and Class Members' PII and IIHI. This failure actually and proximately caused Plaintiff's and Class Members' injuries.

128. As a direct and traceable result of Sturdy's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, exposure to inappropriate advertisements, use of their PII and IIHI for advertising purposes, and increased risk of future harm, embarrassment, and emotional distress.

39

129.    Sturdy's breach of its common-law duties to exercise reasonable care proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, unauthorized access to their PII and IIHI by third parties, improper disclosure of their PII and IIHI, loss in the value of their PII and IIHI. These injuries are ongoing, imminent, immediate, and continuing.

## Count IV: Breach of Implied Contract

130.    As a condition of receiving medical care from Sturdy, Plaintiff and Class Members provided their PII and IIHI, and paid for the treatment they received. In so doing, Plaintiff and Class Members entered into contracts with Sturdy, pursuant to which Sturdy agreed to safeguard and protect that information, in its Privacy Policies and elsewhere, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data was breached, compromised and/or stolen.

131.    Implicit in the agreement between Sturdy and its patients (i.e., Plaintiff and Class Members) was the obligation that Sturdy and its business associates would maintain the PII and IIHI confidentially and securely.

132.    Sturdy had an implied duty of good faith to ensure that Plaintiff's and Class Members's PHI and IIHI in its possession was only used as authorized, such as to provide medical treatment, billing, and other medical benefits.

133.    Sturdy had an implied duty to protect Plaintiff's and Class Members' PII and IIHI from unauthorized disclosure or uses.

40

134.    Sturdy implicitly promised to keep its patients' PII and IIHI secure and confidential.

135.    Plaintiff and Class Members fully performed their obligations under the implied contract with Sturdy, but Sturdy did not. Plaintiff and Class Members would not have provided their PII and IIHI to Sturdy in the absence of their implied contracts with Sturdy that the information would be kept in confidence, and would instead have retained the opportunity to control their PII and IIHI for uses other than receiving medical treatment from Sturdy.

136.    Sturdy breached its implied contracts with Plaintiff and Class Members by disclosing Plaintiff's and Class Members' PII and IIHI to unauthorized third parties.

137.    Sturdy's acts and omissions have materially affected the intended purpose of the implied contracts that required Plaintiff and Class Members to disclose their PII and IIHI in exchange for medical treatment and benefits.

138.    As a direct and proximate result of Sturdy's breach of implied contracts, Plaintiff and Class Members have suffered (and will continue to suffer) the compromise and disclosure of their PII and IIHI.

139.    As a direct and proximate result of Sturdy's breach of implied contracts, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

## Count V: Breach of Fiduciary Duty

140.    Sturdy breached its fiduciary duty of confidentiality by disclosing PHI

and IIHI about Plaintiff and Class Members and the exact content of their

communications with Sturdy.

141.    Sturdy's breach injured Plaintiff and Class Members in the following

ways:

- Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

- Sturdy eroded the essential confidential nature of the provider-patient relationship;

- Sturdy took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

- Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included Sturdy's duty to maintain confidentiality; and

- Sturdy's actions diminished the value of Plaintiff's and Class Members' personal information.

## Request for Relief

WHEREFORE, Plaintiff, individually and on behalf of all Class Members,

requests that the Court:

- Certify the proposed Class, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

- Permanently enjoin Sturdy from continuing the unlawful practices alleged in this Complaint;

- Order Sturdy to pay both pre-judgment and post-judgment interest on any amounts awarded;

42

- Award statutory damages pursuant to the Wiretap Act;

- Award compensatory damages in an amount to be determined at trial;

- Declare Sturdy's business practices alleged in the Complaint to be unlawful; and

- Order such other or further relief as may be appropriate.

### Demand for Jury Trial

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: July 24, 2024

Respectfully submitted,

/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer
Bart D. Cohen
Bailey Glasser LLP
1622 Locust St.
Philadelphia, PA 19103
(215) 274-9420 (phone)
(202) 463-2103 (fax)
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*

I HEREBY ATTEST AND CERTIFY ON
___Feb.5,2025___, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:_____
Asst.Clerk

43

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**

CIVIL DOCKET#: **2484CV01953-BLS1**

Notice Sent
7/25/24
S.R.

Case:   Caine v. Sturdy Memorial Hospital, Inc.

### NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS1**.

Hereafter, as shown above, all parties must include the initials "BLS1" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the appropriate BLS Session Clerk at Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel. Before the Rule 16 Conference, counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Project on Discovery (counsel are directed to www.mass.gov/superior-court-business-litigation-session for description of the Project). Counsel may indicate their respective client's participation by completing, filing, and serving the attached form. If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated:  July 25, 2024

/s/ Kenneth W. Salinger

Kenneth W. Salinger
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

I HEREBY ATTEST AND CERTIFY ON
____Feb.5,2025____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
        Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:_____
            Asst.Clerk

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**

CIVIL DOCKET#: _____

Case: _____

As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the project with the Court at the initial case management conference. For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at: www.mass.gov/superior-court-business-litigation-session)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

___ (Check) **Yes,**_____ is willing to participate in the Discovery Project.
                        (Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____

Counsel For_____          Date_____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

Assistant Clerk - BLS1      **OR**      Assistant Clerk - BLS2
BLS1, Room 1015                      BLS2, Room 1017
3 Pemberton Square                   3 Pemberton Square
Boston, MA 02108                     Boston, MA 02108

- 2 -

Date Filed 10/21/2024 3:48 PM
Superior Court - Suffolk
Docket Number 2484CV01953

MH

| | CIVIL DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| **Summons** | 2484CV01953-BLS1 | The Superior Court |

| CASE NAME: | John E. Powers III | Acting Clerk of Courts |
|---|---|---|
| *Deborah Caine, on behalf of herself and others similarly situated* Plaintiff(s) | Suffolk | County |
| vs. | COURT NAME & ADDRESS: | |
| *Sturdy Memorial Hospital, Inc.* | Suffolk Superior Civil Court Three Pemberton Square Boston, MA. 02108 | |
| Defendant(s) | **ORIGINAL** | |

THIS SUMMONS IS DIRECTED TO *Sturdy Memorial Hospital Inc.* (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the *Suffolk Superior* Court, *BLS - 1* **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, *Suffolk Superior* Court *3 Pemberton Sq., Boston, MA 02108* (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

Date Filed 10/21/2024 3:43 PM
Superior Court - Suffolk
Docket Number 2484CV01953

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant." .

Witness Hon. Michael D. Ricciuti _____, Chief Justice on _____, 20____ . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

**Bristol County Sheriff's Office   P.O. Box 8928   New Bedford, MA  02742-0928  (508) 992-6631**
**Bristol, SS**

October 18, 2024

I hereby certify and return that on 10/17/2024 at 1:23 PM I served a true and attested copy of the Summons and Complaint Jury Trial Demanded, Business Litigation Session (BLS) Civil Action Cover Sheet, Notice of Acceptance into Business Litigation Session, Civil Tracking Order in this action in the following manner: To wit, by delivering in hand to Kharidi Sreevidya, agent, person in charge at the time of service for Sturdy Memorial Hospital Int., 211 Park Street Attleboro, MA 02703 . Attest Fee ($5.00) Basic Service Fee ($30.00) Conveyance ($4.50) Copies ($2.00) Postage and Handling ($2.75) Travel ($17.60) Total: $61.85

**Deputy Sheriff Robert Brassard**                              **Deputy Sheriff**

I HEREBY ATTEST AND CERTIFY ON
___Feb.5,2025___ , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:_____
         Asst.Clerk

Date Filed 11/4/2024 2:37 PM
Superior Court - Suffolk
Docket Number 2484CV01953



# NOTIFY

## COMMONWEALTH OF MASSACHUSETTS

### SUPERIOR COURT DEPARTMENT BUSINESS LITIGATION SESSION

**SUFFOLK, ss.**

Notice sent (3)
11/13/2024

(sc)

DEBORAH CAINE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Case No.: 2484CV01953-BLS1

STURDY MEMORIAL HOSPITAL, INC.,

Defendant.

## DEFENDANT STURDY MEMORIAL HOSPIAL INC.'S CONSENT MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

Defendant, Sturdy Memorial Hospital, Inc. ("Defendant"), by and through the undersigned counsel, hereby files this Consent Motion for Extension of Time to Respond to the Complaint up to and including December 13, 2024. Plaintiff consents to this relief. Good cause exists for this extension as Defendant recently retained the undersigned as counsel, requires additional time to address with counsel the alleged facts and claims and its response thereto, and due to the intervening Thanksgiving holidays. This extension would not affect any other deadlines in this case or unduly hinder the Court's ability to proceed with the case in a timely manner.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests this Honorable 'rt:

GRANT Defendant's Consent Motion for Extension of Time to Respond to the

·mplaint; and

B. EXTEND the time for Defendant to respond to the complaint up to and including

December 13, 2024.

Dated: November 4, 2024

Respectfully submitted,

*/s/ James H. Rollinson*
James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

I HEREBY ATTEST AND CERTIFY ON
___Feb.5,2025___, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____
            Asst.Clerk

Elizabeth A. Scully (pro hac vice to be filed)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

*Attorneys for Defendant*

2

## CERTIFICATE OF SERVICE

I hereby certify that, on November 4, 2024 copies of the foregoing were served on the

following by email at the addresses listed below.

John Roddy
Elizabeth Ryan
BAILEY GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer
Bart D. Cohen
BAILEY GLASSER LLP
1622 Locust St.
Philadelphia, PA 19103
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff*

/s/ *James H. Rollinson*
*One of the attorneys for Defendant*

Da... Filed 12/10/2024 2:34...
Superior Court Suffolk
Docket Number 2484CV01953

NOTIFY

6

DV

**COMMONWEALTH OF MASSACHUSETTS**

**SUPERIOR COURT DEPARTMENT BUSINESS LITIGATION SESSION**

**SUFFOLK, ss.**

Notice sent
12/19/24
BA(2)

DEBORAH CAINE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STURDY MEMORIAL HOSPITAL, INC.,

Defendant.

