**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Deborah Caine, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>Sturdy Memorial Hospital, Inc.,<br><br>      Defendant. | Case No.: 1:25-cv-10261-ADB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT STURDY MEMORIAL HOSPITAL, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

TABLE OF CONTENTS

Page

Introduction ................................................................................................................. 1

Facts   ........................................................................................................................... 2

Ms. Caine Used Sturdy's Website to Aquire Information about Health Conditions, Medical Specialists, Medications and Treatments — Sturdy Shared that Information with Google, without Ms. Caine's Consent ........................................................................ 2

Legal Standard............................................................................................................. 2

Argument ...................................................................................................................... 3

I.      Sturdy Captured and Shared With Google Ms. Caine's Private, Sensitive, and Protected Health Information, Violating A Host of Laws ......................................... 3

        A.      *Becerra* Is An Outlier, Whose Flawed Reasoning Has Been Rejected By Numerous Courts ............................................................................................ 4

        B.      *Becerra* Is Limited to "The Prescribed Combination" .................................... 5

II.     Sturdy Intercepted and Disclosed Ms. Caine's Electronic Communications, Violating the ECPA............................................................................................... 7

        A.      Sturdy Surreptitiously Shared Ms. Caine's Private, Sensitive Medical Information with Google so it Could More Effectively Target Patients and Potential Patients, a Crime Under Federal Law ...................................... 7

        B.      Numerous Court Have Found Similar Allegations to Satisfy the Crime-Tort Exception ...................................................................................... 8

        C.      Sturdy's Intent in Illegally Collecting and Divulging Its Patients' PHI and IIHI is a Factual Question Not Appropriate for a Motion to Dismiss. ....................................................................................................... 10

        D.      Neither Sturdy's Limited Definition of "Content" Nor its Invocation of the One Party Exception Save it Here .......................................................... 11

III.    Ms. Caine's Statutory Privacy Claims Have Merit ................................................... 13

IV.     Ms. Caine's Common Law Claims Are Adequately Pled ........................................ 14

        A.      Ms. Caine Has Pled a Viable Negligence Claim............................................ 14

        B.      Ms. Caine's Breach of Fiduciary Duty Claim is Well Pled........................... 15

        C.      Ms. Caine Has Pled A Valid Claim for Breach of Implied Contract .......... 17

        D.      Sturdy's Misconduct Injured Ms. Caine....................................................... 18

V.      Conclusion .......................................................................................................... 19

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
   No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ................................................10

*Alberts v. Devine*,
   395 Mass. 59 (1985) ............................................................................................................18

*Am. Hosp. Ass'n v. Becerra*,
   738 F. Supp. 3d 780 (N.D. Tex. 2024) ...........................................................................5, 6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................3

*B.K. v. Desert Care Network*,
   No. 2:23-cv-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ...................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................3

*Brahm v. Hosp. Sisters Health Sys.*,
   No. 23-cv-444-WMC, 2024 WL 3226135 (W.D. Wis. June 28, 2024) ................................6

*Branyan v. Sw. Airlines Co.*,
   105 F. Supp. 3d 120 (D. Mass. 2015) ..................................................................................14

*Bratt v. IBM Corp.*,
   392 Mass. 508 (1984) ..........................................................................................................16

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...............................................................................13

*Brown v. Google LLC*,
   No. 4:20-cv-3664-YGR, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..............................13

*Caro v. Weintraub*,
   618 F.3d 94 (2d Cir. 2010) ..................................................................................................14

*Castillo v. Seagate Tech., LLC*,
   No. 15-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .................................20

*Com. v. Brandwein*,
   435 Mass. 623 (2002) ..........................................................................................................16

*Cooper v. Mount Sinai Health Sys., Inc.*,
   742 F. Supp. 3d 369 (S.D.N.Y. 2024) ..............................................................................6, 12

*Doe v. Bayhealth Med. Ctr., Inc.,*
 No. N24C-09-002 FJJ, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ..........................5

*Doe v. Bos. Med. Ctr.,*
 No. 2384-00326, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023).................................15

*Doe v. Cnty. of Santa Clara,*
 No. 23-cv-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8, 2024)...............................6

*Doe v. Emerson Hosp.,*
 No. 2277-01000, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ...........................15, 19

*Doe v. Genesis Health Sys.,*
 No. 23-cv-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ...........................6

*Doe v. Meta Platforms, Inc.,*
 2023 WL 5837443 ..............................................................................................12, 13

*Doe v. Mountain States Health Alliance,*
 2024 Tenn. Ch. LEXIS 1 (Tenn. Ch. July 30, 2024) ................................................6

*Doe v. Stonehill Coll., Inc.,*
 55 F.4th 302 (1st Cir. 2022) .................................................................................17

*Doe v. Tenet Healthcare Corp.,*
 731 F. Supp. 3d 142 (D. Mass. 2024)................................................................. *passim*

*Doe v. Univ. Health Sys., Inc.,*
 2024 Tenn. Ch. LEXIS 2 (Tenn. Ch. Aug. 9, 2024)..............................................5

*In re Facebook, Inc. Tracking Litig.,*
 956 F.3d 589 (9th Cir. 2020).................................................................................13

