**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBORAH CAINE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>STURDY MEMORIAL HOSPITAL, INC.,<br><br>          Defendant. | Case No. 1:25-cv-10261<br><br>**Leave to File Granted on March 26, 2025** |

**DEFENDANT STURDY MEMORIAL HOSPITAL, INC.'S
<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT....................................................................................................... 1

    A.    Plaintiff Fails To State Her ECPA Claim .................................................. 1

        1.    Plaintiff Does Not Plausibly Allege That Sturdy Memorial Intended
            To Commit A Crime Or Tort ......................................................... 1

        2.    Plaintiff Does Not Plausibly Allege The Interception Of
            "Contents"....................................................................................... 9

        3.    Plaintiff's Attempts to Brush Away *Becerra* Are Unavailing ................... 12

    B.    Plaintiff Fails To State Its Privacy Claims ............................................. 13

    C.    Plaintiff's Common Law Claims Similarly Fail As A Matter of Law ................. 16

        1.    Plaintiff's Negligence Claim Should Be Dismissed ................................. 16

        2.    Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed .......... 16

        3.    Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed....... 19

        4.    Plaintiff Has Failed to Allege Cognizable Injury..................................... 19

III.  CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
95 Mass. 59 (Mass 1985) ...................................................................................................18

*American Hosp. Ass'n. v. Becerra*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024) ...................................12

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024).................................................................................................8

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......................................................................8, 16, 18

*Bates v. State Bar of Az.*,
433 U.S. 350 (1977)............................................................................................................5

*Bigelow v. Virginia*,
421 U.S. 809 (1975)............................................................................................................5

*Boddie v. Am. Broad. Cos., Inc.*,
731 F.2d 333 (6th Cir. 1984) ..............................................................................................4

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) ..............................................................................................2

*Caro v. Weintraub*,
618 F.3d 94 (2nd Cir. 2010)..............................................................................................3, 4

*Cohen v. Casper Sleep Inc.*,
No. 17-CV-9325, 2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018)...............................................7

*Commonwealth v. McCue*,
67 Mass. App. Ct. 1113 (2006)..........................................................................................15

*Commonwealth v. Welch*,
487 Mass. 425 (2021) ......................................................................................................15

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023).................................................................................11

*Cousin v. Sharp Healthcare*,
681 F. Supp 3d. 1117 (S.D. Cal. 2023).............................................................................14

*Desnick v. Am. Broad. Cos., Inc.*,
   44 F.3d 1345 (7th Cir. 1995) ..................................................................................3, 5

*Doe I v. Google, LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ...........................................................................7

*Doe, et al. v. Adventist Health Care Network*,
   No. 22STCV36304 (Cal. Super. Ct. Feb. 14, 2025) ...............................................11

*Doe v. Amgen Inc.*,
   No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).........7

*Doe v. Bayhealth Med. Ctr., Inc.*,
   No. N24C-09-002 FJJ, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ...........12

*Doe v. Boston Medical Center Corp.*,
   No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023) .......15

*Doe v. Emerson Hospital*,
   No. 2277CV01000, 2023 WL 8869624 (Mass Super. Nov. 22, 2023)..............15, 19

*Doe v. Genesis Health Sys.*,
   No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ..................6

*Doe v. Kaiser Found. Health Plan, Inc.*,
   No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................7

*Doe v. Tenet Healthcare Corporation*,
   731 F. Supp. 3d 142 (D. Mass. 2024) ............................................................ *passim*

*Doe v. Univ. Health Sys., Inc.*,
   No. 207369-2, 2024 Tenn. Ch. LEXIS 2, (Tenn. Ch. Aug. 9, 2024).....................13

*Helvering v. Gregory*,
   69 F.2d 809 (2d Cir. 1934)..........................................................................................3

*In re DoubleClick Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001).......................................................................6, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ....................................................................................11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015).......................................................................................4

*In re Grp. Health Plan Litig.*,
   709 F. Supp. 3d 707 (D. Minn. 2023)........................................................................2

*In re High Fructose Corn Syrup Antitrust Litig.*,
    216 F.3d 621 (7th Cir. 2000) ...................................................................................................3

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................8

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..............................................................................................11

*J.C. v. Cath. Health Sys. Inc.*,
    No. 1:23-CV-00796, 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ....................................12

*Julie Roberts, et al. v. Charlotte Mecklenburg Hosp. Authority*,
    No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025)......................................................................6

*Katz-Lacabe v. Oracle America, Inc.*
    No. 22-CV-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)......................................6

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ..........................................................................7

*Kurowski v. Rush Sys. for Health*,
    No. 22-CV-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024).............................................2

*Leader v. Harvard Univ. Bd. Overseers*,
    No. 16-cv-10254, 2017 WL 1064160 (D. Mass. Mar. 17, 2017) ..........................................13

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004).....................................................................................................................9

*Lucas v. Fox News Network, LLC*,
    248 F.3d 1180 (11th Cir. 2001) ..............................................................................................4

