**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Deborah Caine, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Sturdy Memorial Hospital, Inc.,<br><br>    Defendant. | Case No.: 1:25-cv-10261-ADB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT STURDY MEMORIAL HOSPITAL, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I.    Introduction ............................................................................................... 1

II.   Facts ......................................................................................................... 3

      A.    The SAC Pleads That Sturdy Made a Deliberate Institutional Decision to Transmit Ms. Caine's Confidential Health Communications to Google, Identifying Her as a Patient, in Exchange for Marketing and Analytics Benefits Sturdy Could Not Have Obtained Otherwise ........................................... 3

III.  Legal Standard ........................................................................................ 5

ARGUMENT ...................................................................................................... 5

IV.   The SAC Adequately Alleges Protected Health Information ........................... 5

      A.    *Becerra* Remains an Outlier and Does Not Control ............................... 6

      B.    The SAC Alleges IIHI Beyond Mere Public Browsing ........................... 8

V.    The ECPA Crime-Tort Exception Is Satisfied ............................................. 8

      A.    The Governing Standard: Purpose, Not Specific Intent .......................... 9

      B.    The SAC Plausibly Alleges That Sturdy Acted for the Purpose of Committing Criminal and Tortious Acts ............................................................... 10

      C.    *BPS Direct* Confirms That The Nonconsensual Interception Of Sensitive Personal Information Can Satisfy The Crime-Tort Exception .......................... 11

      D.    The Purpose Question Is a Factual Issue Not Resolvable on a Motion to Dismiss ................................................................................................. 14

      E.    The HIPAA End-Run Argument Fails ............................................... 14

VI.   The Statutory Privacy Claims Are Adequately Pled ..................................... 15

VII.  The Common Law Claims Are Adequately Pled .......................................... 17

      A.    Negligence ....................................................................................... 17

      B.    Breach of Fiduciary Duty .................................................................. 17

      C.    Breach of Implied Contract ............................................................... 18

      D.    Cognizable Damages Are Alleged ...................................................... 19

VIII. Conclusion ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Hospital Ass'n v. Becerra*,
    738 F. Supp. 3d 780 (N.D. Tex. 2024) ...............................................................6, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5

*Branyan v. Sw. Airlines Co.*,
    105 F. Supp. 3d 120 (D. Mass. 2015) ...................................................................15

*Bratt v. IBM Corp.*,
    392 Mass. 508 (1984) ........................................................................................16, 18

*Com. v. Brandwein*,
    435 Mass. 623 (2002) ...........................................................................................16

*Cooper v. Mount Sinai Health Sys., Inc.*,
    742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................................................................14

*Dickson v. Direct Energy*,
    LP, 69 F.4th 338 (6th Cir. 2023)............................................................................12

*Doe v. Baystate Health Sys., Inc.*,
    No. 1:25-CV-10337-JEK, 2026 WL 776861 (D. Mass. Mar. 19, 2026) ..............7, 9

*Doe v. Bos. Med. Ctr. Corp.*,
    No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023) .......17

*Doe v. Emerson Hosp.*,
    No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023)...................16

*Doe v. Lawrence Gen. Hosp.*,
    No. 25-cv-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) .........8, 9, 11

*Doe v. Stonehill Coll., Inc.*,
    55 F.4th 302 (1st Cir. 2022)...................................................................................18

*Doe v. Tenet Healthcare Corp.*,
    731 F. Supp. 3d 142 (D. Mass. 2024) ........................................................... *passim*

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015)..............................................................................................14

*In re Grp. Health Plan Litig.*,
  709 F. Supp. 3d 707 (D. Minn. 2023)............................................................... *passim*

*Hannant v. Culbertson Mem'l Hosp. Found.*,
  No. 4:24-CV-04164-SLD-RLH, 2026 WL 777296 (C.D. Ill. Mar. 19, 2026) ......................10

*Hartley v. U. of Chicago Med. Ctr.*,
  No. 22 CV 5891, 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ....................................................7

*In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, No. 23-3235, 2026 WL
  1280969 (3d Cir. May 11, 2026) ......................................................................2, 12, 13, 19

*J.C. v. Cath. Health Sys. Inc.*,
  No. 1:23-cv-00796 (JLS) (JJM), 2024 WL 5136236 (W.D.N.Y. Aug. 29,
  2024) ........................................................................................................................7

*Kelley v. CVS Pharmacy, Inc.*,
  Mass. Super., No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Aug. 24, 2007) ....................19

*Korper v. Weinstein*,
  57 Mass. App. Ct. 433 (2003)....................................................................................18

*Kurowski v. Rush Sys. for Health*,
  2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)..........................................................14

*Lugo v. Inova Health Care Servs.*,
  No. 1:24-CV-700, 2025 WL 905191 (E.D. Va. Mar. 25, 2025)..............................................11

*Lupia v. Medicredit, Inc.*,
  8 F.4th 1184 (10th Cir. 2021) .....................................................................................12

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........................................................................11, 15

*Pileggi v. Washington Newspaper Publishing Co., LLC*,
  146 F.4th 1219 (D.C. Cir. 2025)....................................................................................13

