**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBORAH CAINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STURDY MEMORIAL HOSPITAL, INC.,<br><br>Defendant. | Case No. 1:25-cv-10261-ADB<br><br>**Leave to File Granted on April 1, 2026** |

**DEFENDANT STURDY MEMORIAL HOSPITAL, INC.'S REPLY IN SUPPORT OF ITS <u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff's Failure to Plead PHI or IIHI Is Fatal to All Her Claims ..... 1

B. Plaintiff Fails To State Her ECPA Claim ..... 3

C. Plaintiff Fails To State Her Statutory Invasion of Privacy Claim ..... 4

D. Plaintiff's Common Law Claims Similarly Fail As A Matter of Law ..... 6

1. Plaintiff's Negligence Claim Should Be Dismissed ..... 6

2. Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed ..... 7

3. Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed ..... 8

4. Plaintiff Has Failed to Allege Cognizable Injury ..... 9

III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................1, 2

*In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litigation*,
175 F.4th 423 (3d Cir. 2026) ....................4, 9

*Caine v. Sturdy Mem'l Hosp., Inc.*,
No. 25-CV-10261-ADB, 2026 WL 673483 (D. Mass. Mar. 10, 2026)....................3

*Commonwealth v. McCue*,
67 Mass. App. Ct. 1113 (2006) (unpublished)....................6

*Commonwealth v. Welch*,
487 Mass. 425 (2021) ....................5

*Doe v. Baystate Health Systems, Inc*,
No. 1:25-CV-10337-JEK, 2026 WL 776861 (D. Mass. Mar. 19, 2026) ....................2

*Doe v. Bos. Med. Ctr. Corp.*,
No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ....................6

*Doe v. Emerson Hosp.*,
No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023)....................6

*Doe v. Lawrence Gen. Hosp.*,
No. 25-cv-10081, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) ....................3

*Doe v. Stonehill*,
55 F.4th 302 (1st Cir. 2022)....................8

*Doe v. Tenet Healthcare Corporation*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................5, 7, 9

*Hartley v. University of Chicago Medical Center*,
No. 22 CV 5891, 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ....................2

*J.C. v. Catholic Health Systems Inc.*,
No. 1:23-CV-00796, 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ....................2

*Kelley v. CVS Pharmacy, Inc.*,
No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ....................8

*Korper v. Weinstein*,
57 Mass. App. Ct. 433 (2003)....................................................................................7

*Polay v. McMahon*,
468 Mass. 379 (2014) ...............................................................................................4

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-000621-N, 2024 WL 4376162 (N.D. Tex. Oct. 1, 2024) ...................................2

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-621-N, 2025 WL 1519726 (N.D. Tex. May 27, 2025).......................................3

*Salamon v. Terra*,
394 Mass. 857 (1985) ...............................................................................................9

*Shedd v. Sturdy Memorial Hosp., Inc.*,
No. 2173CV00498C, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022)................................6, 7

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................................3

*Tower v. Hirschorn*,
397 Mass. 581 (1986) ...............................................................................................6

**Statutes**

M.G.L. c. 111, § 70E ...............................................................................................6

M.G.L. c. 214, § 1B .................................................................................................4

## I. INTRODUCTION

Plaintiff Deborah Caine's ("Plaintiff") Opposition to Sturdy Memorial Hospital, Inc.'s ("Sturdy Memorial") Motion to Dismiss her Second Amended Complaint tries to transform routine browsing on a public website—where she searched for and viewed webpages about medical conditions and physicians both for herself and for others—into Individually Identifiable Health Information ("IIHI"). But Plaintiff's own allegations make it impossible to tell which browsing activity, if any, concerned her rather than the individuals she was assisting. That public browsing activity therefore cannot plausibly constitute IIHI. Plaintiff also asks the Court to expand the Electronic Communications Privacy Act ("ECPA") so dramatically that ordinary use of Google Analytics would expose website operators to sweeping civil—and potentially criminal—liability. Because Plaintiff identifies no specific protected health information that was allegedly transmitted and alleges no concrete harm, the Second Amended Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff's Failure to Plead PHI or IIHI Is Fatal to All Her Claims