Case No.: 2484CV01953-BLS1

**DEFENDANT STURDY MEMORIAL HOSPITAL INC.'S
CONSENT MOTION FOR EXTENSION OF TIME TO BRIEF DEFENDANT'S
MOTION TO DISMISS OR OTHERWISE RESPOND TO THE COMPLAINT**

Defendant, Sturdy Memorial Hospital, Inc. ("Defendant"), by and through the undersigned counsel, hereby files this Consent Motion for Extension of Time to Brief Defendant's Motion to Dismiss or Otherwise Respond to the Complaint. Plaintiff consents to this relief. Good cause exists for this extension. Pursuant to Mass. R. Super. Ct. 9(C), the Parties conferred regarding Defendant's intention to file a Motion to Dismiss Plaintiff's Complaint. Those conversations are ongoing. Therefore, the Parties request a short one-week extension of Defendant's deadline to file its motion to dismiss or otherwise respond to the complaint, as well as corresponding short extensions to the briefing related thereto, in order to further confer regarding the motion and due to the intervening holidays. This extension would not affect any other deadlines in this case or unduly hinder the Court's ability to proceed with the case in a timely manner.

WHEREFORE, for the foregoing reasons, the Parties respectfully request this Honorable Court:

12-16-24 ALLOWED. (H. Kazarjian, J.)

A. GRANT Defendant's Consent Motion for Extension of Time to Brief Defendant's Motion

to Dismiss or Otherwise Respond to the Complaint;

B. EXTEND the time for Defendant to file its motion to dismiss or otherwise respond to the

complaint up to and including December 20, 2024;

C. EXTEND the time for Plaintiff to oppose or otherwise respond to Defendant's motion to

dismiss up to and including January 24, 2025; and

D. EXTEND the time for Defendant to file any reply in support of its motion to dismiss up to

and including twenty-one (21) days after Plaintiff files any opposition.

Dated: December 10, 2024

Respectfully submitted,

*/s/ James H. Rollinson*

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

I HEREBY ATTEST AND CERTIFY ON
__Feb.5,2025__, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____
Asst.Clerk

Elizabeth A. Scully (pro hac vice to be filed)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

*Attorneys for Defendant*

2

## CERTIFICATE OF SERVICE

I hereby certify that, on December 10, 2024, copies of the foregoing were served on the

following by email at the addresses listed below.

John Roddy
Elizabeth Ryan
BAILEY GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer
Bart D. Cohen
BAILEY GLASSER LLP
1622 Locust St.
Philadelphia, PA 19103
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff*

/s/ James H. Rollinson
*One of the attorneys for Defendant*

Date Fi    2/10/2024 2:34
Superior Court - Suffolk
Docket Number 2484CV01953

NOTIFY

## COMMONWEALTH OF MASSACHUSETTS

### SUPERIOR COURT DEPARTMENT BUSINESS LITIGATION SESSION

**SUFFOLK, ss.**

*Notice sent*
*12/19/24*
*BA(2)*

|  |  |
|---|---|
| DEBORAH CAINE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 2484CV01953-BLS1 |
| v. | |
| STURDY MEMORIAL HOSPITAL, INC., | |
| Defendant. | |

### [PROPOSED] ORDER

Upon consideration of Defendant Sturdy Memorial Hospital, Inc.'s ("Defendant") Consent Motion for Extension of Time to Brief Defendant's Motion to Dismiss or Otherwise Respond to the Complaint ("Motion"), it is hereby:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that Defendant's time to file its motion to dismiss or otherwise respond to the Complaint is extended up to and including December 20, 2024;

ORDERED that Plaintiff's time to oppose or otherwise respond to Defendant's motion to dismiss is extended up to and including January 24, 2025; and

ORDERED that Defendant's time to file any reply in support of its motion to dismiss is extended up to and including twenty-one (21) days after Plaintiff files any opposition.

IT IS SO ORDERED.

ENTERED this _____16th_____ day of __December__ 2024.

_____

MASSACHUSETTS SUPERIOR COURT JUDGE

I HEREBY ATTEST AND CERTIFY ON
___Feb.5,2025___, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
    Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
            Asst.Clerk

Date Filed 1/24/2025 4:46 PM   Case 1:25-cv-10261-ADB   Document 7   Filed 02/10/25   Page 61 of 130
Superior Court - Suffolk
Docket Number 2484CV01953

8

MS

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT BUSINESS LITIGATION SESSION**

Deborah Caine, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Sturdy Memorial Hospital, Inc.,

Defendant.

Case No.: 2484CV01953-BLS1

**Amended Class Action Complaint**

**Jury Trial Demanded**

### Introduction

1.      Sturdy Memorial Hospital, Inc. ("Sturdy") operates <u>websites</u> for its various medical facilities through which Sturdy patients book appointments, describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health services professionals.

2.      Unbeknownst to the patients who use its medical websites, for an indeterminate period of time through at least July 2024 Sturdy shared patients' private protected health information ("PHI") and individually identifiable health information ("IIHI") with Google. Google is, among other things, an advertising company. Google and Sturdy used patients' information shared by Sturdy to target advertising at Sturdy's patients.

3.      Both Massachusetts and federal law protect the confidentiality of a patient's private health records and communications and strictly limit the disclosure of

such information without consent. G.L. c. 111, § 70E; Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191 (1996). Regulations promulgated under HIPAA define IIHI as health information that can be linked to a specific person and PHI as IIHI that is transmitted by or maintained in electronic media as well as any other form or medium. *See* 45 C.F.R. § 46.160.103.

4. Sturdy deployed throughout its medical website system Google Analytics, invisible programming code that tracks users' actions as they navigate through the medical website. On information and belief, Sturdy deployed this version of Google's tracker for a period of years, until it stopped using this version sometime in July 2024, after this lawsuit was filed.

5. Google Analytics is a web analytics service offered by Google. Google Analytics tracks both the patients' general search activity and their particular searches for medical providers. Sturdy shares this activity along with the patients' IP addresses and other identifying information directly with Google, disclosing the patients' PHI and IIHI.

6. Sturdy does not obtain patients' consent to share their PHI and IIHI and in fact does not disclose to its patients that it shares their information with Google.

7. Google receives and stores the contents of patient communications with Sturdy as they occur in real time, possibly before the full response from Sturdy has even appeared on the patient's computing device.

8. This contemporaneous sharing of patients' PHI and IIHI violates Plaintiff's and Class Members' rights as patients and their reasonable expectations of

2

privacy. It also breaches the express and implied promises Sturdy makes to patients.

9.      Sturdy recognizes its duties and assures visitors to its website that it is "required by law to maintain the privacy and security of your protected health information." Sturdy further promises that it "will not use or share your information other than as described herein unless you inform us in writing that we can do so."[1]

10.      These assurances are false and misleading. In fact, Sturdy disregards its duties, internal policies, and the laws that prohibit disclosures of patient PHI/IIHI.

11.      Sturdy routinely disclosed such PHI/IIHI by using various digital marketing and automatic re-routing tools on its website. Via these tools, Sturdy purposefully and intentionally discloses its patients' PHI/IIHI to third parties. In turn, these third parties exploit that information, and use it for advertising. By using these tools, Sturdy took its patients' confidential communications and PHI and IIHI and automatically sent that information to Google—violating its patients' reasonable expectations of privacy, their rights as patients, their rights as citizens of Massachusetts, and Sturdy's express and implied promises of patient privacy.

12.      Plaintiff Deborah Caine seeks compensatory and statutory damages and injunctive relief on her own behalf and that of a class of similarly situated Massachusetts residents to remedy Sturdy's violations of law.

### Parties

13.      Sturdy Memorial Hospital, Inc. ("Sturdy") is an integrated health system

---

[1] https://www.sturdyhealth.org/app/files/public/163a456d-fcd7-43e3-8a49-da172f497338/HIPAA.pdf

3

that offers hospital-based care, emergency and urgent care, primary care, and a wide range of specialty care services at 32 locations in Southeastern Massachusetts.

14.     Sturdy is a corporation registered under the laws of Massachusetts and headquartered in Attleboro, Massachusetts.

15.     Deborah Caine is a resident of Attleboro, Massachusetts, and was a patient of Sturdy.

## Jurisdiction

16.     This Court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 3 because this action seeks money damages greater than $25,000.

17.     This Court has personal jurisdiction over Sturdy pursuant to G.L. c. 223A, § 3 because Sturdy is licensed to do business in the Commonwealth of Massachusetts, has offices in and transacts substantial business here and this action arises from Sturdy's contracting to supply services and things including, but not limited to, health care services, within the Commonwealth and causing tortious injury within the Commonwealth.

18.     Venue is proper in this county pursuant to Superior Court Administrative Directive No. 24-1, which allows Plaintiff to file this action in the Business Litigation Session sitting in Suffolk County.

## Facts

### Sturdy's System

19.     Sturdy operates thirty-two health care facilities in Massachusetts. *See* Locations & Clinics. It "opened its doors in 1913 as a 15-bed hospital in the former

4

mansion of James and Ada Sturdy." *See* <u>About Us</u>.

20.    Sturdy now serves over 300,000 patients annually, including over 7,500 inpatients at Sturdy Memorial Hospital. *Id.*

21.    Sturdy employs over 2,000 health care professionals and invests over $220 million in their salary and benefits annually, as well as $16 million annually in "uncompensated care." *Id.*

**Sturdy Shared Ms. Caine's Private Health Information with Google Without Her Knowledge or Consent**

22.    Ms. Caine was a Sturdy patient from the 1990s through July 2023. She received medical treatment from Sturdy at its North Attleboro Medical Center location. While she was a patient Ms. Caine used Sturdy's website frequently for purposes that included searching for information and resources related to medical conditions and treatment. She used the Sturdy website to search for medical information and to schedule appointments.

23.    While a patient at Sturdy Ms. Caine searched Sturdy's website specifically to locate doctors at Sturdy's North Attleboro Medical Center facility and for other information concerning women's health that was pertinent to her. She searched for information on several significant health issues, the specifics of which are highly sensitive but which Ms. Caine would disclose under a confidentiality agreement.