*Gay v. Garnet Health,*
 No. 23-cv-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)............................10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
 806 F.3d 125 (3d Cir. 2015) ...............................................................................14

*In re Grp. Health Plan Litig.,*
 709 F. Supp. 3d 707 (D. Minn. 2023) .......................................................10, 11, 12

*Hammerling v. Google LLC,*
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................13

*Hartley v. Univ. of Chi. Med. Ctr.,*
 No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024).................................9

*In re iPhone App. Litig.,*
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................16

iii

*J.C. v. Cath. Health Sys. Inc.*,
  No. 1:23-cv-00796 (JLS) (JJM), 2024 WL 5136236 (W.D.N.Y. Aug. 29,
  2024) ............................................................................................................................5

*Kane v. Univ. of Rochester*,
  No. 23-cv-6027- FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).................................9

*Kelley v. CVS Pharmacy, Inc.*,
  Mass. Super., No. CIV.A. 98-0897-BLS2 (Aug. 24, 2007) ...................................................19

*Kurowski v. Rush Sys. for Health*,
  No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ...................................9, 11, 12

*Kurowski v. Rush Sys. for Health*,
  No. 22-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ...........................................4, 6, 11

*Lugo v. Inova Health Care Servs.*,
  No. 1:24-CV-700, 2025 WL 905191 (E.D. Va. Mar. 25, 2025)..............................................9

*M.R.. v. Salem Health Hosps. and Clinics*,
  No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) ....................................5

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020).......................................................................................19

*Mekhail v. N. Mem'l Health Care*,
  726 F. Supp. 3d. 916 (D. Minn. 2024) ...................................................................................9

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................................11, 13, 16

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
  No. CV 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ..........................................10

*Nelson v. Salem State Coll.*,
  446 Mass. 525 (2006)..............................................................................................................14

*Nienaber v. Overlake Hosp. Med. Ctr.*,
  No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ...............................5

*R.S. v. Prime Healthcare Servs., Inc.*,
  No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13,
  2025) ..........................................................................................................................................14

*Rudolph v. Hudson's Bay Co.*,
  No. 18-cv-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019) ..................................18

*Salamon v. Terra*,
  394 Mass. 857, 477 N.E.2d 1029 (1985) ...............................................................................19

iv

*Schatz v. Republican State Leadership Comm'n,*
  669 F.3d 50 (1st Cir. 2012)..................................................................................................3

*Shedd v. Sturdy Mem. Hosp., Inc.,*
  2022 WL 1102524 (Mass. Super. Apr. 5, 2022).....................................................................19

*Shedd v. Sturdy Memorial Hosp., Inc.,*
  No. 2173CV00498C, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022).........................15, 19

*In re Shields Health Care Grp., Inc. Data Breach Litig.,*
  721 F. Supp. 3d 152 (D. Mass. 2024)...................................................................................17

*Smith v. Loyola Univ. Med. Ctr.,*
  No. 23-cv-15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024)...........................................6, 9

*Sweat v. Hous. Methodist Hosp.,*
  No. CV H-24-775, 2024 WL 3070184 (S.D. Tex. June 20, 2024).......................................10

*T.F. v. B.L.,*
  442 Mass. 522, 813 N.E.2d 1244 (2004) .............................................................................18

*Tower v. Hischorn,*
  397 Mass. 581 (1986)...........................................................................................................16

*W.W. v. Orlando Health, Inc.,*
  No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025).................11, 12

*Walker v. Boston Med. Ctr.,*
  No. SUCV20151733BLS1, 2015 WL 9946193 (Mass. Super. Nov. 20,
  2015) ....................................................................................................................................18

*Weld v. CVS Pharmacy, Inc.,*
  Mass. Super., No. CIV. A. 98-0897F (June 29, 1999) .........................................................18

**Statutes**

18 U.S.C. § 2511(1)(a) .............................................................................................................8

18 U.S.C. § 2511(1)(c) .............................................................................................................8

18 U.S.C. § 2511(1)(d).............................................................................................................8

42 U.S.C. § 1320d-6.................................................................................................................9

G.L. c. 111, § 70 ....................................................................................................................18

G.L. c. 111, § 70E...................................................................................................................18

G.L. c 214, § 1B......................................................................................................................14

**Introduction**

Google Analytics is a web analytics service that allows website owners to track visitor actions on their website to target them with personalized advertisements. ECF # 7,[1] Amended Complaint, ¶¶ 84-85. But Google prohibits the use of Analytics to target ads concerning, for example "[t]reatments for chronic health conditions like diabetes or arthritis, treatments for sexually transmitted diseases, counseling services for mental health issues like depression, anxiety, and addiction…" and other health issues. *Id*. ¶¶ 86-88. To ensure that private health information is not so used Google provides an anonymization tool so websites like Sturdy's do not run afoul of the statutory and common law privacy restrictions Ms. Caine complains of here. *Id*. ¶ 63. Inexplicably, Sturdy chose not to employ that anonymization feature. *Id*. ¶¶ 61-65.