*Lugo v. Inova Health Care Servs.*,
    No. 1:24-cv-700, 2025 WL 905191 (E.D. Va. March 25, 2025)............................................2

*Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*,
    30 F. Supp. 2d 1182 (D. Az. 1998).........................................................................................5

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d 916 (D. Minn. 2024).....................................................................................8

*Meredith v. Gavin*,
    446 F.2d 794 (8th Cir. 1971) ..................................................................................................3

*Nelson v. Town of Westminster*,
    No. 23-cv-40069, 2024 WL 4250221 (D. Mass. Aug. 30, 2024)....................................13, 17

iv

*Nienaber v. Overlake Hospital Medical Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025)........................6, 8, 12

*Payne v. Norwest Corp.*,
911 F. Supp. 1299 (D. Mt. 1995)......................................................................................4

*Perkins v. City of Attleboro*,
969 F. Supp. 2d 158 (D. Mass. 2013) ...........................................................................13

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .....................................................................................4, 7

*Polay v. McMahon*,
468 Mass 379 (2014) .....................................................................................................13

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-000621-N, 2024 WL 4376162 (N.D. Tex. Oct. 1, 2024) ........................13

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .............5

*Rodriguez v. Fastmed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)............................................................................7

*Shedd v. Sturdy Memorial Hosp., Inc.*,
No. 2173CV00498C, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022)..........................15

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)........................................................................................................5

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......................................................................................4

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) .........................................................................................2

*Tower v. Hischorn*,
397 Mass. 581 (1986). ..................................................................................................16

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)............................................................................................9

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ..............................................................................2, 6

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986) .................................................................................2

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
  425 U.S. 748 (1976) ................................................................................................................5

*Walker v. Bos. Med. Ctr. Corp.*,
  No. SUCV20151733BLS1, 2015 WL 9946193 (Mass. Super. Nov. 20, 2015) ......................19

*Williams v. TMC Health*,
  No. 23-CV-434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ..............................6

*Willitts v. Engie N. Am. Inc.*,
  No. 20-CV-11255-ADB, 2021 WL 2322833 (D. Mass. June 7, 2021) ...................................18

**Statutes**

18 U.S.C. § 2511 ......................................................................................................................9

M.G.L. c. 111 § 70E ...............................................................................................................13

M.G.L. c. 214 § 1B .................................................................................................................13

## I.     INTRODUCTION

Plaintiff Deborah Caine's ("Plaintiff") Opposition demonstrates how Plaintiff seeks to greatly expand the scope of the Electronic Communications Privacy Act ("ECPA") beyond the plain language of the statute and criminalize conduct that regularly occurs on the Internet. Plaintiff argues for this Court to adopt an expansive interpretation of the crime-tort exception that would eliminate the requirement that a party act with an intended purpose to commit a crime or tort at the time of the interception that is independent of the interception. Plaintiff's argument is contrary to the statutory text and decisions within this Circuit and would result in the crime-tort exception swallowing the one-party consent rule. It should be rejected and Plaintiff's ECPA claim should be dismissed.

Plaintiff's argument that her personal health information, including her patient status, has been disclosed without her consent is also not supported by the actual allegations in her operative Amended Complaint. The lack of such allegations are fatal to her tort and contract claims. As addressed further below, Plaintiff's Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.     Plaintiff Fails To State Her ECPA Claim

#### 1.     Plaintiff Does Not Plausibly Allege That Sturdy Memorial Intended To Commit A Crime Or Tort

Plaintiff does not dispute that unless the crime-tort exception applies, her ECPA claim against Sturdy Memorial Hospital, Inc. ("Sturdy Memorial") fails as a matter of law and must be dismissed. Plaintiff argues that she need not allege facts that Sturdy Memorial acted with an intentional purpose to commit a crime or tort. Opp. at 8–10. She contends that the mere fact that Sturdy Memorial deployed and used third-party analytics on its public website, which she claims resulted in a purported HIPAA violation and an invasion of Plaintiff's privacy is sufficient to

1

invoke the crime-tort exception. *Id*. Plaintiff's argument is not supported by either the plain language of the statute or decisions within this Circuit.

As this Court has held, to trigger ECPA's crime-tort exception Plaintiff must allege either "(1) that the *primary motivation*, or (2) that a *determinative factor* in the *actor's motivation* for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986) (emphasis added). This Court has also held that the crime-tort exception is "to be construed narrowly," and the finding of an "[a]n impermissible purpose" has been "confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment." *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (citations omitted).