*Salamon v. Terra*,
  394 Mass. 857 (1985) .................................................................................................20

*Schatz v. Republican State Leadership Comm'n*,
  669 F.3d 50 (1st Cir. 2012)..........................................................................................5

*Shedd v. Sturdy Mem. Hosp., Inc.*,
  No. 2173CV00498C, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022).....................16, 18, 19

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
    721 F. Supp. 3d 152 (D. Mass. 2024) ...................................................................20

*Stein v. Edward-Elmhurst Health*,
    No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ..................................9

*Tower v. Hischorn*,
    397 Mass. 581 (1986) ..............................................................................................16

*W.W. v. Orlando Health, Inc.*,
    No. 6:24-CV-1068, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ............................14

**Statutes**

18 U.S.C. § 2511(2)(d) .................................................................................... *passim*

28 U.S.C. § 1367.......................................................................................................17

42 U.S.C. § 1320d(6) ..................................................................................... *passim*

G.L. c. 111, § 70E....................................................................................................16

G.L. c. 214, § 1B......................................................................................................15

**Other Authorities**

45 C.F.R. § 164.103 ...................................................................................................5

I.    INTRODUCTION

Deborah Caine, a resident of Attleboro, Massachusetts, was a patient of Sturdy Memorial Hospital for over three decades, treated primarily at its local North Attleboro Medical Center facility. She used the Sturdy website to identify and locate doctors at Sturdy's North Attleboro Medical Center facility, researched ███████ and available ███████ for her ███████, and stayed current with respect to ██████████████████████████████ ██████████

Unbeknownst to Ms. Caine, Sturdy embedded Google Analytics tracking code on its medical website that intercepted her communications along with her geolocation. This combination — a geolocation that identifies Ms. Caine as a member of the Attleboro community the facility serves, together with repeated searches for physicians and programs offered by Sturdy — provided Google with enough information to identify her as a patient seeking medical services. That identification is confirmed by the fact that within days of her searches, Ms. Caine received targeted advertising for medications pertinent to these communications.

The interception and commercialization of Ms. Caine's medical information was not incidental. It was the product of deliberate institutional decisions by Sturdy Memorial Hospital's ("Sturdy) to surreptitiously deploy Google Analytics tracking code on its medical website—code that covertly intercepted patients' confidential health-related searches and transmitted those communications, together with patients' IP addresses and device identifiers, to Google in real time. Sturdy did this without patient consent, contrary to its own HIPAA-mandated privacy notices, and for the purpose of benefiting from Google's advertising and analytics platform. Sturdy's resulting disclosure of individually identifiable health information ("IIHI") constitutes a purposeful tortious and criminal act, bringing the conduct squarely within the crime-tort exception to the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(2)(d).

The disclosure of IIHI in violation of the ECPA satisfies the pleading standards in this Court's March 10, 2026 Order granting Sturdy's motion to dismiss Plaintiff's amended complaint without prejudice (Dkt. No. 25).

Sturdy now moves to dismiss the Second Amended Complaint ("SAC"). Its motion recycles the same arguments this Court already considered and addressed in its March 10, 2026 Order on the merits of the purposefulness standard, where the Court found only that the prior pleading and then-proposed amended complaint lacked sufficient factual detail, not that the crime-tort theory was legally unavailable. The SAC addresses that issue by naming specific doctors Ms. Caine sought for specific conditions and identifying the medical specialties and health conditions that Sturdy transmitted to Google. The SAC also includes the concrete commercial incentive that drove Sturdy's decision to permit and use the tracking technology, among other additional factual details.

Sturdy's motion also ignores more recent, persuasive authority that has emerged since the prior round of briefing. Most significantly, in *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, No. 23-3235, 2026 WL 1280969 (3d Cir. May 11, 2026), the Third Circuit held that the nonconsensual, surreptitious interception of personally identifying and sensitive information by embedded tracking code causes cognizable harm closely analogous to the common-law tort of intrusion upon seclusion. The Third Circuit's analysis is directly applicable here, where the information intercepted is not just retail purchase data at issue in *BPS Direct* but protected health information and IIHI, which is information every reasonable person expects to remain free from prying eyes.

II.    FACTS

**A.    THE SAC PLEADS THAT STURDY MADE A DELIBERATE INSTITUTIONAL DECISION TO TRANSMIT MS. CAINE'S CONFIDENTIAL HEALTH COMMUNICATIONS TO GOOGLE, IDENTIFYING HER AS A PATIENT, IN EXCHANGE FOR MARKETING AND ANALYTICS BENEFITS STURDY COULD NOT HAVE OBTAINED OTHERWISE**

Sturdy Memorial Hospital operates thirty-two healthcare facilities in Massachusetts and serves over 300,000 patients annually. SAC ¶¶ 14, 21. Sturdy embedded its website—which patients use to book appointments, research conditions, locate physicians, and communicate health needs—with Google Analytics tracking code. Without disclosure, that tracking code intercepted patients' communications and transmitted them to Google in real time. SAC ¶¶ 5–8.