Plaintiff's Second Amended Complaint illustrates why *Becerra* held that information merely "indicative" of PHI, such as browsing activity on a public healthcare website, does not satisfy the definition of IIHI. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801–03 (N.D. Tex. 2024). Ms. Caine alleges that she searched Sturdy Memorial's website to identify physicians, treatment options, and medical conditions "for other individuals she was assisting." SAC ¶¶ 30–34. Yet she also claims that, when she performed searches relevant to herself, "Google received *individualized* records associating Ms. Caine's IP address and device with those specific health conditions and providers." *Id.* ¶ 27 (emphasis added). An IP address identifies a device, not an individual. And because her alleged searches for herself and for others would be indistinguishable to Google, any browsing data allegedly transferred could not, by definition, be individualized PHI

or IIHI. Plaintiff thus confirms *Becerra*'s core point: "the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Id.* at 803 (emphasis in original).

Plaintiff's effort to discredit *Becerra* and Sturdy Memorial's reliance on it, ECF No. 33 at 4–6, rests on cases that are materially different. Opp. at 7. In *J.C. v. Catholic Health Systems Inc.*, the court distinguished *Becerra* because the alleged disclosure was not limited to an IP address; it included "an individual's Facebook ID, which very specifically identifies an actual individual, not a device." No. 1:23-CV-00796(JLS)(JJM), 2024 WL 5136236, at *14 (W.D.N.Y. Aug. 29, 2024). In *Doe v. Baystate Health Systems, Inc.*, the alleged disclosure included the plaintiff's "scheduling of a mammogram" and "her Facebook ID," which was "specific to [her as] a person." No. 1:25-CV-10337-JEK, 2026 WL 776861, at *1–2 (D. Mass. Mar. 19, 2026). And *Hartley v. University of Chicago Medical Center* likewise involved an alleged disclosure of a personally unique Facebook ID. No. 22 CV 5891, 2025 WL 2802317, at *2 (N.D. Ill. Oct. 1, 2025). Plaintiff alleges no comparable person-specific identifier. To the contrary, she admits that she used Sturdy Memorial's public website to search on behalf of several other people on several occasions. SAC ¶¶ 30–34. Without a unique identifier or browsing activity unique to her own medical conditions, Plaintiff lacks the factual predicate needed to distinguish this case from *Becerra*.

Plaintiff also omits another district court decision applying *Becerra* to dismiss an ECPA claim for failure to plead facts showing that website browsing disclosed private health information. *See Rand v. Eyemart Express, LLC*, No. 3:24-CV-000621-N, 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024) (quoting *Becerra*'s "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)" formulation and dismissing an ECPA claim because "Plaintiffs have failed to plead facts that plausibly establish that they shared any private health information with Meta"); *see also*

*Rand v. Eyemart Express, LLC*, No. 3:24-CV-621-N, 2025 WL 1519726, at *5 (N.D. Tex. May 27, 2025) (dismissing amended ECPA claim with prejudice).

**B. Plaintiff Fails To State Her ECPA Claim**

Plaintiff does not dispute that her ECPA claim fails as a matter of law unless the crime-tort exception applies. Because "'purpose' is an essential element of the ECPA," Plaintiff must plead facts showing that Sturdy Memorial acted purposefully—not merely knowingly or negligently—to commit a criminal or tortious act. *Caine v. Sturdy Mem'l Hosp., Inc.*, No. 25-CV-10261-ADB, 2026 WL 673483, at *3 (D. Mass. Mar. 10, 2026) (quoting *Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081, 2025 WL 2808055, at *12 (D. Mass. Aug. 29, 2025), and citing *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025)). Plaintiff's amended pleading repeatedly uses the word "purposefully," but the underlying allegations remain unchanged and conclusory.

Plaintiff argues that Sturdy Memorial's alleged failure to "activate Google's IP anonymization feature" makes the alleged interception necessarily tortious or criminal. Opp. at 10 (citing SAC ¶¶ 57–59). She further asserts that because Sturdy Memorial allegedly used Google Analytics for marketing and disclosed IIHI without authorization, its conduct was tortious or criminal. Opp. at 10. But the Second Amended Complaint does not plausibly allege that Sturdy Memorial received, much less disclosed, IIHI from Plaintiff's public browsing. Plaintiff's crime-tort theory therefore fails at the threshold.