24.    In addition, Ms. Caine frequently used the search feature on the website to stay up to date regarding her medical conditions, to identify other Sturdy doctors to help with the specific medical issues she is facing and to search for additional primary

5

care providers. For instance, in or about July 2023, Ms. Caine used the Sturdy website on multiple occasions to search for a new primary care provider for herself as she had decided to change providers.

25. These searches showed what medical conditions, medications and doctors were relevant to Ms. Caine's health and thereby disclosed her private health information. Ms. Caine reasonably believed that her searches and interactions on Sturdy's website would remain confidential and that her sensitive health information would not be disclosed to third parties.

26. Sturdy, however, transmitted Ms. Caine's private health information to Google, a third-party platform, enabling Sturdy to monetize Ms. Caine's sensitive data without her knowledge or informed consent.

27. On information and belief, Sturdy transmitted to Google all of Ms. Caine's website interactions and searches, including: (1) her sensitive health information described above, and (2) her personally identifiable Internet Protocol (IP) address, without her authorization or consent. Ms. Caine neither knew nor had any reasonable basis to know that Sturdy was disclosing her PHI and IIHI to Google. Ms. Caine first became aware of Sturdy's unauthorized disclosures of her PHI and IIHI immediately preceding the filing of her initial Complaint in this litigation.

28. As a result of Sturdy's unauthorized disclosures to Google, Ms. Caine has been subjected to targeted digital advertisements specifically relating to her medical conditions, including advertisements concerning her confidential health diagnoses and treatments.

Date Filed 1/24/2025 4:46 PM
Superior Court - Suffolk
Docket Number 2484CV01953

29. Ms. Caine's PHI, IIHI, and medical website search history constitute private, confidential information that requires explicit authorization prior to any third-party disclosure. Ms. Caine suffered emotional distress upon discovering Sturdy's unauthorized transmission of her confidential health information to Google.

30. Upon information and belief Google compensated Sturdy for the disclosures of Ms. Caine's PHI and IIHI (and that of putative Class Members) in the form of enhanced marketing services.

31. Sturdy profited from its sharing of Ms. Caine's information.

32. Sturdy violated Ms. Caine's rights to privacy in her personally identifiable, sensitive, confidential medical communications.

### Common Allegations

**Sturdy Routinely Shared Plaintiff's and Class Members' Private, Confidential Health Information with Third-Party Advertising Company Google Without Disclosure or Consent**

33. As Sturdy recognizes, healthcare systems have a duty to refrain from making unauthorized disclosures to third parties about their patients' nonpublic medical information.

34. Patients are aware of the promises of confidentiality contained within the Hippocratic Oath and are guarded against unauthorized disclosures of their private medical information by statutory, regulatory, and common law protections afforded them under the law.

35. Patients reasonably expect that healthcare providers will meet these confidentiality promises, obligations, and protections when patients seek medical care.

36.     Medical patients like Plaintiff and the Class have legal and financial interests in preserving the confidentiality of their communications with healthcare providers.

37.     Patients also have reasonable expectations of privacy that their PHI/IIHI and communications will not be disclosed to third parties without their express written consent and authorization.

38.     As a health care provider, Sturdy has fiduciary, common law, and statutory duties to protect the confidentiality of patient information and communications.

39.     Sturdy expressly and impliedly promises patients that they will maintain and protect the confidentiality of patient PHI/IIHI and communications.

**Sturdy's Medical Website System**

40.     Sturdy operates a website for its patients, with the address of www.sturdyhealth.org.

41.     Sturdy's website allows patients to communicate with it, including to schedule appointments, search for doctors, pay bills, request medical records, and research medical issues and treatment options.

42.     Sturdy encourages patients to use the digital tools on its website to seek and receive health care services, claiming that it is an easier and more convenient way to request appointments, pay bills, and reach doctors.

43.     The home page of Sturdy's website provides links to tools to seek medical treatment, find a doctor, and other information.

8

44.     Sturdy also maintains a patient portal, which allows patients to make appointments, access medical records, view lab results, pay bills and exchange communications with health care providers.

45.     Patients transmit their medical information through the website, including private and confidential information regarding their medical conditions and treatment.

46.     For a substantial period of time, source code on Sturdy's website caused these communications to be intercepted and disclosed to third parties like Google. When Sturdy patients used these online services, Sturdy surreptitiously shared their private health information with Google without their knowledge or consent, including but not limited to:

- The types of medical treatment patients are seeking;

- The name, gender, specialty, and address of the physician(s) from whom patients are seeking treatment;

- The clinic locations and events patients are seeking;

- The dates and times when patients log in to the patient portal;

- The dates and times when patients click to call doctors; and

- Patients' search terms.

47.     Sturdy disclosed its patients' IP addresses to Google, along with the above-referenced information. An IP address is a number that identifies a specific device connected to the Internet and its geolocation. HIPAA defines IP addresses as personally identifiable data. *See* 45 C.F.R. § 164.514(b)(2)(i)(0).

48.     Sturdy's website sent this patient information to Google using "Google

9

Analytics," a web analytics service, which Sturdy has intentionally installed on its website. The software loads the moment a user visits a webpage and is designed to be invisible to regular website users. It can only be detected by accessing the webpage's source code. Google Analytics software enables website owners to track visitor actions on their website to gain valuable data about website usage, and also so the visitors can be targeted with personalized advertisements either by the website owners or by Google more generally.

49.     Among other information about a website user's browsing activity, device and browser, Google Analytics collects IP addresses of individual website users. The IP addresses enable Google to identify the person whose sensitive health data and information Sturdy is transmitting to Google via Google Analytics while that individual browses and interacts with the website. The Google Analytics software also identifies the person using Sturdy's website through other means, including through their browser identifiers, device identifiers, and cookies. Google uses the information that Sturdy discloses to identify specific patients' actions on Sturdy's website.

50.     Google Analytics offers website owners an opt-in IP anonymization feature. According to Google, this feature is designed to help website owners comply with their own privacy policies and the recommendations of data protection authorities. If a website owner enables the "Anonymize IP" feature, an additional parameter is added to the communications between website visitors' computers and the Google Analytics server, defined as aip=1 (see below).

10



51.    When the "aip" parameter does not appear, the IP address is not anonymized, therefore allowing Google to identify the patients' IP address and their online actions.

52.    Sturdy does *not* enable the "Anonymize IP" feature on its website, as evidenced by the absence of the "aip" parameter (see below).

```
Protocol: https
     Host: www.google-analytics.com
     Path: /j/collect
PARAMETERS
        v:.1
       _v: j101
        a: 329231644
        t: pageview
       _s: 1
       dl: https://www.sturdyhealth.org/home-page/
       ul: en-us
       de: UTF-8
       dt: Sturdy Memorial
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
       je: 0
      _u: QACAAEABAAAAACAAI~
     jid:
    gjid:
     cid: 364006939.1697726092
     tid: UA-52979485-1
    _gid: 1739748149.1697959582
    _slc: 1
     gtm: 45He3ai0n81WWKK6KV
       z: 173894607
```

53. By using the Google Analytics tool without the "Anonymize IP" feature, Sturdy is sharing with Google patients' online activities relating to their private medical treatment, along with their IP addresses, even with respect to patients who have not agreed to share such information.

54. Sturdy shared this patient information with Google for marketing purposes. Google is essentially an advertising company that uses patient information to target advertisements to patients. Sturdy shares patient information with Google in

12

order to obtain marketing and analytics benefits from Google.

### Example of Patient Medical Website Visit

55.     Sturdy patients can search for a provider by clicking "Find a Provider" in

the upper left corner of the website's homepage (see below).



56.     When patients search for a doctor's name or specialty through the free text

search bar, this information is automatically sent directly to Google (see below).





57.    As shown in the images below, Sturdy's website transmitted to Google the patient's search for "plastic surgery" as a free text keyword, and the patient's search for a doctor named David Barrall.

```
Protocol: https
    Host  www.google-analytics.com
    Path: /collect

PARAMETERS
      v: 1
     _v: j101
      a: 860257746
      t: pageview
     _s: 1
     dl: https://www.sturdyhealth.org/find-a-provider/search-results/?sort=7
         &keyword=plastic+surgery
     ul: en-us
     de: UTF-8
     dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
         ro, MA
     sd: 30-bit
     sr: 1728x1117
     vp: 1728x995
     je: 0
     _u: QACAAEABAAAAACAAI~
    jid:
   gjid:
    cid: 364006939.1697726092
    tid: UA-52979485-1
   _gid: 1739748149.1697959582
    gtm: 45He3ai0n81WWKK6KV
      z: 839950341
```

14

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
       v: 1
      _v: j101
       a: 1660168751
       t: event
      ni: 0
      _s: 1
      dl: https://www.sturdyhealth.org/find-a-provider/search-results/?sort=7
          #keyword=+David+Barrall
      ul: en-us
      de: UTF-8
      dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
          ro, MA
      sd: 30-bit
      sr: 1728x1117
      vp: 1728x995
      je: 0
      ec: Outbound Link
      ea: Find a Provider
      el: Click URL - https://www.sturdyhealth.org/find-a-provider/
      _u: SACAAEABAAAAACAAI~
     jid:
    gjid:
     cid: 364006939.1697726092
     tid: UA-52979485-1
    _gid: 1739748149.1697959582
     gtm: 45He3ai0n81WWKK6KV
       z: 1236365182
```

58.    Patients can also use the Advanced Search option, which can search for doctors using additional filtering options such as name, gender, specialty, and location (see below).



59.     When patients submit their search criteria, Sturdy's website automatically sends that information directly to Google. As shown below, the website transmitted to Google the patient's search for a female doctor named Barbara, near the address 1116 County St Attleboro 02703, and that the patient viewed the profile page for physician assistant Barbara Baxter (see below).