Ms. Caine alleges that despite Google's warnings, anonymization option and Sturdy's own privacy policy, "for an indeterminate period of time through at least July 2024 Sturdy shared patients' private protected health information ("PHI") and individually identifiable health information ("IIHI") with Google … to obtain marketing and analytics benefits from Google." *Id*. ¶¶ 4-11, 66-67.

On July 20, 2023, the Federal Trade Commission and Office for Civil Rights at the U.S. Department of Health and Human Services took the unusual step of issuing a joint letter to more than 130 major healthcare institutions warning them that tracking technologies like Google Analytics risk "the privacy and security of individuals' health information" because:

> [i]mpermissible disclosures of an individual's personal health information to third parties may result in a wide range of harms to an individual or others. Such disclosures can reveal sensitive information including health conditions,

---

1 ECF # 7 contains the entire state court record conveyed to this Court after Sturdy removed the case, including the Amended Complaint.

diagnoses, medications, medical treatments, frequency of visits to health care professionals, where an individual seeks medical treatment, and more. FTC-HHS Guidance

Ms. Caine's lawsuit seeks to remedy these harms, which she alleges Sturdy has caused its patients through at least July 2024. Sturdy's motion to dismiss seeks to avoid such accountability. For the reasons described above and the law cited below Sturdy's motion should be denied.

### Facts

**Ms. Caine Used Sturdy's Website to Aquire Information about Health Conditions, Medical Specialists, Medications and Treatments — Sturdy Shared that Information with Google, without Ms. Caine's Consent**

Sturdy expressly promised Ms. Caine that it would:

> "only use or disclose your Protected Health Information when you grant us permission through your written authorization …" Amended Complaint, ¶ 96;

> "never share your information unless you provide us with written permission" including the "[m]arketing and sale of your information." *Id*. ¶ 97; and

> maintain her right to "confidentiality of all records and communications concerning your medical history and treatment to the extent provided by law." *Id*. ¶ 98.

Ms. Caine reasonably and justifiably relied on Sturdy's promises and on Sturdy's compliance with federal and state privacy laws. But Sturdy broke its promises of privacy and confidentiality when it used Google Analytics to gather medical information about her and other Sturdy patients and disclosed that information to Google without their consent *Id*. ¶¶ 2, 4-11, 22-28. And in exchange Sturdy bartered Ms. Caine's and other patients' confidential health information with Google and obtained advertising and marketing benefits, violating state and federal privacy laws. *Id*. ¶¶ 102-106.

### Legal Standard

A complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "[G]auging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." *Schatz v. Republican State Leadership Comm'n,* 669 F.3d 50, 55 (1st Cir. 2012).

## Argument

### I.　Sturdy Captured and Shared With Google Ms. Caine's Private, Sensitive, and Protected Health Information, Violating A Host of Laws

Sturdy asserts two bases for its motion: that its sharing of Ms. Caine's website searches for particular doctors and information on specific health issues did not involve PHI; and that Ms. Caine didn't specify exactly what aspects of her private health information Sturdy shared with Google. Sturdy Mem., ECF # 9, at 1.

At the outset, it is important to clarify that as Ms. Caine was unwilling to disclose the specifics of her private health information in an open court filing, she offered an alternative, that she would "would disclose under a confidentiality agreement" the specifics on the "highly sensitive… significant health issues" that Sturdy complains are lacking. ECF # 7, ¶ 23. Sturdy did not take up Ms. Caine's invitation of a confidentiality agreement, instead it filed its motion to dismiss.

Both of the bases for Sturdy's motion to dismiss are addressed by Ms. Caine's Amended Complaint and her pending motion for leave to file an amended complaint and to seal certain sensitive material. ECF ## 14, 15. On that score, Ms. Caine's proposed amended complaint alleges she searched Sturdy's website for information on an array of specific medical issues (proposed Second Amended Complaint, ¶¶ 22-34); to research treatments (¶¶ 28-31); find a new primary care doctor (¶¶ 24, 26); identify

3

qualified doctors in particular specialties and obtain updates on her medical conditions (¶¶ 25, 26); and investigate Sturdy's resources and programs (¶¶ 24, 26), among other things.

If the Court grants Ms. Caine's motion for leave to amend, that will moot Sturdy's current motion to dismiss, thereby conserving judicial resources. Sturdy will be free to refile its motion to dismiss the Amended Complaint, to the extent that any of its arguments are not resolved by that filing. *See, e.g., Kurowski v. Rush Sys. for Health*, No. 22-5380, 2024 WL 3455020, at *2-4 (N.D. Ill. July 18, 2024) where, after granting leave to amend to add specifics of website tracking and denying motion to dismiss the court found sufficient plaintiffs' allegations that Rush used website trackers to share "the name and location of her personal physician, as well as her physician's specialty" with Facebook so Facebook could target her with specific advertising, and did so for "financial gain."

A.    *Becerra* Is An Outlier, Whose Flawed Reasoning Has Been Rejected By Numerous Courts

Sturdy makes the expansive argument that *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) precludes Ms. Caine's claims because they "all rest on the fundamentally flawed assumption that the information allegedly disclosed to third parties is protected health information under HIPAA." ECF # 9 at 4-6. This overarching claim ignores the host of decisions finding claims virtually identical to Ms. Caine's to contain PHI and the numerous decisions rejecting *Becerra's* flawed reasoning.