Ignoring these decisions, Plaintiff primarily relies on out-of-circuit district court decisions in support of its argument that the only purpose required under the statute must be to commit an act alone, and the purpose for taking the act is irrelevant, so long as the act itself is purposeful. Opp. at 8–10 (quoting *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719–20 (D. Minn. 2023), *Kurowski v. Rush Sys. for Health*, No. 22-CV-5380, 2024 WL 3455020, at *3 (N.D. Ill. July 18, 2024), and *Lugo v. Inova Health Care Servs.*, No. 1:24-cv-700, 2025 WL 905191, at *6 (E.D. Va. March 25, 2025)). The analysis in the *In re Group Health*, *Kurowski* and *Lugo* decisions, however, is contrary to Seventh Circuit and Eighth Circuit precedent as well as decisions within this Circuit, which require an actual criminal or tortious purpose for the exception to apply—initially described by the appellate court as an "intent to harm." *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception **with intent to harm** rather than the fact of interception that is critical to liability, and there was no use of the interception here.") (emphasis added); *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception,

2

holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (refusing to apply the exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*") (emphasis added); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, *unless the person both is not acting under color of state law **and has a criminal or tortious purpose**.*") (Posner, J.) (emphasis added); *Meredith v. Gavin*, 446 F.2d 794, 798–99 (8th Cir. 1971) (holding exception did not apply where defendant secretly recorded private conversation with plaintiff in connection with worker's compensation proceeding to use at trial; "it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed").

As a textual matter, Plaintiff's proposed interpretation of the statutory text is also incorrect. As the Second Circuit held: "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub*, 618 F.3d 94, 100 (2nd Cir. 2010). "Therefore, the offender must have as her objective a tortious or criminal result." *Id.* "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original). "But Congress limited the cause of action to instances where one party to the conversation *deliberately seeks to harm* the other participant through the information intercepted." *Id.* (emphasis added); *compare Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (L. Hand, J.), *aff'd,* 293 U.S. 465 (1935)

("the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes").

The uniform law, from the outset of cases analyzing the exception, is consistent with Sturdy Memorial's position and contrary to Plaintiff's argument. *See, e.g., Caro*, 618 F.3d at 99–100 (2d Cir. 2010); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition involving tortious or criminal use of the interception's fruits"); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) (refusing to apply the exception because "[a]lthough ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180, at *4 (11th Cir. 2001) (refusing to apply where plaintiffs' amended complaint expressly alleged defendant "recorded the session with the intent to broadcast the recording as part of a news report that would cast plaintiffs as members of a cult"); *Boddie v. Am. Broad. Cos., Inc.*, 731 F.2d 333, 337 (6th Cir. 1984) (analyzing legislative history; "The amendment, according to Senator Hart, would prohibit an interception 'when the party acts in a way with intent to injure the other party to the conversation in any other way.'") (quoting 114 Cong. Rec. 14,694 (1968)); *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) (holding that "The recording party must also have the independent criminal or tortious purpose at the time the recording was made.") (citing *Sussman*, 186 F.3d at 1203); *Payne v. Norwest Corp.*, 911 F. Supp. 1299, 1304 (D. Mt. 1995)*, aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious") (emphasis in original).

Under all accounts, the focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose was lawful, then the exception does not apply, even if the defendant's actions in using the recording might ultimately turn out to violate some other law. *Desnick*, 44 F.3d at 1353; *Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the *express intent of committing a tort*.") (emphasis added).

Moreover, Plaintiff's argument in its opposition that Sturdy Memorial "obtained data for analytics to gain insight into how patients used its website; all to help Sturdy keep patients, get new patients, decrease costs and increase patients," does not demonstrate a criminal or tortious purpose. Opp. at 10. While marketing as a purpose may include a financial motive, it is not a criminal or tortious purpose. Far from being criminal or tortious, the United States Supreme Court has held that the basic right to engage in commercial speech is protected by the First Amendment to the United States Constitution. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 765 (1976); *Bates v. State Bar of Az.*, 433 U.S. 350, 376–77 (1977); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("the creation and dissemination of information are speech within the meaning of the First Amendment").[1]

---

[1] In *R.S. v. Prime Healthcare Servs.*, cited by Plaintiff, the court similarly misconstrued the import of a primarily financial purpose. The court pointed to the example of blackmail to support its conclusion that financial motives cannot immunize an intercepting defendant, noting that blackmail typically involves a financial motive. *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025). In that example, however, it is the defendant's purpose to commit the separate crime of blackmail that supplies the necessary intent, which is lacking here.

5

For the crime-tort exception to apply, Plaintiff must—but does not—plausibly allege that Sturdy Memorial, a not-for-profit health system, installed Google technologies on its public website for the distinct purpose of violating HIPAA or perpetrating a tort, like invasion of privacy or breach of confidentiality—*i.e.*, that Sturdy Memorial deployed these technologies because it "intended to harm" its patients and other visitors to its website. *See McHugh*, 57 F. Supp. 3d at 100. Instead, they allege only that Sturdy Memorial used these technologies, which are commonplace in both the healthcare industry and on websites generally, "for advertising and marketing purposes." Am. Compl. ¶ 151.