Ms. Caine is a former Sturdy patient. SAC ¶ 23. From the early 2000s through 2024, she used Sturdy's website extensively to research medical conditions and locate physicians for her own care. For example:



> In or about October 2021, she researched ███████████████ at Sturdy, ultimately selecting ██████████ for her ██████████ after reviewing multiple physicians' specialties and philosophies. SAC ¶ 25.

> In the first quarter of 2021, she searched multiple times for Sturdy ██████████— including ███████████████████████████—and researched available ██████████ and procedures in connection with her ██████████ needs. SAC ¶ 28.

> From 2020 through 2024, she used the website's search function to stay current on ████████████████████████████████████. SAC ¶ 28.

Sturdy transmitted these searches to Google in real time, associating Ms. Caine's IP address and device identifiers with the specific health conditions and providers she was researching. SAC ¶ 27. As a result, Google received and retained records identifying Ms. Caine and linking her to specific medical conditions, specialties, and physicians. SAC ¶¶ 6–8, 27. Sturdy argues that Ms. Caine also alleges that searched specific Sturdy providers for others, but that is a distinction without a difference given the information shared was based exclusively on

3

Ms. Caine's own personal searches.

Critically, the SAC pleads that the information transmitted to Google was sufficient to identify her as a patient who received treatment at Sturdy's North Attleboro Medical facility. Ms. Caine is a resident of Attleboro, Massachusetts. SAC ¶ 16 She searched the website to identify and locate doctors at the North Attleboro Medical Facility. SAC ¶ 23.  Sturdy transmitted her IP address to Google, which identifies a specific device and its geolocation. SAC ¶ 43, 76. Together these allegations support the inference that Google received data sufficient to identify Ms. Caine as a person whose geolocation matched the community the North Attleboro facility served, who was repeatedly researching providers and programs at the facility, and as such was a patient there. Indeed, it appears that Google inferred the patient status as Ms. Caine received targeted medical advertising matching her health-related searches. SAC ¶ 41.

Sturdy knew this was occurring. It decided to use Google Analytics on its website, and affirmatively chose not to enable Google Analytics' IP anonymization feature, which would have prevented Google from identifying individual users' IP addresses. SAC ¶¶ 57–69. It had received FTC-HHS joint guidance warning that such tracking technologies risk the privacy of patients' health information and recommending protective measures. SAC ¶¶ 73–75. And it continued the practice after receiving that warning, persisting until this lawsuit was filed in July 2024. SAC ¶ 5.

All the while, Sturdy assured patients in its HIPAA Notice of Privacy Practices that it would "not use or share your information other than as described herein" and would "only use or disclose your Protected Health Information when you grant us permission through your written authorization." SAC ¶¶ 10, 96–98. Those assurances were false. SAC ¶ 11. Sturdy obtained from Google, in exchange for this flow of patient data, marketing and analytics benefits that it could

4

not have accessed without providing the information. SAC ¶¶ 4, 102–106.

### III.    LEGAL STANDARD

A complaint survives a motion to dismiss when it alleges "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[G]auging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." *Schatz v. Republican State Leadership Comm'n*, 669 F.3d 50, 55 (1st Cir. 2012).

### ARGUMENT

### IV.    THE SAC ADEQUATELY ALLEGES PROTECTED HEALTH INFORMATION

Sturdy argues, as it did before, that its patients' medical website communications do not constitute protected health information ("PHI") or IIHI under HIPAA. This argument fails for the same reasons it failed in prior briefing—and the SAC now provides additional factual detail that more than overcomes Sturdy's threshold challenge. IIHI encompasses any information, including demographic information, that (1) is created or received by a healthcare provider, (2) relates to the past, present, or future physical or mental health or condition of an individual or the provision of health care to an individual, and (3) identifies—or can reasonably be used to identify—the individual. 42 U.S.C. § 1320d(6); 45 C.F.R. § 164.103. These elements are plainly satisfied here.

Ms. Caine's searches concerned specific medical conditions (█████████, ██████████████████████████████████), specific named physicians and their specialties, and targeted programs within Sturdy's clinical system. SAC ¶¶ 25–32. Sturdy transmitted those searches to Google together with Ms. Caine's IP address and device identifiers.

5

SAC ¶¶ 6–7, 27. Google then linked those searches to Ms. Caine's identity. SAC ¶ 2. This is precisely the combination that the FTC and HHS jointly warned constitutes a disclosure of sensitive health information.

The geolocation transmitted with Ms. Caine's IP address identified her as a member of the Attleboro community Sturdy's North Attleboro Medical Center facility serves, and together with her searches for doctors and programs at that facility, identified her as a Sturdy patient seeking medical care. The specific content of those searches, in turn, identifies the medical conditions for which she was being treated.

### A.    *BECERRA* REMAINS AN OUTLIER AND DOES NOT CONTROL

Sturdy again advances *American Hospital Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), as though it forecloses on the pleadings alone all of Ms. Caine's claims. That argument is no more persuasive now than it was before. The SAC goes well beyond the "Identity + Condition = PHI" equation the *Becerra* court considered inadequate on a *summary judgment* record. Here, there are specific named physicians, specific specialties linked to documented personal health needs, and specific identifying transmissions—all alleged with particularity. The question whether those facts constitute PHI and IIHI is not properly resolved on a motion to dismiss. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147–50 (D. Mass. 2024).