"When there is no access to a patient portal or bill pay portal, the assumption seems to be that no actual IIHI is implicated." *Doe v. Lawrence Gen. Hosp.*, No. 25-CV-10081-NMG, 2025 WL 2808055, at *15 (D. Mass. Aug. 29, 2025). Plaintiff alleges no interception from a patient portal or bill-pay portal. Instead, she insists that her public-website browsing was "specific, individualized IIHI." But as *Becerra* explains—and as Plaintiff's own allegations about searching

on behalf of others confirm—general browsing on a public website does not disclose individualized health information.

Plaintiff repeatedly invokes the Third Circuit's decision in *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litigation*, but that decision does not save her claims. Opp. at 2, 9, 11–14, 16, 19, 20 (citing 175 F.4th 423 (3d Cir. 2026)). The "personally identifying and sensitive information" at issue there included "names, addresses, and payment and billing information," including complete credit or debit card numbers, expiration dates, and security codes. *BPS Direct*, 175 F.4th at 431. The Third Circuit found standing only for the two plaintiffs whose complete credit or debit card numbers were allegedly disclosed because that information can provide access to a line of credit or a bank account. *Id.* Plaintiff's alleged browsing activity, some of which was undertaken for others, is not comparable. It is closer to the "mouse clicks and movements, keystrokes, [and] search terms" that the Third Circuit held did not confer standing on the remaining plaintiffs. *Id.* at 430.

Because Plaintiff does not plausibly allege that Sturdy Memorial deployed Google Analytics for the purpose of committing a crime or tort independent of the alleged interception itself, her ECPA claim should be dismissed.

### C. Plaintiff Fails To State Her Statutory Invasion of Privacy Claim

To state a claim under the Massachusetts Right to Privacy Act ("MRPA"), G.L. c. 214, § 1B, a plaintiff must plausibly allege an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass. 379, 382 (2014). Although reasonableness and seriousness often present fact questions, a plaintiff still must plead facts sufficient to state a claim. *Id.* at 383. Plaintiff does not allege that any communications with doctors, diagnoses, lab results, appointment information, or other particularly sensitive personal medical information were disclosed. Her MRPA claim therefore fails.

Plaintiff tries to avoid dismissal by alleging that she browsed Sturdy Memorial's website for particular health issues or physicians. But her own complaint undercuts any inference that the browsing was necessarily about her: she alleges that she conducted searches "multiple times . . . for several individuals and shared and discussed her findings with those individuals." SAC ¶ 34; *see also id.* ¶¶ 30–33. Plaintiff's reliance on other website-tracking cases fares no better because those decisions involved materially different allegations. Opp. at 15–17.

For example, in *Doe v. Tenet Healthcare Corporation*, the plaintiff alleged that she used the website to schedule appointments, search for information, and access the patient portal, and then received targeted advertisements relating to her specific health conditions, including weight loss and diabetes. 731 F. Supp. 3d 142, 147–48, 151–52 (D. Mass. 2024). The court allowed the MRPA claim to proceed because the alleged disclosures included the plaintiff's "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location"—information the court deemed "highly personal or intimate." *Id.* at 151–52.

Here, Plaintiff's assertion that "paradigmatically private information" was transmitted to Google, Opp. at 15, is not supported by her allegations. Unlike in *Tenet*, *Boston Medical Center*, and *Emerson*, Plaintiff does not allege that any appointment scheduling information, appointment type, diagnosis, treatment, or condition-specific appointment information was transmitted to a third party. Nor did those cases involve allegations that the plaintiff conducted extensive browsing on behalf of others. Plaintiff's public browsing activity is not "highly personal or intimate." Indeed, Massachusetts courts have found no reasonable expectation of privacy in settings more sensitive than searches on a public website. *See, e.g., Commonwealth v. Welch*, 487 Mass. 425, 433–34 (2021) (busy hospital emergency room was not a location where suspect had reasonable

expectation of privacy); *Commonwealth v. McCue*, 67 Mass. App. Ct. 1113, at *1–2 (2006) (unpublished) (similar).