```
Protocol: https
     Host: www.google-analytics.com
     Path: /collect
PARAMETERS
     v: 1
    _v: j101
     a: 1076898063
     t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org/find-a-provider/search-results/?first=
        Barbara&gender=Female&userEnteredPosition=1116+County+St+Attleboro+
        02703&sort=7&page=1
    ul: en-us
    de: UTF-8
    dt: Find a Provider Search Results | Sturdy Memorial Hospital | Attlebo
        ro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1728x909
    je: 0
    ec: Advanced Provider Search
    ea: First Name
    el: barbara
    _u: QACAAEABAAAAACAAI~
   jid:


Protocol: https
     Host: www.google-analytics.com
     Path: /j/collect
PARAMETERS
     v: 1
    _v: j101
     a: 1156560821
     t: pageview
    _s: 1
    dl  https://www.sturdyhealth.org/find-a-provider/profile/barbara-baxter/
    ul: en-us
    de: UTF-8
    dt: Barbara Baxter, PA-C | OB/GYN Associates of Attleboro | Attleboro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1728x909
```

17

 Sturdy Health



Find a Provider ▾        Locations & Clinics ▾        Medical Services ▾        Patients & Visitor

Home / Find a Provider / Find a Provider Profile

→  Return to Results



## Barbara Baxter, PA-C

Specialties: Obstetrics/Gynecology

Call **508-222-3200**

✔  Accepting new patients.

## Locations

**OB/GYN Associates of Attleboro**
687 North Main Street
Attleboro, MA 02703

Main: 508-222-3200
Fax: 508-222-7034
Locate on Map



60.  Sturdy patients can also search for medical services by clicking on the

medical services search bar on the website's homepage.

18



61.    As shown in the images below, Sturdy's website transmitted to Google

that the patient searched for "hiv" as a free text keyword, and also viewed the

Infectious Disease page.

19

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
      v: 1
     _v: j101
      a: 1126632638
      t: event
     ni: 0
     _s: 1
     dl: https://www.sturdyhealth.org/medical-services/search-results/?keyword=hiv&sort=9&page=1
     ul: en-us
     de: UTF-8
     dt: Medical Services Search Results | Sturdy Memorial Hospital | Attleboro, MA
     sd: 30-bit
     sr: 1728x1117
     vp: 1728x909
     je: 0
     ec: Advanced Services Search
     ea: hiv
     _u: QACAAEABAAAAACAAI~
     jid: 1064197225


Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
      v: 1
     _v: j101
      a: 1937126755
      t: event
     ni: 0
     _s: 1
     dl: https://www.sturdyhealth.org/medical-services/search-results/?keyword=hiv&sort=9&page=1
     ul: en-us
     de: UTF-8
     dt: Medical Services Search Results | Sturdy Memorial Hospital | Attleboro, MA
     sd: 30-bit
     sr: 1728x1117
     vp: 1728x909
     je: 0
     ec: Outbound Link
     ea: Infectious Disease
     el: Click URL - https://www.sturdyhealth.org/medical-services/infectious-disease/
     _u: SACAAEABAAAAACAAI~
     jid:
     gjid:
```

62.    As shown in the images below, patients can search for locations and

20

clinics, and for classes and events on the website's homepage.



Home / Classes & Events / Classes & Event Search Results

## Classes & Event Search Results

[                                                                    ]  [ Search ]

**Cancer Support Group**
Our Oncology Department holds a Cancer Support Group on a regular basis for those undergoing cancer treatment, as well as survivors.

**Exercise Wellness Program**
Join our exercise wellness program to improve your physical conditioning.

**Healthy Steps**
Healthy Steps combines gentle movements, dance, and music to improve overall wellness, as well as emotional well-being and self-image.

**Prostate Cancer Support Group**
Our Oncology Department holds a Prostate Cancer Support Group on a regular basis for those undergoing treatment for prostate cancer, as well as survivors.

**Strength Training After Breast Cancer (Strength ABC)**
Strength ABC is a gradual weight training program designed for all breast cancer survivors.

63.     As shown in the images below, Sturdy's website transmitted to Google that the patient searched for clinics near the address 1116 County St Attleboro 02703, and that the patient searched for Support Groups in the Classes & Event page.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect

PARAMETERS
        v: 1
       _v: j101
        a: 1275396608
        t: event
       ni: 0
       _s: 1
       dl: https://www.sturdyhealth.org/locations-clinics/search-results/?user
           EnteredPosition=1116+County+St+Attleboro+02703&sort=13&page=1
       ul: en-us
       de: UTF-8
       dt: Locations & Clinics Search Results | Sturdy Memorial Hospital | Att
           leboro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
       je: 0
       ec: Advanced Location Search
       ... Dadius
```

22

```
Protocol: https
     Host: www.google-analytics.com
     Path: /j/collect
PARAMETERS
        v: 1
       _v: j101
        a: 2035503703
        t: pageview
        s: 1
       dl: https://www.sturdyhealth.org/classes-events/search-results/?keyword
           s=Support+Group
       ul: en-us
       de: UTF-8
       dt: Classes & Event Search Results | Sturdy Memorial Hospital | Attlebo
           ro, MA
       sd: 30-bit
       sr: 1728x1117
       vp: 1728x995
```

64.     Moreover, any information patients submit through the search bar (*e.g.*,

doctor, specialty, type of treatment) on the website's homepage is shared with Google,

along with patients' IP addresses.





65.      As shown in the image below, Sturdy Health's website transmitted to
Google that the patient searched for "addiction," and that the patient clicked on the
substance abuse page.

24

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
     v: 1
    _v: j101
     a: 1607586321
     t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org/site-search/?term=addiction
    ul: en-us
    de: UTF-8
    dt: Site Search | Sturdy Memorial Hospital | Attleboro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1728x995
    je: 0
    ec: Outbound Link
    ea: Substance Abuse and Opioid Addiction Treatment
    el: Click URL - https://www.sturdyhealth.org/medical-services/substance-abuse/
    _u: SACAAEABAAAAACAAI~
```

66.   Sturdy patients can also log in to the Patient Portal through the website
(see below).





SIGN IN TO STURDY MEMORIAL HOSPITAL

* Email address or username

* Password

Show password

Forgot password?      SIGN IN

Don't have an account?      SIGN UP

English (United States) ▼      Privacy   Terms

67.    As shown in the image below, Sturdy's website transmitted to Google that the patient clicked on the log-in button to the patient portal.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /j/collect
PARAMETERS
    v: 1
    _v: j101
    a: 920900302
    t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org/patient-portal/
    ul: en-us
    de: UTF-8
    dt: Patient Portal
    sd: 30-bit
    sr: 1728x1117
    vp: 1713x909
    je: 0
    ec: Outbound Link
    ea: Log In Here
    el: Click URL - https://cernerhealth.com/oauth/authenticate?redirect_u
        ri=https%3A%2F%2Fcernerhealth.com%2Fsaml%2Fsso%2Fresponse%3Fmessag
        e_id%3D_db449b47-18d8-469c-8c80-19def72db78b%26issuer%3Dhttps%253
        A%252F%252Fsturdymemorial.iqhealth.com%252Fsession-api%252Fprotoco
        l%252Fsaml2%252Fmetadata&sign_in_only=on&client_id=e16d380b950c4dd
        7a34077fac3e4eb4e
```

26

68.   Sturdy patients can also use its website to contact doctors they find during their searches (see below).



69.   As shown in the image below, when patients click the telephone number button to call a doctor's office, Sturdy's website immediately shares that information with Google.