Courts across the country agree that *Becerra* does not inform whether a motion to dismiss should be granted. *See Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 WL 1010403, at *6 (Del. Super. Ct. Apr. 4, 2025) ("The Court denies applying *Becerra* to

the instant case for multiple reasons."); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025) ("[T]he [*Becerra*] court's reasoning is unpersuasive here."); *J.C. v. Cath. Health Sys. Inc.*, No. 1:23-cv-00796 (JLS) (JJM), 2024 WL 5136236, at *14 (W.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, No. 23-cv-796 (JLS) (JJM)2025 WL 351043 (W.D.N.Y. Jan. 31, 2025) ("I do not find the court's reasoning in [*Becerra*] persuasive or controlling"); *Doe v. Univ. Health Sys., Inc.*, 2024 Tenn. Ch. LEXIS 2 (Tenn. Ch. Aug. 9, 2024) (explicitly considering *Becerra).*

Numerous other post-*Becerra* courts implicitly reject its reasoning without expressly citing to it. *See, e.g., M.R.. v. Salem Health Hosps. and Clinics,* No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024); *Doe v. Genesis Health Sys.,* No. 23-cv-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024); *Doe v. Mountain States Health Alliance,* 2024 Tenn. Ch. LEXIS 1 (Tenn. Ch. July 30, 2024); *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369 (S.D.N.Y. 2024); *Kurowski, et al. v. Rush,* No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024); *Smith v. Loyola Univ. Med. Ctr.,* No. 23-cv-15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024); *Doe v. Cnty. of Santa Clara,* No. 23-cv-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8, 2024); *Brahm v. Hosp. Sisters Health Sys.,* No. 23-cv-444-WMC, 2024 WL 3226135 (W.D. Wis. June 28, 2024).

### B.     *Becerra* Is Limited to "The Prescribed Combination"

*Becerra* presented a limited question on summary judgment, whether HHS exceeded its rule-making authority in promulgating its Guidance. In citing *Becerra*, Sturdy also seeks to marginalize *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147 (D. Mass. 2024), in a footnote (ECF # 9 at 4, n.1) suggesting that *Becerra* should supercede Judge Saris's finding that sharing or selling private health information like Ms. Caine's to third parties like Google "in exchange for improved advertising and

marketing services" violates HIPAA.

*Becerra* held that HHS exceeded its authority by issuing guidance prohibiting healthcare providers from using "an online technology" that discloses an individual's IP address along with a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. 2024 WL 3075865 at *2. *Becerra* labeled this "new rule" as the "Proscribed Combination." *Id.* An example of the "Proscribed Combination" would be technology that disclosed an IP address along with the fact that someone visited a website page about cancer treatment. *Becerra* itself confines its holding to this "Proscribed Combination," *id.* at *17, n.8. *Becerra* underscores this limitation by noting that the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at *4, n.3.

Ms. Caine alleges she and other patients used Sturdy's website to "describe symptoms, and communicate highly sensitive personal medical information intended only for their doctors and health services professionals" (ECF # 7, ¶ 1), to "search[] for information and resources related to medical conditions and treatment" and "schedule appointments"(¶ 22); and "specifically to locate doctors at Sturdy's North Attleboro Medical Center facility and for other information concerning women's health that was pertinent to her" (¶¶ 23, 24, 25). Her allegations mirror those in Tenet:

> Tenet operates a website through which users can search for physicians and treatment locations, schedule appointments, learn about health conditions and treatments, and take health assessments. Tenet's website uses "trackers" created by Facebook and other companies. These trackers capture and record user interactions with the website, including pages viewed, buttons clicked, and information submitted through forms or assessments. Tenet and third-party companies then utilize the collected data to better understand the impact of its websites and to improve targeted advertising by third parties.

*Tenet Healthcare Corp.*, 731 F. Supp. 3d at 145-46.

In addition, *Becerra* certainly does not, and cannot, trump Ms. Caine's right to a

6

reasonable expectation of privacy when she and other Sturdy patients search for conditions, treatments and specialists related to their medical care. Ms. Caine's claims that Sturdy violated those privacy rights when it disclosed her sensitive PHI to Google by employing Google Analytics are undisturbed by *Becerra*.

## II.    Sturdy Intercepted and Disclosed Ms. Caine's Electronic Communications, Violating the ECPA

In paragraphs 138-56 of her Amended Complaint Ms. Caine alleges that Sturdy violated 18 U.S.C. §§ 2511(1)(a), (c) & (d) of the Electronic Communications Privacy Act ("ECPA") in three discrete ways:

intercepting her electronic communications;

disclosing those electronic communications; and

using the contents of those electronic communications.

Sturdy claims that it, as a party to Ms. Caine's communications on its website, can neither "intercept" those communications nor "eavesdrop" on them because Ms. Caine directed her communications to Sturdy. ECF # 9 at 5. Sturdy correspondingly claims that the crime-tort exception, which obviates this self-serving attempt at an escape clause, does not apply. *Id*. at 6-9. Sturdy's arguments are unavailing.