When the crime-tort exception analysis is properly focused on the defendant's alleged purpose in making the alleged interception, and not on whether the defendant's alleged conduct resulted in any purported crime or tort, the more persuasive authority holds that a purpose to engage in digital marketing is not criminal or tortious as a matter of law. *See Doe v. Genesis Health Sys.*, No. 4:23-CV-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim because the use of third-party analytics "by the Defendant to benefit [Defendant] and its marketing and advertising purposes, not *for the purpose of* knowingly committing a violation of the HIPAA" does not fall under the crime-tort exception) (emphasis in original; internal citations omitted); *Nienaber v. Overlake Hospital Medical Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (rejecting allegations that an alleged digital marketing and analytics purpose was sufficient to invoke the exception); *Williams v. TMC Health*, No. 23-CV-434-TUC-SHR, 2024 WL 4364150, at *4–5 (D. Ariz. Sept. 30, 2024) (same); *Julie Roberts, et al. v. Charlotte Mecklenburg Hosp. Authority d/b/a Atrium Health*, Dkt. # 50, Ord., Civ. Act. No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) (same; attached as Exhibit A); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518–19; *Katz-Lacabe v. Oracle America, Inc.* No. 22-CV-04792-

RS, 2024 WL 1471299, at *3, *5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Cohen v. Casper Sleep Inc.*, No. 17-CV-9325, 2018 WL 3392877, at **3–4 (S.D.N.Y. Jul. 12, 2018) ("Cohen fails to demonstrate that Defendants' primary purpose was to commit a tort. Instead, he claims that Defendants' conduct amounted to a tort.") (emphasis in original); *compare Planned Parenthood Fed. of Am.*, 51 F.4th at 1136 n.8 ("fundraising is not a criminal purpose"); *Doe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) ("While Plaintiffs aver that Defendant's motivations were to improve their marketing and advertising efforts [], the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally.") (citation omitted)); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding the "apparent purpose" of hospital system collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."); *Rodriguez v. Fastmed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (dismissing ECPA claim because allegations that "[defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain [] does not equate to [defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act'") (citation omitted); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim because Google's purpose in offering its advertising and analytics products "'has plainly not been to perpetuate torts on millions of Internet users, but to make money'") (quoting *Rodriguez*,

7

741 F. Supp. 3d at 364 n.8); *In re DoubleClick Privacy Litig.*, 154 F. Supp. at 519 (dismissing ECPA claim where defendant's motivations were "licit and commercial" such that as a matter of law, plaintiff failed to allege defendant acted with a tortious purpose); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1065–66 (C.D. Cal. 2024) (no independent crime or tortious purpose alleged).

Other decisions relied upon by Plaintiff ignore that for the exception to apply the interception must be made for the purpose of committing a tortious or criminal act that is *independent* of the intentional act of recording or the interception itself, which is absent here. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927 (D. Minn. 2024). Indeed, the U.S. District Court for the Western District of Washington found a number of those decisions to be unpersuasive because they fail to "evaluate the distinction between the interception and transmission of data," and ruled that the crime-tort exception did not apply under similar allegations. *Nienaber.*, 2025 WL 692097, at *13 (decisions cited by plaintiff fail to "evaluate the distinction between the interception and transmission of data.") (collecting cases).

The contrary decisions cited by Plaintiff are not grounded in the language of ECPA and cannot be reconciled with the First Circuit's interpretation of its provisions and requirement that the exception be narrowly construed. The decisions further fail to consider the canon that courts should avoid statutory interpretations that produce absurd results if an alternative interpretation "consistent with legislative purpose [is] available." *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (citations omitted). Imposing ECPA liability where a defendant does not have the requisite purpose, creates the absurd situation of obviating the crime-tort exception's intent requirement and making felons out of numerous not-for profit healthcare

8

systems. *See also* Amicus Brief filed by the Chamber of Commerce in *Doe v. Lawrence General Hospital*, Case No. 1:25-cv-10081-NMG, U.S. District Court for District of Massachusetts, attached as Exhibit B. The canon against absurdity exists for cases like this one.

The rule of lenity also supports Sturdy Memorial's  interpretation of the statute. The rule of lenity requires that a "grievous ambiguity in a penal statute [be] resolved in the defendant's favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). The rule of lenity also pertains to civil claims arising out of statutes with criminal applications. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). Because ECPA carries both civil and criminal penalties, 18 U.S.C. § 2511(4)(a), should the Court determine that the clause "intercepted for the purpose of committing any criminal or tortious act" presents a grievous ambiguity, it should resolve that ambiguity in Sturdy Memorial's favor and conclude that there must be an intentional purpose at the time of interception to commit a crime or tort and the alleged interception must be separate from the criminal or tortious act.

Plaintiff's failure to plead that at the time it deployed the Google analytics technologies it did so for the purpose of committing a crime or tort that was independent from the alleged interceptions of Plaintiff's communications requires Plaintiff's ECPA claim to be dismissed.