*Becerra* addressed a narrow summary judgment question: whether HHS exceeded its rulemaking authority in issuing a specific guidance document prohibiting a particular "Proscribed Combination"—an IP address disclosed together with a visit to an unauthenticated public webpage about specific health conditions or providers. 738 F. Supp. 3d at 789, 794. *Becerra* itself confined its holding to this administrative law question, explicitly noting that HHS's broader guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id*. at *4 n.3.

6

Federal courts in this district and across the country have declined to import Becerra's administrative law holding into the private civil context. *See Doe v. Baystate Health Sys., Inc.*, No. 1:25-CV-10337-JEK, 2026 WL 776861, at \*5 (D. Mass. Mar. 19, 2026) (distinguishing *Becerra* where (as here) plaintiff described specific medical information defendant disclosed); *Hartley v. U. of Chicago Med. Ctr.*, No. 22 CV 5891, 2025 WL 2802317, at \*4 (N.D. Ill. Oct. 1, 2025) ("Context matters, and the Becerra court was considering generally applicable HHS guidance about public websites, not specific allegations about specific individuals' use of specific websites. Thus, its holding that information collected from public healthcare websites does not always amount to individually identifiable health information does not also mean that information from public websites can never amount to such information."); *J.C. v. Cath. Health Sys. Inc.*, No. 1:23-cv-00796 (JLS) (JJM), 2024 WL 5136236, at \*14 (W.D.N.Y. Aug. 29, 2024) (in evaluating similar website searches, the court stated that "I do not find the court's reasoning in [Becerra] persuasive or controlling," noting that the definition of IIHI is clear, and it is the provider's burden to protect IIHI).

More fundamentally, even on its own terms, *Becerra* does not address the information at issue here. Ms. Caine does not merely allege that Sturdy disclosed an IP address combined with a visit to a general health webpage. She alleges that Sturdy transmitted her IP address and device identifiers together with specific physician searches, named specialties, and condition-specific queries—information that is individually identifiable by its very nature, and allowed her identification as a member of the Attleboro community Sturdy's North Attleboro Medical Center facility serves and as a patient of that facility seeking medical services. That goes well beyond *Becerra's* "Proscribed Combination" and falls squarely within the heartland of HIPAA protection.

7

### B.    THE SAC ALLEGES IIHI BEYOND MERE PUBLIC BROWSING

The SAC now alleges, with the specificity that the Court found lacking in the prior complaints, the nature of the health information that Sturdy transmitted to Google. Ms. Caine searched for and Sturdy transmitted: searches for ███████████████████████ tied to her own ██████ health issues; searches for primary care physicians in the context of her ongoing medical relationship with Sturdy; searches relating to ████████████████████████ ███████████; and searches for ████████████████████████. SAC ¶¶ 25–32. And as set forth above, Sturdy transmitted each of these searches along with the IP address and geolocation that identified Ms. Caine as a member of the Attleboro community Sturdy's North Attleboro Medical Center facility serves and as a patient of that facility seeking medical care.

These are not generic, casual health curiosity searches. They are individualized queries by a patient using a hospital's website while in an ongoing treatment relationship with that hospital. The fact that these searches occurred on a publicly accessible website does not transform them into non-medical information. *Tenet Healthcare*, 731 F. Supp. 3d at 151–52 (finding similar queries to be PHI at the pleading stage). *Cf. Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081-NMG, 2025 WL 2808055, at *15 (D. Mass. Aug. 29, 2025) (noting that "the distinction between access to patient portal information, on the one hand, and browsing data from public websites, on the other" may be dispositive—but that distinction is less meaningful when, as here, the plaintiff alleges searches for specific physicians and conditions in the context of an actual treatment relationship).

## V.    THE ECPA CRIME-TORT EXCEPTION IS SATISFIED

The Court dismissed Count I of the prior complaint solely because it found the factual allegations were insufficient to support a plausible inference that Sturdy acted purposefully—not merely knowingly or negligently—in committing criminal or tortious acts. Dkt. 25 at 9. The

8

SAC squarely cures that deficiency. Especially in light of the Third Circuit's just-decided *BPS Direct* opinion, relevant precedent confirms that Ms. Caine's allegations satisfy the crime-tort exception.

### A.    THE GOVERNING STANDARD: PURPOSE, NOT SPECIFIC INTENT

The ECPA crime-tort exception provides that a party to a communication cannot avail itself of the consent defense if the communication was "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

This Court correctly held that the exception does not require specific intent to commit a crime or tort, nor an intent to harm. Dkt. 25 at 8 (citing *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025); *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *20. Rather, the Court adopted the *Stein* court's formulation: "[t]he purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception … applies." *Stein*, 2025 WL 580556, at *6. Moreover, a defendant's lawful marketing purpose does not preclude the application of Section 2511(2)(d). "That is so because 'the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose.'" *Doe v. Baystate Health*, 2026 WL 776861, at *4 (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). *See also In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023).