Plaintiff also conflates nonconfidential web browsing with cases involving unauthorized access to confidential medical information. Opp. at 16 (citing *Shedd v. Sturdy Memorial Hosp., Inc.*, No. 2173CV00498C, 2022 WL 1102524, at *3 (Mass. Super. Apr. 5, 2022)). In *Shedd*, the privacy claim survived because unauthorized persons allegedly accessed "social security numbers and confidential medical information," not generic public-website searches. *Id.* Likewise, *Tower v. Hirschorn* involved allegations that the defendant discussed the plaintiff's medical treatment with an insurance-company representative in preparation for trial, violating a duty of confidentiality. 397 Mass. 581, 584 (1986). Those facts are far removed from the nonconfidential browsing activity alleged here. Because Plaintiff does not allege that her medical information was transmitted to Google, her claim is closer to *B.K. v. Eisenhower Medical Center* and *Cousin v. Sharp Healthcare*, where courts dismissed invasion-of-privacy claims based, at most, on routine medical searches and inquiries on public websites. *B.K.*, 721 F. Supp. 3d at 1067; *Cousin*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023).

As to G.L. c. 111, § 70E, Plaintiff merely states that she "preserves" the argument for appeal and cites cases that allowed supposedly "similar claims" to proceed. Opp. at 16–17 (citing *Doe v. Emerson Hosp.*, No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023)). But neither opinion addresses G.L. c. 111, § 70E.

### D. Plaintiff's Common Law Claims Similarly Fail As A Matter of Law

#### 1. Plaintiff's Negligence Claim Should Be Dismissed

Plaintiff's negligence claim depends on an alleged duty to protect her PHI or IIHI. But as explained above, Plaintiff has not plausibly alleged that her public-website browsing disclosed

PHI, IIHI, or any other protected confidential health information. Her negligence claim therefore fails at the outset.

Plaintiff's reliance on *Tenet* is misplaced. There, unlike here, the plaintiff alleged that the defendant transmitted personal health information to Meta, including her specific health conditions, treatments, and appointment time and location, and that those disclosures caused her to receive targeted advertisements for diabetes and obesity. *Tenet*, 731 F. Supp. 3d at 147–48. Plaintiff alleges no comparable facts. She does not plausibly allege that she used Sturdy Memorial's public website in a way that transmitted protected confidential health information, much less facts supporting a negligence claim based on any such disclosure.

**2. Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed**

Plaintiff's breach-of-fiduciary-duty argument ignores that any fiduciary obligations arising from a physician-patient relationship are not boundless. The allegations here concern only public-website browsing by unidentified visitors, undertaken without Sturdy Memorial knowing who the users were or why they were browsing. Those allegations are no different from those of any non-patient website visitor and do not plausibly establish a fiduciary relationship. Under Massachusetts law, "the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant ***as a physician***." *Korper v. Weinstein*, 57 Mass. App. Ct. 433, 437–38 (2003) (emphasis added). The relationship between Sturdy Memorial and users of its public website—including Plaintiff—is common to all members of the public and is the antithesis of a fiduciary relationship. Any heightened fiduciary obligation applies only "to matters within the scope of the fiduciary relationship." *Id.*

Plaintiff's reliance on *Shedd v. Sturdy Memorial Hospital, Inc.* only underscores the difference between this case and one involving a fiduciary relationship tied to confidential medical information. There, hackers allegedly accessed encrypted patient PII, including Social Security

numbers, credit card numbers, and medical-history information. 2022 WL 1102524, at *2. Here, by contrast, the alleged browsing data is common to patients and non-patients alike and is far removed from Social Security numbers, credit card numbers, or a patient's medical history. Nor does *Doe v. Stonehill* help Plaintiff. That First Circuit decision concerned an expelled student's contract, sex-discrimination, negligence, and defamation claims arising from a college sexual-misconduct proceeding; it did not address fiduciary duty at all. 55 F.4th 302 (1st Cir. 2022).