```
Protocol: https
    Host: www.google-analytics.com
    Path: /collect
PARAMETERS
    v: 1
    _v: j101
    a: 2032595894
    t: event
    ni: 0
    _s: 1
    dl: https://www.sturdyhealth.org/find-a-provider/search-results/?gende
        r=Female&sort=7&page=1
    ul: en-us
    de: UTF-8
    dt Find a Provider Search Results | Sturdy Memorial Hospital | Attleb
       oro, MA
    sd: 30-bit
    sr: 1728x1117
    vp: 1713x909
    je: 0
    ec: Phone Number
    ea: 508-316-1001
    el: Page Path - /find-a-provider/search-results/
```

27

70.    Every communication exchanged between patients and Sturdy's website contemporaneously and automatically shares patients' personally identifiable data including their IP addresses and the content of their communications with Google.

**Google Analytics**

71.    Google Analytics is a web analytics service that allows website owners to track visitor actions on their website to target them with personalized advertisements.

72.    Google Analytics is "far and away the web's most dominant analytics platform" and "tracks you whether or not you are logged in." Christopher Mims, 2018, *Who Has More of Your Personal Data than Facebook? Try Google,* Wall Street Journal, April 22, 2018.

**Sturdy Ignored Google's Prohibition on Using Its Marketing Tools on Healthcare Related Websites**

73.    Google warns developers in its Personalized Advertising policies page that "Health" in personalized advertising is a "Prohibited category" for Google's personalized advertising tools. Specifically, Google's advertising policies page states:

> We take user privacy very seriously, and we also expect advertisers to respect user privacy. These policies define how advertisers are allowed to collect user data and use it for personalized advertising. They apply to advertisers using targeting features, including remarketing, affinity audiences, custom affinity audiences, in-market audiences, similar audiences, demographic and location targeting, and keyword contextual targeting....

74.    "Advertisers can't use sensitive interest categories to target ads or to promote advertisers' products or services." Customer Match policy. "Health" is one such "[p]rohibited categor[y]" that Google says it does not allow advertisers to target ads to users or promote advertisers' products or services. Personalized advertising.

28

You are responsible for ensuring your ads comply with policy where required. See below for specific examples of what we don't allow.

### Health in personalized advertising

⊗ Personal health content, which includes:

- Physical or mental health conditions, including diseases, sexual health, and chronic health conditions, which are health conditions that require long-term care or management
- Products, services, or procedures to treat or manage chronic health conditions, which includes over-the-counter medications and medical devices
- Any health issues associated with intimate body parts or functions, which includes genital, bowel, or urinary health
- Invasive medical procedures, which includes cosmetic surgery, surgical procedures, or injections
- Disabilities, even when content is oriented toward the user's primary caretaker

75.     Google provides instructions for web developers to anonymize IP addresses when they use Google Analytics. The IP anonymization feature "is designed to help site owners comply with their own privacy policies, or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information." IP masking in Universal Analytics. Web developers may also affirmatively choose to *not* use the IP anonymization feature — which is what Sturdy did here.

**The Nature and Means of Sturdy's Unauthorized Disclosure of Patients' Health Care Information**

76.     Upon information and belief, Sturdy intercepted and disclosed the following non-public private information to Google:

Plaintiff's and putative Class Members' status as patients;

Plaintiff's and putative Class Members' communications with Sturdy via its website;

29

Plaintiff's and putative Class Members' log-ins and log-outs of Sturdy's patient portal;

Plaintiff's and putative Class Members' searches for information regarding specific medical conditions and treatments, their medical providers, booking of appointments and their physical location.

77. Sturdy's disclosures of patients' personal healthcare information occur because Sturdy intentionally deploys source code on its website that causes patients' personally identifiable information (as well as the exact contents of their communications) to be transmitted to third party Google.

78. By design, Google receives and records the exact contents of patient communications before the full response from Sturdy to patients has been rendered on the screens of patients' computer devices and while the communications between Sturdy and its patients remain ongoing.

79. Third-party advertising companies like Google use such private information to determine that specific patients were seeking specific types of confidential medical treatment. This kind of disclosure reveals to Google that specific patients were being treated for specific types of diseases or medical conditions, such as cancer or pregnancy, and allows Google to target advertisements accordingly.

80. Websites like those maintained by Sturdy are hosted by computer servers through which the businesses in charge of the websites communicate with Internet users via the users' web browsers, which are hosted on users' client devices, such as desktop or laptop computers, tablets, or smart phones.

81. Each exchange of an electronic communication over the Internet typically

30

consists of a Hypertext Transfer Protocol ("HTTP") request from the client device and an HTTP response from a server. When a user types a Uniform Resource Locator ("URL") into a web browser, for example, the URL is sent as an HTTP request to the server corresponding to the web address, and the server returns an HTTP response that consists of a web page that appears in the client device's web browser.

82.     In addition to specifying the URL, HTTP requests can also send data to the host server, including users' cookies. Cookies are text files stored on client devices to record data, and often contain sensitive, personally identifiable information.

83.     In turn, HTTP responses may consist, among other things, of web pages, other types of files, text information, or error codes.

84.     Web pages consist primarily of "markup" and "source code." The markup of a web page comprises the visible portion of the web page. Markup is displayed by a web browser in the form of words, paragraphs, images, and videos. The source code of a web page is a set of instructions that commands the browser to take certain actions, either when the web page loads or when a specified event triggers the code.

85.     Source code is not visible on the client device's screen, but it may change the markup of a webpage, thereby changing what is displayed on the client device's screen. Source code may also execute a host of other programmed instructions, including commanding a web browser to send data transmissions in the form of HTTP requests to the website's server or, as is the case with Sturdy's website, to third parties.

86.     For example, Sturdy's website includes software code that transmits HTTP requests *directly* to Google, including patients' private health information, every

31

Date Filed 1/24/2025 4:46 PM
Superior Court - Suffolk
Docket Number 2484CV01953

time patients interacted with pages on the website.

87.    The basic command that web browsers use to exchange data and user communications is called a GET request. HTTP Request Methods. For example, when a patient types "heart failure treatment" into the search box on Sturdy's website and hits "Enter," the patient's web browser makes a connection with the server for Sturdy's website and sends the following request: "GET search/q=heart+failure+treatment."

88.    When a server receives a GET request, the information becomes appended to the next URL accessed by the user. For example, if a user enters "respiratory problems" into the query box of a website search engine, and the search engine transmits this information using a GET request method, then the words "respiratory" and "problems" will be appended to the query string at the end of the URL of the webpage showing the search results.

89.    The other basic transmission command utilized by web browsers is POST, which typically occurs when a user enters data into a form on a website and clicks "Enter" or some other form of submission button. POST sends the data entered in the form to the server hosting the website that the user is visiting.

90.    In response to receiving a GET or POST command, the server for the website with which the user is exchanging information will send a set of instructions to the web browser and command the browser with source code that directs the browser to render the website's responsive communication.

91.    Once the initial connection is made between a user and a website, the communications commence and continue between the parties in a bilateral fashion until

32

the user leaves the website.

92.    Unbeknownst to users, however, the website's server may also transmit the user's communications to third parties via third-party tracking tools. As noted, Google warns website developers and publishers that installing its ad tracking software on webpages employing GET requests will result in users' personally identifiable information being disclosed to Google. Best practices to avoid sending Personally Identifiable Information (PII).

93.    Third parties such as Google use the information they receive to track user data and communications for marketing purposes.

**Sturdy Breaches Its Privacy Policy and Other Representations by Its Undisclosed Sharing of Patient Health Information with Google Without Consent**

94.    Patients' activity on Sturdy's medical website system, including pages accessed and links clicked, are private communications patients direct to Sturdy. By embedding the Google Analytics source code into its medical website system, Sturdy is disclosing to Google the contents of those communications.

95.    The Terms of Use & Disclaimer page of Sturdy's website refers users "to [its] privacy statement for a complete discussion of how [Sturdy] utilizes information [users] communicate via [the] web site."

96.    Sturdy's Notice of Privacy Practices in turn provides that Sturdy "may only use or disclose your Protected Health Information when you grant us permission through your written authorization." *See also id.* ("We will not use or share your information other than as described herein unless you inform us in writing that we can

33

do so.").

97. A short list of "cases [in which Sturdy] never share[s] your information unless you provide us with written permission" includes: "Marketing and sale of your information. *Id.* Likewise, a longer list of permissible "Uses and Disclosures" does *not* include any of the website's disclosures to Google. *Id. See also id.* ("We are required by law to maintain the privacy and security of your protected health information.").

98. Sturdy's <u>Patient Bill of Rights</u> includes the right to "confidentiality of all records and communications concerning your medical history and treatment to the extent provided by law."

99. But in direct violation of these promises, Sturdy uses Google Analytics to gather medical information about Plaintiff Deborah Caine and putative Class Members and disclose it to Google without their consent.

100. The web pages that are being presented to patients and the patients' interactions with the website are communications between Sturdy and its patients.

101. Sturdy allows Google to intercept those communications by embedding Google Analytics on its website.

**Sturdy Unlawfully Enriched Itself When it Disclosed Patient PHI/IIHI Unnecessarily and Without Patient Authorization**

102. In exchange for disclosing PHI/IIHI about its patients, Sturdy is compensated by Google with enhanced online advertising services, including (but not limited to) retargeting and enhanced analytics functions.

103. Retargeting is a form of online targeted advertising that targets users with

34

ads based on their previous internet actions, which is facilitated through the use of cookies and tracking pixels. Once an individual's data is disclosed and shared with a third-party marketing company, the advertiser is able to show ads to the user elsewhere on the internet.

104. For example, retargeting could allow a web-developer to show advertisements on other websites to customers or potential customers based on the specific communications exchanged by a patient or their activities on a website.

105. Once personally identifiable information relating to patient communications is disclosed to a third party like Google, Sturdy loses the ability to control how that information is subsequently disseminated and exploited.

106. The monetization of the data being disclosed by Sturdy, both by it and Google, demonstrates the inherent value of the information being collected.

## Applicable Law

### Federal Electronic Communications Privacy Act

107. The Electronic Communications Privacy Act, 18 U.S.C. § 2510 (the "ECPA"), protects individuals against eavesdropping committed with an improper purpose.