### A.    Sturdy Surreptitiously Shared Ms. Caine's Private, Sensitive Medical Information with Google so it Could More Effectively Target Patients and Potential Patients, a Crime Under Federal Law

Ms. Caine alleges that Sturdy intentionally employed Google Analytics to acquire patients' PHI and IIHI, intentionally disclosed that information so it could perform or benefit from Analytics, enhance its marketing and advertising abilities (without paying for the data) and ultimately make money at the expense of patients' privacy. ECF # 7, ¶¶ 2-11, 26, 30, 31.

Sturdy contends that Ms. Caine's allegation that it was driven in part by profit

motive is insufficient to meet the crime-tort exception. ECF # 9 at 7-8, citing Am. Compl. ¶¶ 34; 151. Sturdy does not dispute that that it intercepted Ms. Caine's website searches, nor that it shared that information with Google. It is a federal crime to "knowingly" disclose "individually identifiable health information" to third parties. *See* 42 U.S.C. § 1320d-6 (unauthorized acquisition of health information constitutes a federal crime with increased penalties when "committed with the intent to … use" the information "for commercial advantage [or] personal gain"). Sturdy violates HIPAA when it uses Google Analytics to share Ms. Caine's communications about her private health information with Google, thereby divulging her PHI and IIHI for its own commercial benefit.

**B.    Numerous Court Have Found Similar Allegations to Satisfy the Crime-Tort Exception**

Ms. Caine's allegations satisfy the crime-tort exception in this context. "Courts around the country have permitted the invocation of the ECPA's crime-tort exception when [as here] plaintiffs allege violations of HIPAA and other state health privacy laws.". *Lugo v. Inova Health Care Servs.*, No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191, at *6, 8 (E.D. Va. Mar. 25, 2025).

*Lugo* helpfully provides an illustrative compendium of the nationwide swath of courts finding the crime-tort exception applicable. *See e.g.*, *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *2–3 (N.D. Ill. Dec. 11, 2023) (finding allegations of a HIPAA violation sufficient to invoke the crime-tort exception); *Kane v. Univ. of Rochester*, No. 23-cv-6027- FPG, 2024 WL 1178340, at *7–8 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d. 916, 927–28 (D. Minn. 2024) (same); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2024 WL 1886909, at *2–3 (N.D. Ill. Apr. 30, 2024) (same); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (same); *Sweat v. Hous. Methodist Hosp.*, No. CV H-24-775, 2024 WL 3070184, at *4 (S.D.

Tex. June 20, 2024) (same); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *3–4 (S.D.N.Y. Sept. 16, 2024) (same); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2024 WL 4350328, at *4–5 (E.D. Pa. Sept. 30, 2024) (same); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719–20 (D. Minn. 2023) (finding claims of a HIPAA violation and invasion of privacy sufficient at the motion to dismiss stage to allege the crime-tort exception applies); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDX), 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (plaintiffs' allegations of violations of state health privacy laws and other state and federal laws sufficient to invoke the crime-tort exception).

Two examples serve to bring this point home. In *In re Group Health Litigation*, 709 F. Supp. 3d 707, the court denied a hospital system's request to dismiss the ECPA claim in a Facebook pixel class action, holding that "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *Id.* at 719. Rejecting the premise that the patients there failed to prove a tortious criminal act, the court noted that "[p]laintiffs allege the primary motivation in [defendant's] interception and disclosure was to commit wrongful and tortious acts, 'namely, the use of patient data for advertising in the absence of express written consent,' and the use 'for marketing and revenue generation was in violation of HIPAA and an invasion of privacy.'" *Id.* The court noted the distinction to be drawn "where the defendant's primary motivation was to make money." *Id.* at 720. Finally, the court observed that "Plaintiffs also allege that [defendant] 'would not have been able to obtain the information or the marketing services if it had complied with the law.'" *Id.* at 719.

And in *Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023). the court also concluded that plaintiffs plausibly stated an

ECPA claim where they alleged that defendant knowingly transmitted their private information and that it did so for the purpose of financial gain. *Accord In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (finding allegations of "the use of patient data for advertising" sufficient at the pleading stage to give plaintiffs the chance "to show that the crime-tort exception applies").

Ms. Caine's allegations are virtually the same in substance as those found sufficient in *In re Group Health* and *Kurowski* to invoke the tort-crime exception. Ms. Caine alleges that Sturdy's purposes behind intercepting and disclosing her searches included: providing PHI to Google in violation of HIPAA; thereby facilitating or sending targeted advertisements to patients based on their sensitive PHI despite HIPAA's unequivocal prohibition; using impermissibly obtained data for analytics to gain insight into how patients use its website; all to help Sturdy keep patients, get new patients, decrease costs and increase profits.

### C.  Sturdy's Intent in Illegally Collecting and Divulging Its Patients' PHI and IIHI is a Factual Question Not Appropriate for a Motion to Dismiss.