### 2.    Plaintiff Does Not Plausibly Allege The Interception Of "Contents"

Plaintiff's ECPA claim separately fails as a matter of law because she has not plausibly alleged that the "contents" of any electronic communications was intercepted as required to state a viable claim. Plaintiff's Opposition merely asserts that her "allegations certainly describe 'contents,'" citing several paragraphs without any concrete or particular explanation as to how those paragraphs describe contents. Opp. 12 (citing Am. Compl. ¶¶ 4–11, 22-26). Plaintiff's argument, however, is not supported by a review of the Amended Complaint. Simply, paragraphs

4–11 do not contain any allegations about Plaintiff. Am. Compl. ¶¶ 4–11. The remaining cited paragraphs contain cursory, insufficient allegations regarding nonconfidential, general web browsing activity Ms. Caine purports to have conducted. *Id.* ¶¶ 22-26. With respect to the Patient Portal, the Amended Complaint alleges only that the "Sturdy's website transmitted to Google that the patient clicked on the log-in button to the patient portal," Am. Compl. ¶ 67, and "[t]he dates and times when patients log in to the patient portal," *id.* ¶ 46. There is no allegation that any information from within the patient portal was ever transmitted to Google.

Plaintiff's supposed "important" clarification that "Ms. Caine was unwilling to disclose the specifics of her private health information in an open court filing," yet instead had offered to "'disclose under a confidentiality agreement' the specifics on the 'highly sensitive… significant health issues' that Sturdy complains are lacking" is irrelevant to determining whether Plaintiff has stated a viable ECPA claim. Opp. at 3 (quoting Am. Compl. ¶ 23). If anything, this statements appears to be a recognition on Plaintiff's part that her allegations as pled are insufficient.

As detailed in Defendant's Opposition to Plaintiff's Motion for Leave to File and Seal Second Amended Complaint, Plaintiff has no secret, sensitive personal health information to plead. ECF No. 19 at 2–4. Instead, it appears that Plaintiff regularly used Sturdy Memorial's website to review information *for other persons*, which clearly is not her personal health information.. ECF No. 14 ¶¶ 28–34. In any event, neither the proposed sealed information pertaining to Plaintiff nor others is "highly sensitive," and her proposed second amended complaint suffers from the same defects as her operative one. Should the Court grant Plaintiff's Motion for Leave to Amend, Defendant will substantively address the updated allegations in a subsequent motion to dismiss. Despite characterizing her allegations as "Ms. Caine's personalized inquiries regarding significant

10

physical and mental health issues," Plaintiff has not actually pled facts anywhere close to such in the operative or proposed complaints. Opp. at 11.

Plaintiff argues that that "Ms. Caine's personalized inquiries regarding significant physical and mental health issues"—which she has not pled in her operative or proposed complaint—are the types of "URLs disclosing search terms" can be "contents" under the ECPA. Opp. 11–12. Plaintiff's argument, however, ignores that courts have distinguished between URLs that reflect mere navigation through a website, which are not protected content, from URLs that reflect a detailed search query made by the website user and may be protected content. *See, e.g., In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) (URLs that reproduce words from a search engine query could be content, but URLs that reflect a user's navigation from one page to another, even if the page name was for a gay support group, are not content); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (URLs reflecting search terms typed into Google's search engine are distinguishable from the URLs at issue *In re Zynga* that resulted from clicking on links within the gaming website and are not content); *Doe et al. v. Adventist Health Care Network*, No. 22STCV36304, at 8 (Cal. Super. Ct. Feb. 14, 2025) (denying class certification because determining whether each individual class member's URL included user-inputted search terms or showed mere navigation within a patient portal would predominate over common issues), attached as Exhibit C. Plaintiff has not alleged that she undertook any actions that would have resulted in the transmission of anything more than a URL reflecting pages she viewed within the Sturdy Memorial's public website, which are not protected "contents" under the ECPA. *See id.; see also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location.").

### 3. Plaintiff's Attempts to Brush Away *Becerra* Are Unavailing

Plaintiff leads her Opposition with an effort to discredit *Becerra* and Defendant's reliance on such, ECF No. 9 at 4–5 (citing and quoting *American Hosp. Ass'n. v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024)), but each of her cited cases that supposedly "reject[] *Becerra*'s flawed reasoning" do no such thing, Opp. at 4–5 (citing cases).