The Court's prior dismissal was not for legal error in that standard. It was because the pleading lacked sufficient factual detail to allow the inference of purposeful tortious or criminal conduct. The SAC fills those gaps.

9

**B.    THE SAC PLAUSIBLY ALLEGES THAT STURDY ACTED FOR THE PURPOSE OF COMMITTING CRIMINAL AND TORTIOUS ACTS**

The SAC now alleges, with particularity, facts supporting the inference that Sturdy's interception of Ms. Caine's PHI was purposeful and directed toward criminal and tortious ends.

First, regarding purposeful conduct: Sturdy made a deliberate affirmative decision to use Google Analytics on its medical website. SAC ¶ 5. Sturdy made a separate, deliberate decision not to activate Google's IP anonymization feature. SAC ¶¶ 57–69. The SAC alleges that Sturdy was aware of both the anonymization option and the federal regulatory landscape warning that embedding tracking technology on medical websites risks violating patients' privacy. SAC ¶¶ 62–75. In the face of that awareness, Sturdy chose to use and maintain the tracking code in its unrestricted, patient-identifying form. SAC ¶ 5.

Second, regarding the tortious and criminal nature of the resulting act: the SAC alleges that Sturdy's interception and disclosure of IIHI without patient authorization violated 42 U.S.C. § 1320d-6, which criminalizes the knowing acquisition of IIHI, with heightened criminal penalties when done "with intent to sell, transfer, or use" the information "for commercial advantage [or] personal gain." SAC ¶¶ 118–120. The SAC further alleges Sturdy's conduct constitutes a knowing intrusion upon seclusion under Massachusetts and federal common law. SAC ¶ 184.

Third, regarding the commercial motive tying purpose to tortious act: Sturdy obtained marketing and analytics benefits from Google that it could not have obtained without providing Google access to patient data. SAC ¶¶ 4, 54, 102–106. This is the "primary motivation to make money" that the court in *Grp. Health* found sufficient to support application of the crime-tort exception. 709 F. Supp. 3d at 720. *See also Hannant v. Culbertson Mem'l Hosp. Found.*, No. 4:24-CV-04164-SLD-RLH, 2026 WL 777296, at *8 (C.D. Ill. Mar. 19, 2026). Sturdy "would not

have been able to obtain the information or the marketing services if it had complied with the law." *Grp. Health*, 709 F. Supp. 3d at 719. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("use of patient data for advertising" sufficient at pleading stage).

Multiple courts have sustained virtually identical ECPA allegations at the pleading stage. The court in *Lugo v. Inova Health Care Services*, for example, noted that: "Courts around the country have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy laws." *Lugo v. Inova Health Care Servs.*, No. 1:24-CV-700, 2025 WL 905191, at *6, 8 (E.D. Va. Mar. 25, 2025) (citing a long list of cases, including *In re Grp. Health Plan*, 709 F. Supp. 3d at 719-20; *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *2–3 (N.D. Ill. Dec. 11, 2023); *Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 WL 1178340, at *7–8 (W.D.N.Y. Mar. 19, 2024); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *3–4 (S.D.N.Y. Sept. 16, 2024)).

Cases that have declined to apply the crime-tort exception are distinguishable. *Doe v. Lawrence General Hospital*—on which Sturdy relies—expressly noted that its reasoning is limited to situations where there is "no access to a patient portal or bill pay portal" such that "no actual IIHI is implicated." 2025 WL 2808055, at *15. The SAC here alleges specific, individualized IIHI: named physicians sought for ▮▮▮▮▮▮▮▮▮▮▮, and other documented medical needs, transmitted along with IP addresses and device identifiers that identified Ms. Caine to Google. This is not mere "browsing data" from a public website in any meaningful sense.

### C.    *BPS DIRECT* CONFIRMS THAT THE NONCONSENSUAL INTERCEPTION OF SENSITIVE PERSONAL INFORMATION CAN SATISFY THE CRIME-TORT EXCEPTION

The Third Circuit's decision in *BPS Direct*, decided just weeks before this filing, also

11

supports the sufficiency of Ms. Caine's ECPA allegations. Although *BPS Direct* addressed Article III standing rather than the crime-tort exception, its reasoning demonstrates why the type of information at issue here, and the loss of control thereof, underlies legally cognizable claims.

In *BPS Direct* the Third Circuit affirmed dismissal of plaintiffs' claims who entered only non-sensitive browsing data—product searches, mouse clicks, and the like. But for plaintiffs Cornell and Montecalvo, who also entered payment and billing information, including credit or debit card numbers, the court reversed dismissal, holding that they had adequately alleged harm analogous to the common-law tort of intrusion upon seclusion.