**3. Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed**

Plaintiff's implied-contract claim fails for several independent reasons. Although she alleges that she was required to disclose "PHI/IIHI" to Sturdy Memorial "as part of the physician-patient relationship," she does not allege that she was required to use Sturdy Memorial's public website, and she has not plausibly alleged that her browsing activity was PHI or IIHI. SAC ¶¶ 209–210. Plaintiff also does not answer Sturdy Memorial's argument that she failed to allege consideration for any purported implied contract to safeguard her personal health information. ECF No. 33 at 19. Nor can Plaintiff establish mutual assent by invoking "Sturdy's Notice of Privacy Practices." Opp. at 17–18. The Second Amended Complaint acknowledges that the notice concerns Sturdy Memorial's obligation "to maintain the privacy and security of your *protected health information*." SAC ¶ 126 (emphasis added). And the Patient Bill of Rights addresses "confidentiality of all records and communications *concerning your medical history and treatment* to the extent provided by law." *Id.* ¶ 127. Plaintiff's public browsing activity concerns neither her medical history and treatment nor protected health information. It therefore cannot supply mutual assent for an implied contract claim.

Plaintiff's reliance on *Kelley v. CVS Pharmacy, Inc.* and *Shedd v. Sturdy Memorial* is misplaced. In *Kelley*, the plaintiff alleged that the defendant breached an obligation to protect the confidentiality of his *prescription information*. No. CIV.A. 98-0897-BLS2, 2007 WL 2781163, at

*2 (Mass. Super. Aug. 24, 2007). And as explained above, *Shedd* involved a ransomware attack that allegedly exposed highly sensitive encrypted information, including Social Security numbers, credit card numbers, and medical-history information. Plaintiff alleges nothing comparable. Her allegations concern only public-website browsing, not prescription information, Social Security numbers, credit card numbers, or medical-history information. The breach-of-implied-contract claim should therefore be dismissed.

### 4. Plaintiff Has Failed to Allege Cognizable Injury

Plaintiff's common-law claims also fail because she has not plausibly alleged a cognizable injury. She lists categories of damages but pleads no facts supporting them. Instead, she asserts that alleged "targeted medical advertisements" resulting from her browsing activity constitute "concrete, traceable harms." Opp. at 20. The case she cites does not help her. *Salamon v. Terra* concerned whether a defendant was required to "pay for the value of the partially completed houses on his property," not whether alleged website tracking or targeted advertising constitutes injury. *Id.* (citing *Salamon v. Terra*, 394 Mass. 857, 859 (1985)).

Plaintiff also misreads *BPS Direct*. Opp. at 19. The Third Circuit found a cognizable injury only for the plaintiffs whose complete credit or debit card numbers allegedly were disclosed because that information can provide access to a line of credit or bank account. *BPS Direct*, 175 F.4th at 431. Plaintiff alleges nothing comparable. Her public-website browsing activity—some of which she alleges was undertaken for others—is not analogous to disclosure of complete payment-card information.

Nor does *Tenet* support Plaintiff's claimed injury. As explained above, *Tenet* involved detailed allegations that the defendant transmitted the plaintiff's personal health information, including specific health conditions, treatments, and appointment information, which allegedly led to targeted advertising related to diabetes and obesity. 731 F. Supp. 3d at 147–48, 150–51. Plaintiff

pleads no similar disclosure of personal health information and no comparable injury. Her common-law claims therefore fail for lack of cognizable injury.

## III. CONCLUSION

Plaintiff's Second Amended Complaint still rests on the same flawed premise: that ordinary browsing on a public website, including searches she alleges she performed for others, somehow disclosed her protected health information and caused a cognizable injury. It did not. Plaintiff has not plausibly alleged the disclosure of PHI or IIHI, purposeful criminal or tortious conduct under the ECPA, a substantial invasion of privacy, any viable common-law duty or contract, or any concrete injury. For these reasons, and those set forth in Sturdy Memorial's motion, Sturdy Memorial respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated: June 26, 2025

Respectfully submitted,

*/s/ Elizabeth A. Scully*

Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 26, 2026, a copy of the foregoing was served via CM/ECF which will serve the Plaintiff's counsels of record.

*<u>/s/ Elizabeth A. Scully</u>*
Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP

*Attorney for Defendant*