108. A violation of the ECPA occurs where any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any … electronic communication" or "intentionally discloses, or endeavors to disclose, to any other person the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the

35

[unlawful] interception of a[n] ... electronic communication" or "intentionally uses, or endeavors to use, the contents of any ... electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] ... electronic communication." 18 U.S.C. §§ 2511(1)(a), (c)-(d).

**Massachusetts Invasion of Privacy**

109.    G.L. c. 214, § 1B, provides that "a person shall have a right against unreasonable, substantial, or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such a right and in connection therewith to award damages."

110.    G.L. c. 111, § 70E provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law."

**HIPAA Requirements that Bind Sturdy**

111.    Sturdy is subject to HIPAA.

112.    HIPAA's Privacy Rule defines "individually identifiable health information" as "a subset of health information, including demographic information collected from an individual" that is (1) "created or received by a health care provider;" (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and either (i) "identifies the individual;" or (ii) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

36

113.    The Privacy Rule broadly defines protected health information as individually identifiable health information that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium." 45 C.F.R. § 160.103. Under the HIPAA de-identification rule, "health information is not individually identifiable only if": (i) an expert "determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the information" and "documents the methods and results of the analysis that justify such determination" or (ii) "the following identifiers of the individual or of relatives, employers, or household members of the individual are removed;

    A. Names;
    …
    H. Medical record numbers;
    …
    J. Account numbers;
    …
    M. Device identifiers and serial numbers;
    N. Web Universal Resource Locators (URLs);
    O. Internet Protocol (IP) address numbers; … and
    P. Any other unique identifying number, characteristic, or code… and" the
    covered entity must not "have actual knowledge that the information could be
    used alone or in combination with other information to identify an individual
    who is a subject of the information."[2]

114.    The HIPAA Privacy Rule requires any "covered entity" — which includes health care providers — to maintain appropriate safeguards to protect the privacy of PHI

---

[2] See 45 C.F.R. § 160.514.

37

and sets limits and conditions on the uses and disclosures that may be made of PHI without authorization. 45 C.F.R. §§ 160.103, 164.502.

115.   Even the fact that an individual is receiving a medical service, i.e., is a patient of a particular entity, can be PHI.

116.   HHS has instructed health care providers that, while identifying information alone is not necessarily PHI if it were part of a public source such as a phonebook because it is not related to health data, "[i]f such information was listed with health condition, health care provision or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI."[3]

117.   Consistent with this restriction, HHS has issued marketing guidance that provides, "With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing … Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients or enrollees to third parties without obtaining authorization from each person on the list."[4]

118.   An individual or corporation violates the HIPAA Privacy Rule if it knowingly: "(1) uses or causes to be used a unique health identifier; [or] (2) obtains

---

[3] *See Guidance Regarding Methods for De-Identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule,* https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html,
(last visited Jan. 21, 2025).
[4] *Marketing,* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html
(last visited January 21, 2025)

38

individually identifiable health information relating to an individual."

119.    The statute states that a "person ... shall be considered to have obtained or disclosed individually identifiable health information ... if the information is maintained by a covered entity ... and the individual obtained or disclosed such information without authorization." 42 U.S.C. § 1320(d)(6).

120.    Violation of 42 U.S.C. § 1320(d)(6) is subject to criminal penalties where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320(d)(6)(b). In such cases, an entity that knowingly obtains individually identifiable health information relating to an individual "shall be fined not more than $250,000, imprisoned not more than 10 years, or both." 42 U.S.C. § 1320(d)(6)(b)(1).

121.    HIPAA also requires covered entities to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(c), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights," 45 C.F.R. § 164.312(a)(1).

122.    Under HIPPA, covered entities may not disclose PHI about a patient, potential patient or household member of a patient for marketing purposes without the patient's express written authorization. See HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

**Fiduciary Duty to Maintain Patient Confidentiality**

123.   As a medical provider for Plaintiff and Class Members, Sturdy owes its patients a fiduciary duty of confidentiality in providing health care and in maintaining patients' health information.

124.   All health care providers owe their patients a duty not to disclose medical information about the patient without the patient's informed consent.

## Class Allegations

125.   The class is composed of all Massachusetts residents who:

(i)     are or were patients of Sturdy at any time after the date Sturdy initially installed Google Analytics on its website; and

(ii)    prior to Sturdy's retirement of the Google Analytics tracker described herein exchanged communications at Sturdy's website, including but not limited to searching for or communicating information concerning the symptoms, diagnosis or treatment of a medical condition, or to schedule an appointment; and

(iii)   for which Sturdy did not obtain the patient's consent under HIPAA or via any other valid form of consent.

126.   Based on the volume of patient use of Sturdy's website, the prospective class numbers more than 10,000, making joinder of all members impracticable. The exact size of the proposed class and the identity of the Class Members are readily ascertainable from Sturdy's business records.

127.   There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. The principal common issues regarding the Class include whether:

a.      Sturdy's use of Google Analytics was without patient consent or authorization;

40

b. Sturdy obtained and shared or caused to be obtained and shared Plaintiff's and Class Members' PHI and/or IIHI through tracking using Google Analytics;

c. Sturdy's practices relating to disclosures of Plaintiff's and Class Members' communications with Sturdy to Google attached to PHI and/or IIHI were intentional;

d. Sturdy profited from the disclosures to Google;

e. Sturdy's practices relating to disclosures of Plaintiff's and Class Members' communications with Sturdy to Google attached to PHI and/or IIHI violate 18 U.S.C. § 2511, G.L. c. 214, § 1B, and/or c. 111, § 70E;

f. Sturdy's practices constitute negligence, a breach of fiduciary duty, or a breach of implied contract;

g. Sturdy's conduct harmed and continues to harm Plaintiff and Class Members, and, if so, the extent of injury.

128. There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Sturdy's records, and the issues of liability are determinable entirely from the face of the operative documents.

129. Plaintiff's claims are typical of those of the Class she seeks to represent, and she will fairly and adequately protect and represent the interests of the Class. There is no conflict between Plaintiff and the proposed Class.

130. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual Class Members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for Class Members to seek redress individually. In addition, it is likely that most Class Members are unaware that they

41

have claims. Finally, the prosecution of separate actions by the individual Class Members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual Class Members against Sturdy.

131.    Plaintiff's counsel is competent and experienced in both consumer protection and class action litigation.

132.    Sturdy has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### Tolling of Statutes of Limitation

133.    All applicable statutes of limitation have been tolled by Sturdy's knowing and active concealment of the facts alleged in this Amended Complaint.

134.    Sturdy seamlessly incorporated trackers into its websites, providing no indication to users that they were being tracked. Sturdy had knowledge that its websites incorporated tracking technologies yet failed to disclose that by interacting with tracking-enabled websites that Plaintiff's and Class Members' PHI and / or IIHI would be intercepted, collected, used by, and disclosed to third parties.

135.    Plaintiff and Class Members could not have reasonably discovered Sturdy's practice of sharing their PHI and/or IIHI with Google until shortly before this class action was filed.

136.    Sturdy was and remains under a continuing duty to disclose to Plaintiff and Class Members its practice of sharing PHI and/or IIHI with Google.

137.    As a result of Sturdy's active concealment, all applicable statutes of

42

limitation have been tolled.

## Claims for Relief

### Count I: Violation of the Federal Electronic Communications Privacy Act, 18 U.S.C. § 2510 (the "ECPA")

138. Plaintiff's and Class Members' communications with Sturdy on its website and patient portal as described above are covered communications under the ECPA.

139. A violation of the ECPA occurs where any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any … electronic communication" or "intentionally discloses, or endeavors to disclose, to any other person the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] … electronic communication" or "intentionally uses, or endeavors to use, the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] … electronic communication." 18 U.S.C. §§ 2511(1)(a), (c)-(d).

140. Plaintiff's and Class Members' communications with Sturdy through its websites constitute "electronic communications" under the Act because each communication was the transfer of data or intelligence, including, but not limited to:

    a.    the parties to the communications;

    b.    the precise text of patient search queries;

    c.    personally identifiable information such as patients' IP addresses, and other unique identifiers;

    d.    the precise text of patient communications about specific doctors;

e.    the precise text of patient communications about specific medical conditions;

f.    the precise text of patient communications about specific treatments;

g.    the precise text of patient communications about scheduling appointments with medical providers;

h.    the precise text of patient communications about billing and payment;

i.    the precise text of specific buttons on Sturdy's website that patients click to exchange communications, including Logins, Registrations, Requests for Appointments, Search, and other buttons;

j.    the precise dates and times when patients click to Log-In on Sturdy's website;

k.    the precise dates and times when patients visit Sturdy's website;

l.    information that is a general summary or informs third parties of the general subject of communications that Sturdy sent back to patients in response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information; and

m.    any other content that Sturdy has aided third parties in scraping from webpages or communication forms at web properties.

18 U.S.C. § 2510(12).

141.    Plaintiff's and Class Members' communications with Sturdy further constitute "electronic communications" because they were wholly or partially transmitted by wire, electromagnetic, and/or photoelectronic systems including, but not limited to:

a.    Plaintiff's and Class Members' personal computing devices;

44

    b.    Plaintiff's and Class Members' web browsers;

    c.    Plaintiff's and Class Members' browser-managed files;

    d.    Internet cookies;

    e.    Sturdy's computer servers; and

    f.    Third-party source code used by Sturdy.

142. To "intercept" under the statute "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4).

143. An "intercepting device" is "any device or apparatus which can be used to intercept a wire, oral, or electronic communication…". *Id.* § 2510(5).

144. "[C]ontents" includes "any information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8).

145. Whenever Plaintiff and Class Members interacted with Sturdy's website, including its patient portal, Sturdy, through the source code it imbedded and ran on its website, contemporaneously and intentionally divulged the contents of Plaintiff's and Class Members' electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, including Google.

146. The "intercepting devices" used in this case include, but are not limited to:

    a.    Plaintiff's and Class Members' personal computing devices;

    b.    Plaintiff's and Class Members' web-browsers;