Sturdy's request to have this Court dismiss the case is also inappropriate because whether it had criminal or tortious intent is a factual question. In *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), the court noted that the parties had "amassed considerable persuasive—but no binding—authority on this issue." *Id*. at *7. Given the nature of the claim, it found that determining whether the crime-tort exception applies is better made at trial, or perhaps at summary judgment. *Id*. citing *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720 and *Cooper*, 742 F. Supp. 3d at 381.

*See also Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (noting that fact questions existed regarding "what steps [defendant] actually took to prevent receipt of

10

health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720 ("[D]etermination of HealthPartners' *actual* purpose for installing and using the Pixel Code requires a factual undertaking."); *Kurowski*, 2023 WL 8544084, at *3 (observing that plaintiff "lacks the direct access to what occurs in the background on Rush's web properties").

 **D.** **Neither Sturdy's Limited Definition of "Content" Nor its Invocation of the One Party Exception Save it Here**

Ms. Caine alleges that Sturdy used Google Analytics tracking technology to intercept her communications for the purpose of sharing them with Google, without her knowledge or consent. This intentional disclosure was a criminal violation of HIPAA and a breach of Sturdy's contractual and fiduciary duties. Sturdy made an affirmative choice to displace its patients privacy rights with its own desire to profit from their PHI and IIHI.

Sturdy offers two unconvincing statutory interpretation arguments in defense. First, in arguing that this information does not meet the ECPA's definition of "contents" it conflates "mere record information" exchanged with retail outfits like Gamestop with Ms. Caine's personalized inquiries regarding significant physical and mental health issues. ECF # 9 at 9-10. But URLs disclosing search terms that divulge the searcher's "personal interests, queries, and habits" are "contents" of communications under the ECPA. *See, e.g., In re Facebook, Inc. Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (URLs could reveal a user's personal interests, searches and habits on third-party Web Properties); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (contact information provided as part of a sign-up process and descriptive URLs constitute "contents"); *In re*

11

*Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 ("log-in buttons and descriptive URLs are 'contents' within the meaning of the statute"); *Brown v. Google LLC*, No. 4:20-cv-3664-YGR, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7, 2023) (users' specific searches constitute "content"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (URLs that reproduce a person's personal search engine queries are "contents"). Ms. Caine's allegations certainly describe "contents." ECF # 7, ¶¶ 4-11, 22-26.

Sturdy also contends that the one-party exception rule insulates it from liability. ECF # 9, at 5-6. But this defense has been rejected where, as alleged here, the underlying motivation is nefarious. *See, e.g., Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) (one-party consent was "not a defense to [the] Wiretap Act [ECPA] claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal and tortious act"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. at 796 (party exception does not apply "where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law."). *See also R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) ("Prime Healthcare's argument that R.S. does not plausibly allege an intent to "disclose" in violation of HIPAA fails"), citing *K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (finding intent to disclose private health information is a "criminal act for purposes of the carve-out to ECPA's party exception"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 144 n.80 (3d Cir. 2015); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (a party to a communication can intercept the communication if it clandestinely records a conversation with the intention to commit a tort or other crime with the intercepted communication).

### III.    Ms. Caine's Statutory Privacy Claims Have Merit

An invasion of privacy claim requires a plaintiff to allege "1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015); *see also Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006) ("plaintiff must show that there was a gathering and dissemination of information which [he contends] was private."); G.L. c 214, § 1B ("a person shall have a right against unreasonable, substantial or serious interference with his privacy"). Ms. Caine alleges that she communicated confidential medical information to Sturdy via its website. This information was highly personal, private, and the type of information she intended to keep private and expected Sturdy to keep confidential as well. But Sturdy shared this information with Google. *See* ECF # 7, ¶¶ 2-11, 22-26.

These allegations parallel those Judge Saris found sufficient to defeat Tenet Healthcare's motion to dismiss. "[T]he health information that was allegedly disclosed to Facebook (e.g., Plaintiff's identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location) constitutes information of a 'highly personal or intimate nature.'" *Tenet Healthcare*, 731 F. Supp. 3d at, 151–52. So, too, were they sufficient to defeat the motions to dismiss in the *Emerson* and *Boston Medical Center* cases, which Judge Saris cited as supporting precedent, noting that "whether an intrusion is unreasonable, substantial, or serious is a question of fact." *Id*. at 152. *See Doe v. Emerson Hosp.*, No. 2277-01000, 2023 WL 8869624, at *5 (Mass. Super. Nov. 22, 2023); *Doe v. Bos. Med. Ctr.*, No. 2384-00326, 2023 WL 7105628, at *5 (Mass. Super. Sep. 14, 2023).

In short, when a patient uses a healthcare provider's website to communicate or transfer confidential health or personal data, she has a reasonable expectation under

13

HIPAA, as well as the privacy policies, that the information will be kept private and not sold to third-party companies. *See Tenet Healthcare*, 731 F. Supp. 3d at 147.