Plaintiff cites several post-*Becerra* cases that declined to follow *Becerra* for factually distinguishable reasons. *Id*. In *Nienaber v. Overlake Hosp. Med. Ctr.*, the court declined to follow *Becerra* and found it unpersuasive only because Defendant "also allege[d] the disclosure of her Facebook ID, which links the user to his/her Facebook profile" *and* recognized "[i]mportantly, Plaintiff also allege[d] that the information disclosed by Defendant includes the fact that Plaintiff sought and received medical treatment from Defendant." No. 2:23-CV-01159-TL, 2025 WL 692097, at *5–6 (W.D. Wash. Mar. 4, 2025) (internal citation omitted). Ms. Caine has alleged no such similar facts such that this Court should decline to find *Becerra* persuasive. The court in *J.C. v. Cath. Health Sys. Inc.*, similarly, declined to follow *Becerra* only because "[t]he allegations [t]here involve[d] disclosure of potential IIHI along with an individual's Facebook ID, ***which very specifically identifies an actual individual***, and not a device." No. 1:23-CV-00796(JLS)(JJM), 2024 WL 5136236, at *14 (W.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, No. 23-CV-796 (JLS) (JJM), 2025 WL 351043 (W.D.N.Y. Jan. 31, 2025) (emphasis added).

In *Doe v. Bayhealth Med. Ctr., Inc.*, the complaint alleged the interception of "keyword searches" and "patient portal activities" which are not alleged in the present case. No. N24C-09-002 FJJ, 2025 WL 1010403, at *6 (Del. Super. Ct. Apr. 4, 2025). Another cited case, *Doe v. Univ. Health Sys., Inc.*, does not, as Plaintiff claims, "explicitly consider[s] *Becerra*," but rather only states that the defendant cited it; the court then made no further observations about *Becerra* and

ruled on a motion to dismiss on causes of action "under Tennessee law." No. 207369-2, 2024 Tenn. Ch. LEXIS 2, at *1–2 (Tenn. Ch. Aug. 9, 2024).

Notably, Plaintiff failed to include reference to another district court decision that followed *Becerra*, and dismissed an ECPA claim for failure to plead facts that any private health information was shared through website browsing. *See Rand v. Eyemart Express, LLC*, No. 3:24-CV-000621-N, 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024) (quoting *Becerra*'s "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)" formula and dismissing and ECPA claim because "Plaintiffs have failed to plead facts that plausibly establish that they shared any private health information with Meta").

### B.      Plaintiff Fails To State Its Privacy Claims

In support of her second count, titled "Violation of Privacy Statutes," Am. Comp. at 49, Plaintiff cites G.L. c 214, § 1B once in a string-cite. *See* Opp. at 13. Plaintiff has seemingly abandoned her arguments involving G.L. c. 111, § 70E. *See* Am. Compl. ¶ 159 (claiming "violation of G.L. c. 214, § 1B and c. 111, § 70E"). "When a plaintiff does not address an argument to dismiss a claim, courts may consider opposition to the dismissal of that claim waived." *Nelson v. Town of Westminster*, No. 23-cv-40069, 2024 WL 4250221, at *7 (D. Mass. Aug. 30, 2024); *see also Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 177 (D. Mass. 2013); *Leader v. Harvard Univ. Bd. Overseers*, No. 16-cv-10254, 2017 WL 1064160, at *6 (D. Mass. Mar. 17, 2017).

To sustain an invasion of privacy claim under G.L. c 214, § 1B, known as the Massachusetts Right to Privacy Act ("MRPA"), Plaintiff must plausibly allege an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass 379, 382 (2014). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," that does not mean such a claim is never subject to dismissal for failure to allege sufficient facts to state such a claim. *Id.* at 383. Plaintiff's complete lack of allegations

13

that anything she did on the Sturdy Memorial public website led to the transmission of any particularly sensitive or personal information require dismissal of her MRPA claim.

Plaintiff attempts to save her claim by asserting that "she communicated confidential medical information to Sturdy via its website" that was "highly personal, private, and the type of information she intended to keep private and expected Sturdy to keep confidential as well," citing again paragraphs 2–11 and 22–26, is unavailing as the allegations in those paragraphs is devoid of personal or sensitive information as described above. *See supra* at 10. The cited paragraphs of the complaint, contain no such examples of what Plaintiff specifically searched for or what purported information of hers was shared. Plaintiff also argues that because some MRPA claims that involved website tracking technologies survived a motion to dismiss in other district court cases, so too should her claim survive. Opp. at 13. Plaintiff, however, ignores significant factual distinctions that exist in the pleading of those cases that renders them inapposite.

In *Doe v. Tenet Healthcare Corporation*, the plaintiff alleged that she used Tenet's website to "schedule appointments, search for information, and access the patient portal," and after taking those actions she received targeted online advertisements relating to her specific health conditions, including related to weight loss and diabetes. 731 F. Supp. 3d 142, 147–148, 151–152 (D. Mass. 2024). In permitting the MRPA claim to proceed, the court specifically found that the information alleged that the plaintiff had her "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location [] constitutes information of a 'highly personal or intimate nature.'" *Id.* at 151–152. [2]

---

[2] For these same factually distinctive reasons, Plaintiff's attempts to use *Tenet* to sidestep *Becerra* also fail. Opp. at 5–7

Similarly, in *Doe v. Boston Medical Center Corp.*, the plaintiff alleged that her logging into the patient portal and actions taken to make an appointment with a BMC urologist for a hernia repair were transmitted to Meta and Google. No. 2384CV00326-BLS-1, 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023). Likewise, in *Doe v. Emerson Hospital*, the plaintiff alleged that information about his specific treatment for a concussion and information about his appointments at Emerson were transmitted to Meta. No. 2277CV01000, 2023 WL 8869624, at *1, *5 (Mass Super. Nov. 22, 2023).