The Third Circuit established several principles directly applicable to this case. First, the court confirmed that under the intrusion upon seclusion framework, a finding of harm "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *BPS Direct*, 2026 WL 1280969, at *5 (quoting Restatement (Second) of Torts § 652B cmt. a). The harm arises from the invasion itself: "when a defendant has 'invaded a private seclusion that the plaintiff has thrown about his person or affairs,'" liability attaches "even though there is no publication or 'exposure of personal or sensitive information.'" *Id*. (quoting *Cook v. GameStop, Inc*., 148 F.4th 153, 160 (3d Cir. 2025) (explaining that "the intrusion itself makes the defendant subject to liability")).

Second, the court found that "'[t]he kind of harm vindicated by the intrusion-upon-seclusion tort is relatively broad,'" covering a range of invasions—from persistent hounding calls to surreptitious photographs. *BPS Direct*, 2026 WL 1280969, at *6 (quoting *Dickson v. Direct Energy*, LP, 69 F.4th 338, 345 (6th Cir. 2023)). The common-law tort "protect[s] against defendants who intrude into the private solitude of another," *Lupia v. Medicredit, Inc*., 8 F.4th 1184, 1191 (10th Cir. 2021), and is derived from "a generalized privacy interest." *Dickson*, 69

12

F.4th at 345.

Third, the court distinguished plaintiffs who entered only non-sensitive information from those who entered sensitive information. The non-purchaser plaintiffs who browsed for outdoor products "could not plausibly allege that their clicks, scrolls, and searches for outdoor products were private." *BPS Direct*, 2026 WL 1280969, at *6. But Cornell and Montecalvo, who also entered payment and billing information, suffered harm "closely analogous to that vindicated by the intrusion upon seclusion tort" because one "expects her complete credit card or debit card number to be free from prying eyes." *Id*. at *7.

This framework renders the privacy interests of Ms. Caine and the class in this case certainly no less important than credit card numbers. Health information is among the most sensitive categories of personal information known to law. When Ms. Caine researched Sturdy's medical website for ███████████████████████████████████████████, she communicated sensitive health information that she expected—and that the law requires—to remain confidential. *Accord Pileggi v. Washington Newspaper Publishing Co., LLC*, 146 F.4th 1219, 1223, 1225 (D.C. Cir. 2025) (cited approvingly in *BPS Direct* 2026 WL 1280969, at *7; holding that "[a]n individual's choices about media consumption can communicate sensitive and historically private interests," and that the nonconsensual transmission of such information to a third party without the user's knowledge constituted an intrusion analogous to that recognized at common law).

If the interception of credit card data surreptitiously by embedded code on a retail website amounts to harm cognizable as intrusion upon seclusion, then surely the interception of IIHI— searches for physicians and ██████████████████████████, and other documented medical issues—from a hospital website by embedded tracking code that a patient

13

could not detect and had no reason to expect, constitutes at least an equally if not even more substantial intrusion. The nature of the information here—health information in a healthcare context, protected by federal statute—exceeds the sensitivity threshold at which *BPS Direct* found harm adequately alleged. *See also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 144 n.80 (3d Cir. 2015) (Third Circuit's prior recognition that party exception does not insulate interception made for criminal or tortious purpose).

### D.    THE PURPOSE QUESTION IS A FACTUAL ISSUE NOT RESOLVABLE ON A MOTION TO DISMISS

Even if the Court were to find the SAC's purposefulness allegations closer to the line, the determination of Sturdy's actual purpose for deploying and maintaining Google Analytics on its medical website is a question of fact inappropriate for resolution at the pleading stage. *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) (determining whether crime-tort exception applies is "better made at trial, or perhaps at summary judgment"); *Grp. Health*, 709 F. Supp. 3d at 720 ("[D]etermination of HealthPartners' actual purpose for installing and using the Pixel Code requires a factual undertaking."); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381 (S.D.N.Y. 2024) (same). Ms. Caine lacks "direct access to what occurs in the background" on Sturdy's web properties. *Kurowski v. Rush Sys. For Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023).

### E.    THE HIPAA END-RUN ARGUMENT FAILS

Sturdy resurrects the argument that invoking HIPAA violations as the predicate crime for the ECPA exception amounts to an impermissible "end run" around HIPAA's enforcement scheme. Dkt. No. 33 at 10. This argument has been addressed and rejected by multiple courts, and mischaracterizes what plaintiff is seeking.

Ms. Caine does not sue under HIPAA. She invokes HIPAA's criminal prohibition—42

14

U.S.C. § 1320d-6—as one of the predicate criminal acts that satisfies the ECPA's crime-tort exception. This is precisely what the crime-tort exception envisions: interception "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). The criminal prohibition of § 1320d-6 is federal law whose violation can ground the ECPA exception without any private cause of action under HIPAA being asserted. The First Circuit has not foreclosed this theory, and multiple courts have accepted it. *See, e.g., Grp. Health*, 709 F. Supp. 3d at 719; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797.

## VI.    THE STATUTORY PRIVACY CLAIMS ARE ADEQUATELY PLED

M.G.L. c. 214, § 1B requires Plaintiff to allege "a gathering and dissemination of facts of a private nature that resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). The SAC satisfies this standard.