    c.     Plaintiff's and Class Members' browser-managed files;

    d.     Internet cookies;

    e.     Sturdy's own computer servers;

    f.     the third-party source code embedded on Sturdy's websites; and

    g.     Google's computer servers, to which Plaintiff's and Class Members' communications were redirected.

147. Sturdy aided in and continues to aid in the interception of contents in that the data from the communications exchanged between Plaintiff and Class Members and Sturdy that were redirected to and recorded by Google include information which identifies the parties to each communication, their existence, and the exact contents of such communications.

148. Sturdy aided in the interception of "contents" that included the information listed in paragraph 140 above.

149. The ECPA provides that a "party to the communication" or an entity may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

150. Thus, although Sturdy is a "party to the communications" at issue, it is still liable under the ECPA because it captured and redirected Plaintiff's information to third parties without consent and for purposes that were tortious, criminal and designed to violate state constitutional and statutory provisions as alleged throughout this amended complaint, including:

46

a.  The unauthorized acquisition of individually identifiable health information is tortious in and of itself regardless of whether the means deployed to acquire the information violates the Wiretap act or any subsequent purpose or use for the acquisition. Sturdy intentionally committed a tortious act by acquiring individually identifiable health information without authorization to do so;

b.  The unauthorized acquisition of individually identifiable health information is a criminal violation of 42 U.S.C. § 1320d-6 regardless of any subsequent purpose or use of the individually identifiable health information. Sturdy intentionally violated 42 U.S.C. 1320d-6 by intentionally acquiring individually identifiable health information without authorization;

c.  A violation of HIPAA, particularly 42 U.S.C. § 1320d-6, which is a criminal offensive punishable by fine or imprisonment with *increased penalties* where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage provision of 42 U.S.C. § 1320d-6 by acquiring the individually identifiable [or] personal gain." Sturdy intentionally violated the enhanced penalty health information "with intent to sell transfer or use" it for "commercial advantage [or] personal gain" by bartering away patients' PHI/IIHI to third parties like Google for financial and

47

advertising benefits; and

d.  A knowing intrusion upon Plaintiff's and Class members' seclusion.

151.  In disclosing the content of Plaintiff's and the Class Members' communications, Sturdy's primary motive in intercepting the private health information of its users was to profit from selling it to third parties, such as Google, and for advertising and marketing purposes. Sturdy's conduct reveals its criminal and tortuous intent to profit commercially from exploiting private information in violation of HIPAA.

152.  Moreover, Sturdy's criminal and tortious conduct extends beyond the act of mere interception since Sturdy shares users sensitive health information with Google to generate revenue and marketing benefits.

153.  As a result, Sturdy harmed Plaintiff and Class Members, violating their privacy, breaching their contract with the hospital, depriving them the full benefit of their bargain with Sturdy for care, and causing actual damages in an amount to be proven at trial.

154.  For these reasons, Plaintiff, individually, and on behalf of Class Members, seeks all monetary and non-monetary relief allowed by law, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs.

155.  The ECPA provides a civil remedy to a person whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of

48

this chapter," against "the <u>person</u> or entity, other than the United <u>States,</u> which engaged

in that violation," of the greater of —

[1]

    (A) the sum of the actual damages suffered by the plaintiff and any profits made
by the violator as a result of the violation; or
    (B) statutory damages of whichever is the greater of $100 a day for each day of
violation or $10,000.

18 U.S.C. § 2520(c)(2).

## Count II: Violation of the Privacy Statutes

156.    Sturdy owes Plaintiff and Class Members a duty of confidentiality.

157.    Despite its statutory duty not to disclose IIHI or PHI without informed

consent, Sturdy knowingly disclosed such private information relating to Plaintiff's and

Class Members' health care, treating doctors, and medical treatment to Google without

their knowledge or informed consent.

158.    The information disclosed included Plaintiff's and Class Members' status

as Sturdy patients and the exact contents of communications exchanged between

Plaintiff or Class Members and Sturdy, including but not limited to information about

log-ins to Sturdy's patient medical website, treating doctors, potential doctors,

conditions, treatments, appointments, search terms, and bill payment.

159.    The knowing disclosure of personally identifiable medical information

constitutes an unreasonable, substantial, and serious interference with Plaintiff's and

Class Members' rights to privacy and confidentiality, in violation of G.L. c. 214, § 1B

and c. 111, § 70E.

160.    Sturdy acted with a knowing state of mind when it failed to notify

49

Plaintiff and the Class in a timely fashion about the unauthorized disclosures, thereby materially impairing any potential mitigation efforts Plaintiff and Class members could undertake.

161. Acting with knowledge, Sturdy had notice and knew that it would injure Plaintiff and the Class by using software tools specifically designed to automatically disclose patient PHI/IIHI to third parties.

162. As a proximate result of Sturdy's acts and omissions, Plaintiff's and Class Members' PHI/IIHI were disclosed to third parties — and is now available for further disclosure and redisclosure without authorization, further inflicting injuries on Plaintiff and the Class.

163. Unless and until enjoined and restrained by order of this Court, Sturdy's wrongful conduct will continue to inflict irreparable injury to Plaintiff and the Class since Sturdy, upon information and belief, continues to disclose patient PHI/IIHI to third parties without patient authorization or consent.

## Count III: Negligence

164. Sturdy owed Plaintiff and Class Members a duty to exercise reasonable care in handling and using Plaintiff's and Class Members' PHI and IIHI in its care and custody, including the implementation of industry-standard privacy procedures sufficient to reasonably protect that information from the disclosure and unauthorized transmittal and use of the information that occurred.

165. Sturdy acted with wanton and reckless disregard for the privacy and confidentiality of Plaintiff's and Class Members' PHI and IIHI by disclosing and

50

providing access to that information to third parties for its own financial benefit.

166.   Sturdy owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Sturdy knew or should have known would suffer injury-in-fact from Sturdy's disclosure of their PHI and IIHI to benefit third parties and itself. Sturdy actively sought and obtained Plaintiff's and Class Members' PHI and IIHI.

167.   PHI and IIHI are valuable, and Sturdy knew, or should have known, the harm that would be inflicted on Plaintiff and Class Members by disclosing their PHI and IIHI to third parties. This disclosure benefitted Sturdy and third parties by virtue of their using the information for data harvesting, advertising, and to increase sales.

168.   Sturdy breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in handling and securing Plaintiff's and Class Members' PHI and IIHI. This failure actually and proximately caused Plaintiff's and Class Members' injuries.

169.   As a direct and traceable result of Sturdy's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, exposure to inappropriate advertisements, use of their PHI and IIHI for advertising purposes, and increased risk of future harm, embarrassment, and emotional distress.

170.   Sturdy's breach of its common-law duties to exercise reasonable care proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, unauthorized access to their PHI and IIHI by

51

third parties, improper disclosure of their PHI and IIHI, loss in the value of their PHI and IIHI. These injuries are ongoing, imminent, immediate, and continuing.

**Count IV: Breach of Implied Contract**

171.    Sturdy solicited and invited Plaintiff and Class Members to provide their PHI and IIHI on its websites as part of its regular business practices. Plaintiff and Class Members accepted Sturdy's offers and provided their PHI/IIHI to Sturdy as part of acquiring medical services. Per its contractual, legal, ethical, and fiduciary duties, Sturdy was obligated to take adequate measures to protect Plaintiff's and Class Members' PHI/IIHI from unauthorized disclosure to third parties such as Google. In so doing, Plaintiff and Class Members entered into contracts with Sturdy, pursuant to which Sturdy agreed to safeguard and protect that information, in its Privacy Policies and elsewhere, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data was breached, compromised and/or stolen. These facts give rise to the inference that Sturdy took on obligations outside the plain terms of any express contracts that it may have had with Plaintiff and Class Members.

172.    Plaintiff and Class Members entered into valid and enforceable implied contracts with Sturdy when they sought medical treatment from Sturdy. Specifically, through their course of conduct, Sturdy, Plaintiff, and Class Members entered into implied contracts for the provision of medical care and treatment, which included an implied agreement for Sturdy to retain and protect the privacy of Plaintiff's and Class Members' PHI/IIHI.

52

173.  Sturdy required and obtained Plaintiff's and Class Members' PHI/IIHI as part of the physician-patient relationship, evincing an implicit promise by Sturdy to act reasonably to protect the confidentiality of Plaintiff's and Class Members' PHI/IIHI. Sturdy, through its privacy policies, codes of conduct, company security practices, and other conduct, implicitly promised that it would safeguard Plaintiff's and Class Members' PHI/IIHI in exchange for access to that information and the opportunity to treat Plaintiff and Class Members.

174.  Implicit in the agreement between Sturdy and its patients (i.e., Plaintiff and Class Members) was the obligation that Sturdy and its business associates would maintain the PHI and IIHI confidentially and securely, and this information would not be shared with third parties such as Google without the knowledge or consent of Plaintiff and Class Members. By asking for and obtaining Plaintiff and Class Members' PHI/IIHI, Sturdy assented to protecting the confidentiality of that information. Sturdy's implicit agreement to safeguard the confidentiality of Plaintiff's and Class Members' PHI/IIHI was necessary to effectuate the contract between the parties.

175.  Sturdy had an implied duty of good faith to ensure that Plaintiff's and Class Members's PHI and IIHI in its possession was only used as authorized, such as to provide medical treatment, billing, and other medical benefits.

176.  Sturdy had an implied duty to protect Plaintiff's and Class Members' PHI and IIHI from unauthorized disclosure or uses.

177.  Sturdy implicitly promised to keep its patients' PHI and IIHI secure and confidential.

178.   Plaintiff and Class Members provided their PHI/IIHI in reliance on Sturdy's implied promise that this information would not be shared with third parties without their consent.

179.   These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class Members would provide their PHI/IIHI in exchange for the medical treatment and other benefits provided by Sturdy (including the protection of their confidential personal and medical information). A portion of the price of each payment that Plaintiff and Class Members made to Sturdy for medical services was intended to ensure the confidentiality of their PHI/IIHI.

180.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Sturdy would comply with their promises to protect the confidentiality of their PHI/IIHI as well as applicable laws and regulations governing the disclosure of such information and that Sturdy would not allow third parties to collect or exploit their communications with Sturdy without their consent.

181.   It is clear by these exchanges that the parties intended to enter into an agreement and mutual assent occurred. Plaintiff and Class Members would not have disclosed their PHI/IIHI to Sturdy but for the prospect of Sturdy's promise of medical treatment and other benefits and reasonable expectation that Sturdy would not disclose to third parties their private medical information.

182.   Sturdy was therefore required to reasonably safeguard and protect the PHI/IIHI of Plaintiff and Class Members from unauthorized disclosure and/or use by third parties.

183.    Plaintiff and Class Members accepted Sturdy's medical services and fully performed their obligations under the implied contract with Sturdy, but Sturdy did not. Plaintiff and Class Members would not have provided their PHI and IIHI to Sturdy in the absence of their implied contracts with Sturdy that the information would be kept in confidence and would instead have retained the opportunity to control their PHI and IIHI for uses other than receiving medical treatment from Sturdy.