Ms. Caine's allegations are sufficiently robust to survive Sturdy's motion to dismiss as detailed above. *See also Shedd v. Sturdy Memorial Hosp., Inc.*, No. 2173CV00498C, 2022 WL 1102524, at *11 (Mass. Super. Apr. 5, 2022) (denying dismissal of privacy claim based on allegations that unauthorized persons gained access to highly confidential medical information). In fact, it is well established that the unauthorized disclosure of medical information gives rise to an action for invasion of privacy. *Tower v. Hischorn*, 397 Mass. 581, 586–87 (1986) ("[D]isclosure without consent of the patient, of confidential medical information … would be sufficient to warrant a finding of invasion of privacy"); *Bratt v. IBM Corp.*, 392 Mass. 508, 522 (1984) (same); *Com. v. Brandwein*, 435 Mass. 623, 629–30 (2002) (same).

Sturdy does not substantively address this issue. Instead, it offers up cases like *In re iPhone App. Litigation,* 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (ECF # 9, at 11), suggesting that an iPhone device identifier and geolocation information is somehow equivalent to the disclosure of PHI that the discloser promised to keep confidential. But "the collection of protected health information from a medical provider is a different matter entirely." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022).

## IV.    Ms. Caine's Common Law Claims Are Adequately Pled

Ms. Caine's claims also parallel those in *Tenet Healthcare* where Judge Saris denied dismissal. 731 F. Supp. 3d. at 148-49 (negligence); *id*. at 149-50 (implied contract); *id*. at 151 (breach of fiduciary duty).

### A.    Ms. Caine Has Pled a Viable Negligence Claim

Ms. Caine alleges that Sturdy was negligent in installing Google Analytics on its

14

website, capturing her PHI and sharing it with Google. These allegations state a claim that Sturdy breached its duty to exercise reasonable care in handling patient information. To state a claim for negligence Ms. Caine must allege that Sturdy owed her "a duty of reasonable care, that [it] breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 338 (1st Cir. 2022) (quoting *Jupin v. Kask*, 447 Mass. 141, 849 N.E.2d 829, 834-35 (2006)).

Ms. Caine plausibly alleges that Sturdy's use of Google's website tracker was the proximate cause of her PHI being shared with Google, and that Sturdy's unauthorized sharing with Google was the proximate cause of the ads she received. ECF # 7, ¶¶ 26-28. Her negligence claim should survive. *Tenet Healthcare*, 731 F. Supp. 3d at 148–49.

**B.    Ms. Caine's Breach of Fiduciary Duty Claim is Well Pled**

Sturdy says it owed no fiduciary duty to Ms. Caine with respect to sharing her PHI with Google. ECF # 9, at 19-20. Ms. Caine alleged exactly what Sturdy says is required to establish fiduciary duty: that Sturdy disclosed her PHI and IIHI—information she entrusted to Sturdy and which Sturdy promised to protect and was statutorily obligated to protect—including but not limited to information about treating doctors, potential doctors, conditions, treatments, and search terms. ECF # 7, ¶¶ 22-26. In other words, she alleged she used Sturdy's website *as a patient* and received healthcare services via Sturdy's website.

A fiduciary relationship exists between healthcare providers and patients. *See In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 160-62, 165 (D. Mass. 2024) ("Plaintiffs have adequately pleaded that as their healthcare provider, Shields was their fiduciary."). Ms. Caine, as a Sturdy patient, states a viable claim of breach of fiduciary duty against Sturdy for disclosing her private health information.

15

*Tenet Healthcare*, 731 F. Supp. 3d at 151.

Sturdy's alternative argument also lacks merit. Sturdy claims the physician-patient relationship has not been sufficiently pled because the "context of the Plaintiff's relationship with Sturdy Memorial when she used the public website is outside the scope of the alleged physician/patient fiduciary relationship." ECF # 9, at 20. But the applicable jurisprudence runs counter to Sturdy's notion. The same principle that led the Supreme Judicial Court to recognize a physician's fiduciary duty to protect confidential medical information applies to hospitals generally, both as matter of law and equity. *Alberts v. Devine*, 395 Mass. 59, 71 (1985) ("The principle we announce is but an application of the general rule that a plaintiff may hold liable one who intentionally induces another to commit any tortious act that results in damage to the plaintiff.").

And Massachusetts recognizes "a patient's valid interest in preserving the confidentiality of medical facts communicated to a physician." That rule applies whether the communications are made personally or digitally. "[T]he Legislature has demonstrated its recognition of a policy favoring confidentiality of medical facts by enacting G.L. c. 111, §§ 70 and 70E, to limit the availability of hospital records." *Id.* at 67. Just as a patient has an expectation that her doctor will "hold in trust confidential information," *id.* at 68, so too does a patient expect that the hospital providing the medical services will protect the confidentiality of that information.

And this duty applies beyond the examining room to other contexts. For example, the courts have recognized that a pharmacy like CVS maintains a fiduciary duty to its pharmacists' patients. *Weld v. CVS Pharmacy, Inc.*, Mass. Super., No. CIV. A. 98-0897F (June 29, 1999); *Kelley v. CVS Pharmacy, Inc.*, Mass. Super., No. CIV.A. 98-0897-BLS2 (Aug. 24, 2007).