Here, although Plaintiff argues in her Opposition that her "highly personal" and "private" information were transmitted to Google, as addressed above that argument is not supported by her actual allegations. *See supra* II.B. Moreover, unlike the allegations in *Tenet*, *Boston Medical Center*, and *Emerson*, there are no allegations that any information about the scheduling of her medical appointments, the nature of those medical appointments, including the particular medical conditions, was ever transmitted to any third-party. Indeed, Plaintiff does not allege anything with respect to what she contends was transmitted in connection with her use of the public website, let alone that the information involved was of a highly personal or intimate nature. Massachusetts courts have found no reasonable expectation of privacy in situations that are more sensitive than search of a public website. *See, e.g., Commonwealth v. Welch*, 487 Mass. 425, 433-34 (2021) (busy hospital emergency room was not a location where a suspect had a reasonable expectation of privacy); *Commonwealth v. McCue*, 67 Mass. App. Ct. 1113, at *1–2 (2006) (unpublished) (similar).

Plaintiff also attempts to conflate her nonconfidential web browsing with cases that involve "highly confidential medical information." Opp. at 14. In *Shedd v. Sturdy Memorial Hosp., Inc.*, the court denied a motion to dismiss because the privacy claim involved allegations that

unauthorized persons had gained access to "social security numbers and confidential medical information," not generic searches on a public website at issue in the present case. No. 2173CV00498C, 2022 WL 1102524, at *3 (Mass. Super. Apr. 5, 2022). Similarly, in *Tower v. Hischorn*, the complaint alleged that "the defendant had discussed the plaintiff's medical treatment" with an individual retained by an insurance company in preparation for a trial, violating a duty of confidentiality and invading her privacy. 397 Mass. 581, 584 (1986). The facts in *Tower*, like those in *Shedd*, are a far cry from the nonconfidential information pled by Plaintiff in the operative (and proposed) complaints.

In the present case, given the lack of any allegations that Plaintiff's medical information was ever transmitted to Google, Plaintiff's claim is more akin to the allegations in *B.K. v. Eisenhower Medical Center* and *Cousin v. Sharp Healthcare*, where the courts dismissed invasion of privacy claims since, at most information, about routine medical searches and inquiries on a public website were transmitted. *B.K.*, 721 F. Supp. 3d at 1067; *Cousin*, 681 F. Supp 3d. 1117, 1123 (S.D. Cal. 2023).

### C.    Plaintiff's Common Law Claims Similarly Fail As A Matter of Law

Plaintiff insists that her common law claims "parallel those in Tenet Healthcare where Judge Saris denied dismissal." Opp. at 14 (citing *Tenet*, 731 F. Supp. 3d at 148–151). Plaintiff's allegations, however, are distinguishable from *Tenet* where the court found that the plaintiff had her "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location [] constitutes information of a 'highly personal or intimate nature.'" Because no such information is alleged in the complaint, none of the common law claims are adequately pled.

**1.      Plaintiff's Negligence Claim Should Be Dismissed**

Though Defendant's Memorandum notes that "[t]he purported source of Sturdy Memorial's alleged duty to protect Plaintiff's browsing data on a public website is unclear" and that no duty is owed, ECF 9 at 14–15, Plaintiff fails to clarify what duty Defendant owes Plaintiff with respect to its negligence claim. On that basis alone, the negligence claim has been waived. *See Nelson*, 2024 WL 4250221, at *7 (When a plaintiff does not address an argument to dismiss a claim, courts may consider opposition to the dismissal of that claim waived.").

Plaintiff's Opposition asserts that "Sturdy's use of Google's website tracker was the proximate cause of her PHI being shared with Google, and that Sturdy's unauthorized sharing with Google was the proximate cause of the ads she received." Opp. at 15 (citing Am. Compl. ¶¶ 26–28). However, she ignores that her Amended Complaint is devoid of any allegations that any of Plaintiff's personal health information has ever been transmitted to Google. As a result, her reliance on *Tenet* is misplaced because, in that matter and unlike here, the plaintiff had specifically alleged facts that her personal health information, including her particular health conditions, treatments, appointment time and location was transmitted to Meta, and she alleged that these disclosures caused the advertisements she received for diabetes and obesity. *Tenet*, 731 F. Supp. 3d at 147–148. Here, Plaintiff has failed to allege facts that she herself used Sturdy Memorial's website in a manner that any transmitted browsing data could ever be considered the transmission of protected confidential health information.