The facts alleged are private in nature. Medical information—including the specific physicians Ms. Caine sought and the conditions she was researching—is paradigmatically private information. This Court recognized as much in *Tenet Healthcare*, 731 F. Supp. 3d at 151–52, finding that "Plaintiff's identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location constitutes information of a 'highly personal or intimate nature.'" The SAC's allegations go further in specificity: named ███████ sought in connection with ████████, an identified primary care physician researched in the course of active care, and condition-specific searches relating to ████████████, ████████. Additionally, searches for doctors at the North Attleboro Medical Center facility was transmitted with the IP address and geolocation that identified Ms. Caine as a member of the Attleboro community Sturdy's North Attleboro Medical Center facility serves and as such a patient of that facility seeking medical care.

The intrusion is unreasonable and serious. Sturdy violated its own HIPAA-mandated privacy policy, contradicted its express written assurances to patients, and ignored federal regulatory guidance to continue sharing sensitive health information with a commercial advertising platform without patient knowledge or consent. That is unreasonable interference with privacy by any measure. *See Shedd v. Sturdy Mem. Hosp., Inc.,* No. 2173CV00498C, 2022 WL 1102524, at *11 (Mass. Super. Apr. 5, 2022) (denying dismissal of privacy claim based on unauthorized access to confidential medical information in a ransomware attack). It is also well established in Massachusetts that unauthorized disclosure of medical information constitutes actionable invasion of privacy. *Tower v. Hischorn*, 397 Mass. 581, 586–87 (1986); *Bratt v. IBM Corp.*, 392 Mass. 508, 522 (1984); *Com. v. Brandwein*, 435 Mass. 623, 629–30 (2002).

Sturdy's reliance on cases involving generic, non-medical website browsing data is misplaced. The *BPS Direct* decision itself underscores the distinction: merely browsing for outdoor products on a retail website may not support an intrusion claim, but the unauthorized interception of health-related communications from a medical website implicates a different legal and factual universe. Ms. Caine was not casually browsing; she was seeking healthcare information from her healthcare provider while in active treatment relationships. The SAC mirrors the fact pattern that Judge Saris found sufficient in *Tenet Healthcare*.

Regarding G.L. c. 111, § 70E, the Patients' Bill of Rights, Sturdy raises two arguments: (1) that there is no private cause of action other than through a medical malpractice framework, and (2) that browsing data does not constitute "records" protected by the statute. These arguments are not new. Ms. Caine preserves them on appeal while noting that Judge Saris acknowledged the § 70E claim in *Tenet Healthcare* and that state courts in the *Emerson Hospital* and *Boston Medical Center* cases have allowed similar claims to proceed. *Doe v. Emerson Hosp.*,

16

No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023); *Doe v. Bos. Med. Ctr*.

*Corp.*, No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023). The Court

has discretion under 28 U.S.C. § 1367 to reach the state-law claims, and the interest of judicial

economy and the close relationship between the federal and state claims counsels in favor of

doing so.

**VII.   THE COMMON LAW CLAIMS ARE ADEQUATELY PLED**

    **A.   NEGLIGENCE**

Ms. Caine's negligence claim rests on Sturdy's duty to protect her PHI and IIHI—a duty

arising from the physician-patient relationship and Sturdy's own express promises, not merely

from statute. Sturdy breached that duty by embedding Google Analytics code that transmitted her

health information to Google without her consent. The SAC adequately alleges the four

elements: duty, breach, causation, and damages.

Sturdy argues that Massachusetts does not recognize negligence per se. That is correct,

but beside the point. Ms. Caine's negligence claim is grounded in the common law duty of a

healthcare provider to exercise reasonable care in handling patient information—a duty

extensively recognized in this jurisdiction. *See Doe v. Tenet Healthcare Corp*., 731 F. Supp. 3d

at 148–49 (sustaining negligence claim on similar facts); *Doe v. Bos. Med. Ctr*., 2023 WL

7105628, at *4.

Sturdy's argument that the negligence claim is duplicative of the fiduciary duty claim

also fails. The two claims rest on overlapping but distinct duties and remedies, and courts

routinely permit both to proceed through the pleading stage. *Doe v. Tenet Healthcare Corp.*, 731

F. Supp. 3d at 148–51.

    **B.   BREACH OF FIDUCIARY DUTY**

The physician-patient relationship is a recognized fiduciary relationship under

17

Massachusetts law. *Bratt v. IBM Corp.*, 392 Mass. at 522. This duty includes the obligation to protect patient health information—the very subject matter of Ms. Caine's medical website use. She used the website for purposes inextricably tied to her healthcare relationship with Sturdy: locating physicians, researching her medical conditions, and identifying specialists for her health needs. This is not peripheral to the physician-patient fiduciary relationship; it is at its core.