184.    Both the provision of medical services healthcare and the protection of Plaintiff's and Class Members' PHI/IIHI were material aspects of these implied contracts.

185.    Sturdy breached its implied contracts with Plaintiff and Class Members by disclosing Plaintiff's and Class Members' PHI and IIHI to unauthorized third parties.

186.    Sturdy's acts and omissions have materially affected the intended purpose of the implied contracts that required Plaintiff and Class Members to disclose their PHI and IIHI in exchange for medical treatment and benefits.

187.    Additionally, Sturdy's express representations, including, but not limited to the express representations found in their Privacy Policies and Notice of Privacy Practices, memorialize and embody an implied contractual obligation requiring Sturdy to refrain from aiding or allowing third parties to collect Plaintiff's and Class Members' PII/PHI without consent.

188.    Sturdy also materially breached its contractual obligation to protect Plaintiff's and Class Members' non-public PHI/IIHI when it failed to implement adequate security measures and policies to protect the confidentiality of that

55

information.

189.     As a result of Sturdy's failure to fulfill the data privacy protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains, and instead received healthcare and other services that were of a diminished value compared to those described in or reasonably expected from the contracts. Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of the healthcare services with data privacy they paid for and the healthcare services they received.

190.     As a direct and proximate result of these failures, Plaintiff and the Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including, without limitation, the release and disclosure of their PHI/IIHI, the loss of control of their PHI/IIHI, the diminution in value of their PHI/IIHI, and the loss of the benefit of the bargain they had struck with Sturdy.

191.     As a direct and proximate result of Sturdy's breach of implied contracts, Plaintiff and Class Members have suffered (and will continue to suffer) the compromise and disclosure of their PHI and IIHI.

192.     As a direct and proximate result of Sturdy's breach of implied contracts, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

### Count V: Breach of Fiduciary Duty

193.     Sturdy breached its fiduciary duty of confidentiality by disclosing PHI and IIHI about Plaintiff and Class Members and the exact content of their

communications with Sturdy.

194.     Sturdy's breach injured Plaintiff and Class Members in the following
ways:

- Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

- Sturdy eroded the essential confidential nature of the provider-patient relationship;

- Sturdy took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

- Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included Sturdy's duty to maintain confidentiality; and

- Sturdy's actions diminished the value of Plaintiff's and Class Members' personal information.

## Request for Relief

WHEREFORE, Plaintiff, individually and on behalf of all Class Members,
requests that the Court:

- Certify the proposed Class, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

- Permanently enjoin Sturdy from continuing the unlawful practices alleged

57

in this Amended Complaint;

- Order Sturdy to pay both pre-judgment and post-judgment interest on any amounts awarded;

- Award actual or statutory damages pursuant to the ECPA;

- Award compensatory damages in an amount to be determined at trial;

- Declare Sturdy's business practices alleged in the Amended Complaint to be unlawful; and

- Order such other or further relief as may be appropriate.

### Demand for Jury Trial

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: January 24, 2025

Respectfully submitted,

/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

I HEREBY ATTEST AND CERTIFY ON
____Feb.5,2025____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:_____
Asst.Clerk

Lawrence J. Lederer
Bart D. Cohen
Bailey Glasser LLP
1622 Locust St.
Philadelphia, PA 19103
(215) 274-9420 (phone)
(202) 463-2103 (fax)
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, John Roddy, hereby certify that on January 24, 2025, a true and correct copy of the foregoing was emailed to counsel of record.

/s/ John Roddy
John Roddy

MS

## COMMONWEALTH OF MASSACHUSETTS

## SUPERIOR COURT DEPARTMENT BUSINESS LITIGATION SESSION

**SUFFOLK, ss.**

| | |
|---|---|
| DEBORAH CAINE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 2484CV01953-BLS1 |
| v. | USDist #25-CV-10261 |
| STURDY MEMORIAL HOSPITAL, INC., | |
| Defendant. | |

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT on February 3, 2025, Defendant Sturdy Memorial Hospital, Inc. ("Sturdy Memorial") filed a Notice of Removal pursuant to 28 U.S.C. § 1441(c) in the United States District Court for the District of Massachusetts, thereby removing this action. A true and correct copy of the Notice of Removal is attached hereto as Exhibit 1.

PLEASE TAKE FURTHER NOTICE that, upon the filing of the Notice of Removal with the United States District Court for the District of Massachusetts and filing copies thereof with the Clerk at the Suffolk County Superior Court, Sturdy Memorial has effected removal and the Superior Court shall proceed no further in this action unless the action is remanded pursuant 28 U.S.C. § 1146(d).

Dated: February 3, 2025

Respectfully submitted,

*/s/ James H. Rollinson*

James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

Elizabeth A. Scully (pro hac vice to be filed)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

*Attorneys for Defendant*

I HEREBY ATTEST AND CERTIFY ON
___Feb.5,2025___, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY

John E. Powers, III
Clerk Magistrate
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:_____
Asst.Clerk

2

## CERTIFICATE OF SERVICE

I hereby certify that, on February 3, 2025 copies of the foregoing notice of removal were

served on the following by email at the addresses listed below.

John Roddy
Elizabeth Ryan
BAILEY GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer
Bart D. Cohen
BAILEY GLASSER LLP
1622 Locust St.
Philadelphia, PA 19103
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff*

/s/ James H. Rollinson
*One of the attorneys for defendant*

Date Filed 2/3/2025 1:47 PM
Superior Court - Suffolk
Docket Number 2484CV01953

Case 1:25-cv-10261-ADB    Document 7    Filed 02/10/25    Page 124 of 130
Case 1:25-cv-10261    Document 1    Filed 02/03/25    Page 1 of 6

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CAINE, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>STURDY MEMORIAL HOSPITAL, INC.,<br><br>　　　　　　　　　　　Defendant. | Case No. 1:25-cv-10261<br><br>[Trial Court of Massachusetts, The Superior Court, Suffolk County, Docket No. 2484CV01953]<br><br>DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(c) |

### NOTICE OF REMOVAL

To the Honorable Judges of the United States District Court for the District of Massachusetts and Plaintiff Deborah Caine:

Plaintiff's Amended Complaint includes a federal claim against Sturdy Memorial Hospital, Inc. ("Sturdy Memorial") for violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511. Sturdy Memorial therefore removes this case pursuant to federal question jurisdiction. 28 U.S.C. § 1331; 28 U.S.C. § 1441(c).

In support of removal, Sturdy Memorial provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

### NATURE OF THE CASE

1. Sturdy Memorial is an integrated health system offering medical care at thirty-two (32) locations in Southeastern Massachusetts.

2. On July 24, 2024, Plaintiff Deborah Caine filed a complaint against Sturdy Memorial, in the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk, Case No. 2484CV01953.

3.     Plaintiff served Sturdy Memorial with the Complaint, and the summons was returned on October 21, 2024.

4.     Plaintiff's Complaint challenged Sturdy Memorial's routine on-line practices as illegal wiretapping under the Massachusetts Wiretap Act, M.G.L. c. 272 § 99, and a violation of privacy under M.G.L. c. 214, §1B and M.G.L. c. 111, § 70E. *See* Exhibit ("Ex.") 2, Complaint ("Compl.") ¶¶ 112–122. Plaintiff also brought common law claims for negligence, breach of implied contract, breach of fiduciary duty. *Id.* ¶¶ 123–141.

5.     On December 20, 2024, Sturdy Memorial filed a notice of filing motion to dismiss, notifying the Superior Court that it served Plaintiff with Sturdy Memorial's Motion to Dismiss and related documents. *See* Ex. 13.

6.     On January 24, 2025, instead of responding to Sturdy Memorial's Motion to Dismiss, Plaintiff filed an Amended Complaint. *See generally* Ex. 14, Amended ("Am.") Compl.

7.     The Amended Complaint includes a new claim against Sturdy Memorial for violation of the ECPA, 18 U.S.C. § 2511. *See* Ex. 14, Am. Compl. ¶¶ 138–155.

### BASIS FOR REMOVAL

8.     Sturdy Memorial removes this case pursuant to federal question jurisdiction. 28 U.S.C. § 1441(c). The statute permits the removal of the entire action when the civil action includes "(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute." *Id.* "[T]he entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B)." *Id.*

Date Filed 2/3/2025 1:47 PM
Superior Court - Suffolk
Docket Number 2484CV01953

Case 1:25-cv-10261-ADB    Document 7    Filed 02/10/25    Page 126 of 130
Case 1:25-cv-10261    Document 1    Filed 02/03/25    Page 3 of 6

9.     This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

10.    This case is removable to this Court because Plaintiff asserted a claim under a law of the United States, specifically the ECPA, 18 U.S.C. § 2511. *See* Ex. 14 ¶¶ 138–155.

11.    Because this matter is an action arising under federal law of which this Court has original jurisdiction, as authorized by 28 U.S.C. § 1331, it is subject to removal under 28 U.S.C. § 1441(c).

12.    Accordingly, this action is removable to this Court under 28 U.S.C. § 1441(c) and § 1331.

13.    By removing this action, Sturdy Memorial does not waive any defenses available to it.

14.    By removing this action, Sturdy Memorial does not admit any of the allegations in Plaintiff's Amended Complaint.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

15.    Sturdy Memorial likewise satisfies all of the procedural requirements under 28 U.S.C. § 1446.

16.    Sturdy Memorial timely removes this case. It is filing this Notice of Removal within thirty (30) days of its receipt of the Amended Complaint by "service." 28 U.S.C. § 1446.

17.    Sturdy Memorial files this Notice in the United States District Court of the District of Massachusetts, because the state court in which the action is pending, the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Date Filed 2/3/2025 1:47 PM Case 1:25-cv-10261-ADB   Document 7   Filed 02/10/25   Page 127 of 130
Superior Court - Suffolk   Case 1:25-cv-10261   Document 1   Filed 02/03/25   Page 4 of 6
Docket Number 2484CV01953

18.     Sturdy has attached a copy of "all process, pleadings, orders, and other documents" currently on file in the state court, including Plaintiff's Amended Complaint.

19.     Upon filing this notice, Sturdy Memorial will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the state court.

## CONCLUSION

As set forth above, Plaintiff's Amended Complaint includes a claim against Sturdy Memorial that arises under the laws of the United States. Plaintiff's Amended Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1441(c).

**WHEREFORE, Sturdy Memorial respectfully removes this action from the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk and requests that this Court issue such orders and process as may be necessary to preserve its jurisdiction over this matter.**

Date Filed 2/3/2025 1:47 PM
Superior Court - Suffolk
Docket Number 2484CV01953

Case 1:25-cv-10261-ADB    Document 7    Filed 02/10/25    Page 128 of 130
Case 1:25-cv-10261    Document 1    Filed 02/03/25    Page 5 of 6

Dated: February 3, 2025

Respectfully submitted,

*/s/ James H. Rollinson*
James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

Elizabeth A. Scully (pro hac vice to be filed)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

*Attorneys for Defendant*

Date Filed 2/3/2025 1:47 PM
Superior Court - Suffolk
Docket Number 2484CV01953

Case 1:25-cv-10261-ADB     Document 7     Filed 02/10/25     Page 129 of 130
Case 1:25-cv-10261     Document 1     Filed 02/03/25     Page 6 of 6

## CERTIFICATE OF SERVICE

I hereby certify that, on February 3, 2025, a copy of the foregoing was served on the following by email at the addresses listed below.

John Roddy
Elizabeth Ryan
BAILEY GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer
Bart D. Cohen
BAILEY GLASSER LLP
1622 Locust St.
Philadelphia, PA 19103
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff*

/s/ James H. Rollinson
*One of the attorneys for defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 10, 2025, a copy of the foregoing certified state court record was filed using the Court's CM/ECF service which will provide service copies to the Plaintiff's counsels of record.

/s/ James H. Rollinson
*One of the attorneys for defendant*