16

**C.    Ms. Caine Has Pled A Valid Claim for Breach of Implied Contract**

While Sturdy contends that Ms. Caine failed to sufficiently allege facts in support of her implied contract claim, it does not acknowledge that Massachusetts courts have denied motions to dismiss based on analogous allegations. *See Shedd*, 2022 WL 1102524, at *9–10 ("When a patient hands over sensitive information to receive medical care, they expect an implicit assurance that the information will be protected.").

"In the absence of an express agreement, an implied contract may be inferred" from "the conduct of the parties" and "the relationship of the parties." *T.F. v. B.L.*, 442 Mass. 522, 813 N.E.2d 1244, 1249 (2004). A "contract implied in law is an obligation created by law 'for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... [C]onsiderations of equity and morality play a large part ... in constructing a quasi-contract.'" *Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029, 1031 (1985) (quoting 1 A. Corbin, *Contracts* § 19 (1963)).

Ms. Caine's amended complaint contains sufficient factual allegations that Sturdy breached its implied contractual obligations by using third-party trackers on its website. *Tenet Healthcare Corp.*, 731 F. Supp. 3d at 150. When a patient uses a healthcare provider's website to communicate or transfer confidential health or personal data, she has a reasonable expectation under HIPAA, as well as the privacy policies, that the information will be kept private and not sold to third-party companies, regardless of whether she read the privacy policies as a matter of law. *Shedd,* 2022 WL 1102524, at *9-10.

In the virtually identical *Emerson Healthcare* case allegations of surreptitious deployment of Facebook's website tracker and the simultaneous sharing of patient information supported an implied contract claim. *See Doe v. Emerson Hosp.*, No. 2277-01000, 2023 WL 8869624, at *4 (Mass. Super. Nov. 22, 2023) ("[T]he allegations

17

sufficiently suggest that Emerson may have entered into an implied contract which included an agreement not to disclose health information to third parties, like Facebook, without consent.").

Sturdy also surfs over its explicit promise to patients that it would protect their medical information, as set out at paragraphs 95-98 of the Amended Complaint (ECF # 7). Numerous courts across the country have held that such representations are sufficient to create an implied contract. *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 482-486 (D. Md. 2020) (denying motion to dismiss); *Castillo v. Seagate Tech., LLC*, No. 15-cv-01958-RS, 2016 WL 9280242 at *5-9 (N.D. Cal. Sept. 14, 2016) (same); *Rudolph v. Hudson's Bay Co.*, No. 18-cv-8472 (PKC), 2019 WL 2023713 at *10-11 (S.D.N.Y. May 7, 2019) (same).

Ms. Caine alleged that she entered an implied contract when she provided confidential medical information to Sturdy in exchange for medical services, based on Sturdy's promises to safeguard her private information from unauthorized disclosure. Those allegations plausibly suggest that she is entitled to relief. Sturdy's motion to dismiss, though, effectively asks the Court to ignore her factual allegations and make a contrary "merits" determination about consideration and mutual assent. Ms. Caine has sufficiently alleged the claim, which is all that is at issue now.

### D.    Sturdy's Misconduct Injured Ms. Caine

Sturdy's challenge to Ms. Caine's common law claims includes the notion that she failed to allege actual damages. ECF # 9, at 14-17. That argument ignores both the law and the facts. Multiple Massachusetts courts have recognized that the unauthorized disclosure of a patient's medical information constitutes a cognizable injury. For example, in *Walker v. Boston Medical Center*, the court denied a similar motion to dismiss, holding that "Plaintiff's general allegation of injury from the data breach" involving

18

access to "confidential medical information by unauthorized persons, is sufficient." No. SUCV20151733BLS1, 2015 WL 9946193, at *2 (Mass. Super. Nov. 20, 2015). *Walker* further observed that "[a]t the pleading stage, before discovery has determined whether plaintiffs' records were accessed, more specificity regarding the kind of injury suffered by plaintiffs is not required." *Id*. (emphasis added).

The superior court reached the same conclusion in *Shedd v. Sturdy Memorial Hospital, Inc*., holding that plaintiff's allegations that her "confidential health information, such as medical records and prescription history information" had been disclosed without her authorization was more than sufficient to survive a motion to dismiss. 2022 WL 1102524, at *5 (Mass. Super. Apr. 5, 2022). The same result follows here.

Ms. Caine's allegations of injuries are specific compared to the more generic claims ofof injury in *Walker* and *Shedd*. She alleges that he was injured when Sturdy made unauthorized disclosures of her private medical information to third-party marketing company Google. She alleges that she was further injured when Sturdy and Google monetized her PHI, when she was paying Sturdy for health care, and from not being compensated for the value of her PHI. These allegations demonstrate her injury. *See Tenet Healthcare Corp.*, 731 F. Supp. 3d at 148–49.

## V.      Conclusion

For all these reasons, the Court should deny Sturdy's motion to dismiss.

Dated: April 25, 2025

Respectfully submitted,

/s/ *John Roddy*

John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
101 Arch Street, 8th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer (to be admitted *pro hac vice*)
Bart D. Cohen (to be admitted *pro hac vice*)
Bailey& Glasser LLP
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420 (phone)
(202) 463-2103 (fax)
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*

20