**2.      Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed**

Despite Plaintiff's assertions in its Oppositions to the contrary, Plaintiff's amended complaint does not allege that "she alleged she used Sturdy's website *as a patient* and received healthcare services via Sturdy's website." Opp. at 15. The amended complaint is devoid of the claim that she "received healthcare services via Sturdy's website." *Id.*

17

Plaintiff's failure to allege sufficient factual allegations dooms her breach of fiduciary duty claim. She alleges nothing particular to herself in the context of her use of the Sturdy Memorial website, and alleges no transmission that pertains to the disclosure of any of her personal health information. Plaintiff's arguments regarding her breach of fiduciary duty claim further ignores that the constraints of a physician-patient relationship are not boundless and the allegations here are limited to alleged actions that are taken by visitors to Sturdy Memorial's public website without Sturdy Memorial having any knowledge of who those users are. Plaintiff's allegations are limited to examples of hypothetical use of a hospital's public-facing website, which does not plausibly support a fiduciary relationship. Moreover, the relationship between Sturdy Memorial and the users of its public website, including the Plaintiff, is common to all members of the public, and is the antithesis of a fiduciary relationship.

As addressed above, Plaintiff's reliance on the decision in *Tenet* is misplaced since those allegations were more robust and included the alleged transmission of the plaintiffs' specific treatments, appoint times and locations. See *Tenet Healthcare Corporation*, 731 F. Supp. 3d at 147–148, 151 (plaintiff alleged that her "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location" were transmitted). Likewise, the fiduciary obligation addressed in *Alberts v. Devine*, addresses the obligation of a physician "to hold in trust confidential information." 95 Mass. 59, 69 (Mass 1985). However, Plaintiff has not alleged that any communications with any of her physicians were ever disclosed. *See Willitts v. Engie N. Am. Inc.*, No. 20-CV-11255-ADB, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim based on "no disclosure by a physician"); *see also B.K.*, 721 F. Supp. 3d at 1069 ("Plaintiffs fail to sufficiently allege disclosure. As a result, Plaintiff's

breach of confidence claim fails"). Plaintiff's non sequitur that pharmacies can "maintain a fiduciary duty to its pharmacists' patients" is irrelevant and not in dispute. Opp. at 16.

### 3.    Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed

Plaintiff's Opposition ignores Sturdy Memorial's argument that there has been a failure to allege consideration for any purported contract to safeguard her personal health information and as with her other claims ignores that she has not alleged that any of her personal health information has ever been transmitted to Google. ECF No. 9 at 17–18. Indeed, in *Emerson* the court acknowledged that there was no case law from the Commonwealth clearly on point and there are courts from other jurisdictions that have held that an implied contract is not viable. *Emerson*, 2023 WL 8869624, at *4. Sturdy's out-of-circuit cases that do not apply Massachusetts law are irrelevant. Opp. at 18 (citing Maryland, California, and New York cases). Given the lack of Plaintiff's factual allegations and for the reasons addressed in Sturdy Memorial's motion, her breach of contract claim should be dismissed for failure to state a claim.

### 4.    Plaintiff Has Failed to Allege Cognizable Injury

In addition, the above common law causes of action fail because Plaintiff has failed to establish injury. In an attempt to save the count, however, Plaintiff cherry-picks a quotation to imply "general allegations of injury" are sufficient to survive a motion to dismiss. Opp. at 18 (quoting *Walker v. Bos. Med. Ctr. Corp.*, No. SUCV20151733BLS1, 2015 WL 9946193, at *2 (Mass. Super. Nov. 20, 2015)). In the following sentence, the Court provides an example of "disclosure of confidential medical records," clarifying the type of "general allegations of injury" to which it refers, which are nowhere near the type of information alleged to have been disclosed in the present case. *Walker*, 2015 WL 9946193, at *2 ("For example, a claim for an invasion of privacy involving disclosure of confidential medical records may give rise to damages for mental distress, harm to interest in privacy and special or economic harm."). Similarly, in *Shedd,* the

complaint contained allegations that unauthorized persons had gained access to "social security numbers and confidential medical information." 2022 WL 1102524, at *3. Plaintiff's assertion, that her "allegations of injuries are more specific compared to the more generic claims [of] injury in *Walker* and *Shedd*" is inaccurate. Opp. at 19.

Plaintiff's reliance on *Tenet* in support of her claim of injury is similarly misplaced. As addressed above, the court's decisions in *Tenet* turned on the specific detailed facts alleged that the plaintiff's personal health information was transmitted. *Tenet*, 731 F. Supp. 3d at 150–51.

## III.    CONCLUSION

For the foregoing reasons and those included Sturdy Memorial's motion, Sturdy Memorial respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

20

Dated: May 16, 2025

Respectfully submitted,

*/s/ James H. Rollinson*

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

*Attorneys for Defendant*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 16, 2025, a copy of the foregoing was served via CM/ECF which will serve the Plaintiff's counsels of record.

*/s/ James H. Rollinson*
James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP

*Attorney for Defendant*