Sturdy argues that website browsing is "outside the scope" of the physician-patient fiduciary relationship, analogizing to *Korper v. Weinstein*, 57 Mass. App. Ct. 433 (2003), where a doctor's romantic relationship with a patient was found beyond the scope of medical treatment. That analogy is inapt. A patient using her hospital's website to research ███████████ and conditions for herself is not acting outside the physician-patient relationship—she is acting because of it and within it. The website is the platform through which she accessed her medical care. *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302 (1st Cir. 2022) is instructive—the court recognized that an institution setting up a process owed a fiduciary duty to its constituency (there, students). *See also Shedd v. Sturdy Mem. Hosp., Inc.*, 2022 WL 1102524 (sustaining breach of fiduciary duty claim against this very defendant in the context of alleged failure to protect confidential information in a ransomware attack).

### C.    BREACH OF IMPLIED CONTRACT

Sturdy's HIPAA Notice of Privacy Practices promised that it would not use or disclose Ms. Caine's PHI without her authorization and would "never share your information unless you provide us with written permission." SAC ¶¶ 96–98. Those promises, made to patients as a condition of their engagement with Sturdy's healthcare services, constitute the terms of an implied contract. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d at 149–50 (sustaining implied contract claim on similar facts).

Sturdy's argument that there is no mutual assent fails because Ms. Caine alleges mutual

18

assent through exactly this mechanism: the hospital made express written promises about how it would treat patient information; she, in reliance on those promises, used its medical website to seek healthcare. That is a classic bargained-for exchange. *See Kelley v. CVS Pharmacy, Inc.*, Mass. Super., No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Aug. 24, 2007) (implied contract claim arising from pharmacy's disclosure of confidential medical information).

Sturdy's argument that compliance with HIPAA is merely a pre-existing legal duty that cannot serve as consideration also fails. Ms. Caine's implied contract claim is not premised only on HIPAA compliance—it is premised on Sturdy's specific, voluntary, written promise to her about how it would handle her information, going beyond the minimum statutory floor.

Finally, in *Shedd*, the court rejected a similar argument by this very same defendant brought in the context of an alleged failure to protect information in a ransomeware atack. *Shedd*, 2022 WL 1102524, at *10 ("Here, the claim is similarly simple. When a patient hands over sensitive information to receive medical care, they expect an implicit assurance that the information will be protected. In the absence of cases in the Commonwealth (state or federal) addressing this issue, namely whether there can be an implied contract by a hospital to safeguard PII disclosed by patients, on this record and stage of the proceeding, dismissal is not appropriate.")

### D.   COGNIZABLE DAMAGES ARE ALLEGED

*BPS Direct* confirms that the kind of harm Ms. Caine alleges—the nonconsensual interception and unauthorized use of sensitive personal information by embedded tracking code —is a recognized injury at common law. 2026 WL 1280969, at *5. Beyond constitutional standing principles, the SAC also alleges particularized damages: exposure to targeted advertisements based on Ms. Caine's intercepted medical searches, SAC ¶¶ 38–41; unauthorized access to and use of her PHI/IIHI for commercial purposes, SAC ¶ 205; and the monetary value

19

of the information Sturdy wrongfully extracted from its patients, SAC ¶ 106.

Sturdy's argument that "mere browsing" cannot support damages mischaracterizes the SAC. As above, what was intercepted was not casual browsing for health information—it was individualized, condition-specific medical searching that Google associated with Ms. Caine's identity and used for targeted advertising. The SAC alleges, and Ms. Caine should be entitled to prove, that she received targeted medical advertisements as a direct result of Sturdy's disclosure of her health searches to Google. SAC ¶¶ 38–41. These are concrete, traceable harms. *Cf. Salamon v. Terra*, 394 Mass. 857 (1985).

Courts have also consistently declined to resolve damages questions on motions to dismiss when the plaintiff has alleged concrete facts giving rise to plausible harm. *Tenet Healthcare Corp.*, 731 F. Supp. 3d at 150. The degree of harm is a factual question. *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024).

## VIII.   CONCLUSION

For the foregoing reasons, Ms. Caine respectfully requests that the Court deny Sturdy's motion to dismiss in its entirety. The SAC remedies the pleading deficiency identified in the Court's March 10, 2026 Order by alleging with specificity the nature of the health information Sturdy purposefully intercepted and transmitted to Google. It alleges concrete facts establishing that Sturdy acted for the purpose of acquiring IIHI without authorization and invading its patients' seclusion in order to benefit from Google's advertising platform—acts that are criminal under 42 U.S.C. § 1320d-6 and tortious under Massachusetts law. The just-decided *BPS Direct* opinion confirms that surreptitious interception of sensitive personal information by embedded tracking code causes legally cognizable harm analogous to the common-law tort of intrusion upon seclusion—and here health information is at issue. Sturdy's remaining arguments against the state-law claims are also without merit for the reasons set forth above.

20

Dated: May 29, 2026

Respectfully submitted,

*/s/ John Roddy*

John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
101 Arch Street, 8th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
jroddy@baileyglasser.com
eryan@baileyglasser.com

Lawrence J. Lederer (to seek admission *pro hac vice*)
Bart D. Cohen (to seek admission *pro hac vice*)
Bailey & Glasser LLP
1055 Thomas Jefferson St. NW
Washington, DC 20007
(202) 463-2101 (phone)
(202) 463-2103 (fax)
llederer@baileyglasser.com
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*